POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN KENDALL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ODONATE THERAPEUTICS, INC., KEVIN C. TANG, MICHAEL HEARNE, and JOHN G. LEMKEY,<br><br>Defendants. | Case No. **'20 CV 1828 H    LL**<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>DEMAND FOR JURY TRIAL |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

Plaintiff Kevin Kendall ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Odonate Therapeutics, Inc. ("Odonate" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Odonate securities between December 7, 2017, and August 21, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the

1

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Odonate was founded in 2013 and is based in San Diego, California. Odonate is a pharmaceutical company that develops therapeutics for the treatment of cancer.  The Company is focused on developing tesetaxel, an orally administered chemotherapy agent.

3.      Tesetaxel is in a Phase 3 clinical study for patients with locally advanced or metastatic breast cancer ("MBC"), called the CONTESSA trial, which is evaluating tesetaxel in combination with capecitabine in patients with MBC.

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) tesetaxel was not as safe or well-tolerated as the Company had led investors to believe; (ii) consequently, tesetaxel's commercial viability as a cancer treatment was overstated; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.      On August 24, 2020, during pre-market hours, Odonate issued a press release announcing top-line results from the CONTESSA trial.  Although the study met its primary endpoint, tesetaxel plus capecitabine was associated with Grade 3 or

2

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

higher neutropenia (low levels of white blood cells), which occurred in 71.2% of patients with the combination treatment versus 8.3% for capecitabine alone.  Various other Grade 3 or higher treatment-emergent adverse events ("AEs") were also associated with tesetaxel plus capecitabine versus capecitabine alone.  Further, discontinuation rates were 4.2% from neutropenia and 3.6% from neuropathy, and the overall discontinuation rate was 23.1% in the treatment group compared to 11.9% in the capecitabine alone group.

6.     On this news, Odonate's stock price fell $15.21 per share, or 45.35%, to close at $18.33 per share on August 24, 2020.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).     Odonate is

3

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## **PARTIES**

12.     Plaintiff, as set forth in the attached Certification, acquired Odonate securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Odonate is a Delaware corporation with principal executive offices located at 4747 Executive Drive, Suite 210, San Diego, California 92121. Odonate common stock trades in an efficient market on the Nasdaq Global Select Market ("NASDAQ") under the symbol "ODT."

14.     Defendant Kevin C. Tang ("Tang") has served as Odonate's Chairman and Chief Executive Officer at all relevant times.

15.     Defendant Michael Hearne ("Hearne") has served as Odonate's Chief Financial Officer ("CFO") since November 2018.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

16.     Defendant John G. Lemkey ("Lemkey") served as Odonate's CFO from before the start of the Class Period until November 2018, when he was promoted to the position of Chief Operating Officer.

17.     Defendants Tang, Hearne, and Lemkey are sometimes referred to herein as the "Individual Defendants."

18.     The Individual Defendants possessed the power and authority to control the contents of Odonate's SEC filings, press releases, and other market communications.   The Individual Defendants were provided with copies of Odonate's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Odonate, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.   The Individual Defendants are liable for the false statements and omissions pleaded herein.

19.     Odonate and the Individual Defendants are sometimes collectively referred to herein as "Defendants."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Odonate was founded in 2013 and is based in San Diego, California. Odonate is a pharmaceutical company that develops therapeutics for the treatment of cancer.  The Company is focused on developing tesetaxel, an orally administered chemotherapy agent.

21.     Tesetaxel is currently in a Phase 3 clinical study for patients with locally advanced or metastatic breast cancer, called the CONTESSA trial, which is evaluating tesetaxel in combination with capecitabine in patients with MBC.

22.     On November 13, 2017, Odonate filed a registration statement on Form S-1 with the SEC in connection with its initial public offering, which, after amendment, was declared effective by the SEC on December 6, 2017 (the "Registration Statement").   Thereafter, the Company's common stock began publicly trading on the NASDAQ.

### Materially False and Misleading Statements Issued During the Class Period

23.     The Class Period begins on December 7, 2017, when Odonate securities began publicly trading on the NASDAQ pursuant to false or misleading statements or omissions contained in the Registration Statement.  For example, the Registration Statement touted tesetaxel's safety and tolerability profile, stating, in relevant part, that "[t]esetaxel has been generally well tolerated in clinical studies."

6

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

24.     The Registration Statement also represented that "[m]ore than 500 patients were treated with tesetaxel between 2001 and 2012 across 22 clinical studies," that "[t]esetaxel was administered as monotherapy in 16 studies and in combination with other chemotherapy agents in 6 studies," and that "[f]inal study data are available for 8 of these studies . . . [and] is underway for 14 of these studies," which further bolstered Odonate's claims that "[t]esetaxel has been generally well tolerated in clinical studies," given the breadth of patients and studies with which Odonate had already evaluated tesetaxel.

25.     For example, the Registration Statement touted in relevant part, that "[i]n Study TOB203, which was conducted . . . from 2010 to 2012, 46 patients . . . were enrolled to receive, as first-line chemotherapy, tesetaxel administered orally at 27 mg/m$^2$ . . . on the first day of a 21-day cycle, with escalation to 35 mg/m$^2$ in subsequent cycles depending on tolerability, without anti-allergy premedication"; that, in this study, "[t]esetaxel was generally well tolerated"; that "[t]he most common Grade ≥ 3 (severe or serious) [AE] was neutropenia . . . which occurred in 26% of patients receiving 27 mg/m$^2$, the dose [Odonate] chose for [the] Phase 3 study," *i.e.*, the CONTESSA trial; and that "[a]lso at this dose, there were no cases of Grade ≥ 3 peripheral neuropathy, and the incidence of Grade 2 alopecia (significant hair loss) was 15%."

7

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

26.     Similarly, the Registration Statement represented that "[i]n Study 927E-PRT005, which was conducted . . . from 2004 to 2006, 34 patients with MBC were enrolled to receive, as first-, second- or third-line chemotherapy, tesetaxel administered orally at initial doses of 27 mg/m$^2$ (79% of patients) or 35 mg/m$^2$ (21% of patients) on the first day of a 21-day cycle"; that "[t]hirty-two (32) patients completed at least one course of therapy"; that "[t]esetaxel was generally well tolerated"; that "[t]he most common Grade $\geq$ 3 AE was neutropenia, which occurred in 35% of patients"; and that "[t]he incidence of Grade $\geq$ 3 peripheral sensory neuropathy (numbness and/or pain from damage to the nerves) was 3%, and the incidence of Grade 2 alopecia was 18%."

27.     The Registration Statement also explained the purported rationale for the design of the CONTESSA trial, including its dosing regimen, noting that "[c]apecitabine is a preferred agent as a first- or second-line chemotherapy treatment for patients with HER2 negative, HR positive MBC"; that, "[t]herefore, capecitabine, at the approved dose, is an appropriate control regimen for a registration-enabling Phase 3 study"; that "[t]here is a high unmet medical need for combination chemotherapy regimens with improved benefit-risk profiles"; that "[c]ombining the approved dose of capecitabine with currently available taxanes results in improved efficacy but with significant toxicity"; that "[p]reclinical and clinical studies support investigating whether reducing the dose of capecitabine in

8

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

combination with a taxane will reduce toxicity without a reduction in efficacy"; that "[i]n a Phase 1 study, the combination of tesetaxel plus a reduced dose of capecitabine was associated with a tolerable AE profile, with minimal overlapping toxicity"; and that Defendants "believe that these factors support the investigation of tesetaxel plus a reduced dose of capecitabine as a novel, all-oral regimen with a potentially favorable benefit-risk profile for the treatment of patients with HER2 negative, HR positive MBC."

28.     Additionally, the Registration Statement contained generic, boilerplate representations concerning potential risks associated with tesetaxel's clinical development, stating, in relevant part, that "[i]f the results of this study, known as CONTESSA, are negative or inconclusive, [Odonate] may be unable to obtain regulatory approval for tesetaxel"; that "even if the results of CONTESSA are positive, [Odonate] cannot assure you that the U.S. Food and Drug Administration ('FDA'), the European Medicines Agency ('EMA') or any other regulatory authority will approve tesetaxel for marketing"; that Odonate's "ability to generate revenue and [its] future success depends in large part on the success of CONTESSA, the approval of tesetaxel, the nature of any potential requirements for post-approval studies and the successful commercialization of tesetaxel, if approved"; and that "[d]elays in obtaining regulatory approval for tesetaxel would, among other consequences, require further development expenditures, delay the launch of

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

tesetaxel and impact [Odonate's] ability to raise additional capital, all of which would have a material adverse effect on [Odonate's] business and financial condition." Plainly, the foregoing risk warnings were generic, catch-all provisions that were not tailored to Odonate's actual known risks regarding then-known potential safety issues with tesetaxel.

29. The Registration Statement also contained generic, boilerplate representations concerning potential undesirable side effects associated with tesetaxel, stating, in relevant part, that "[c]linical studies of tesetaxel or other product candidates [Odonate] may develop could reveal a high and unacceptable incidence and severity of undesirable side effects"; that "[u]ndesirable side effects could [*inter alia*] adversely affect patient enrollment in clinical studies"; that, "in 2007, tesetaxel was placed on clinical hold by the FDA . . . due to the occurrence of several fatalities in the setting of severe neutropenia . . . in patients with advanced cancer"; that, "[w]hile this clinical hold was lifted in 2008, and tesetaxel has since been evaluated in multiple clinical studies in 300 patients without any interruption due to safety issues, [Odonate] cannot assure you that safety-related interruptions in tesetaxel's clinical development will not occur again in the future"; that "[a]ny such recurrence could potentially delay or prevent the ultimate approval of the product candidate"; that "[u]ndesirable or adverse side effects also could result in regulatory authorities mandating a more restrictive prescribing label for the product, which, in turn, could

10

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

limit the market acceptance of the product even if approved for marketing and commercialization"; that "[d]rug-related side effects could result in potential product liability claims"; and that "[a]ny of these events could prevent [Odonate] from achieving or maintaining market acceptance of the particular product candidate and could significantly harm [Odonate's] business, results of operations, financial condition and prospects." Plainly, these risk warnings, too, were generic, catch-all provisions that were not tailored to Odonate's actual known risks regarding safety issues with tesetaxel and, moreover, were downplayed by statements simultaneously highlighting how a prior "clinical hold was lifted in 2008," and that "tesetaxel has since been evaluated in multiple clinical studies in 300 patients without any interruption due to safety issues."

30.     On February 14, 2018, Odonate filed its first annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2017 (the "2017 10-K"). The 2017 10-K contained substantively the same statements as referenced in ¶¶ 23-29, *supra*.

31.     Additionally, the 2017 10-K touted tesetaxel's tolerability both alone and in combination with capecitabine, stating, in relevant part, that "[t]esetaxel, administered both alone and in combination with capecitabine, has been generally well tolerated"; that, "[i]n the 8 studies . . . for which final study data are available, a total of 268 patients received tesetaxel either alone (222 patients from 5 studies)

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

or in combination with capecitabine (46 patients from three studies)"; that "[t]he most common Grade ≥ 3 (severe or serious) treatment-related [AE] was neutropenia . . . which occurred in 37% of patients receiving tesetaxel alone and 43% of patients receiving tesetaxel in combination with capecitabine and was generally reversible and manageable with supportive measures"; that "[s]ix percent (6%) of patients receiving tesetaxel alone and 11% of patients receiving tesetaxel in combination with capecitabine experienced treatment-related febrile neutropenia (fever coinciding with neutropenia)"; that, "[o]verall, there was no non-hematologic Grade ≥ 3 treatment-related AE that occurred in more than 6% of patients"; that "[t]hree percent (3%) of patients receiving tesetaxel alone and 2% of patients receiving tesetaxel in combination with capecitabine experienced Grade ≥ 3 treatment-related peripheral neuropathy (weakness, numbness and/or pain from damage to the nerves)"; that "[n]o patients receiving tesetaxel alone and 11% of patients receiving tesetaxel in combination with capecitabine experienced Grade ≥ 3 treatment-related hand-foot syndrome"; that "[s]ix percent (6%) of patients receiving tesetaxel alone and 7% of patients receiving tesetaxel in combination with capecitabine experienced Grade ≥ 3 treatment-related diarrhea"; and that "[s]eventeen percent (17%) of patients receiving tesetaxel alone and 9% of patients receiving tesetaxel in combination with capecitabine experienced any grade of treatment-related alopecia (hair loss)."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

32.     Appended as an exhibit to the 2017 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Tang and Lemkey certified that "[t]he [2017 10-K] fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934," and that "[t]he information contained in the [2017 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

33.     On February 22, 2019, Odonate filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2018 (the "2018 10-K").  The 2018 10-K contained substantively the same statements as referenced in ¶¶ 23-25 and 27-29, *supra*.

34.     The 2018 10-K also contained substantively the same statements as referenced in ¶ 31, *supra*, concerning tesetaxel's tolerability both alone and in combination with capecitabine, albeit with slightly reported differences, which were summarized in the 2018 10-K in the following table showing "[t]esetaxel's [AE] profile across all completed studies," at doses consistent with the CONTESSA trial:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**Adverse Event Profile of 187 Patients at Doses Consistent with CONTESSA**

| 187 patients treated with tesetaxel at 27 mg/m² once every 3 weeks as monotherapy (N=156) or in combination with capecitabine at 1,750–2,500 mg/m² (N=31) |
| --- |

- The most common Grade ≥3 treatment-related adverse event was neutropenia (33%):
  - Febrile neutropenia (5%)

- The most common non-hematologic Grade ≥3 treatment-related adverse events were:
  - Dehydration (5%)
  - Diarrhea (5%)
  - Fatigue (5%)
  - Anorexia (4%)
- Other non-hematologic Grade ≥3 treatment-related adverse events include:
  - Nausea (3%)
  - Peripheral neuropathy (3%)
  - Vomiting (2%)

- Treatment-related alopecia (any grade) occurred in 14% of patients overall, and Grade 2 treatment-related alopecia occurred in 3% of patients

- There were no hypersensitivity reactions

35.     Appended as an exhibit to the 2018 10-K were substantively the same SOX certifications as referenced in ¶ 32, *supra*, signed by Defendants Tang and Hearne.

36.     On February 20, 2020, Odonate filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2019 (the "2019 10-K"). The 2019 10-K contained substantively the same statements as referenced in ¶¶ 23-25 and 28-29, *supra*.

37.     The 2019 10-K also contained substantively the same statements as referenced in ¶ 31, *supra*, concerning tesetaxel's tolerability both alone and in combination with capecitabine, albeit with slightly reported differences, which were summarized in the 2019 10-K in substantively the same table referenced in ¶ 34, *supra*.

14

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

38.     Appended as an exhibit to the 2019 10-K were substantively the same SOX certifications as referenced in ¶ 32, *supra*, signed by Defendants Tang and Hearne.

39.     The statements referenced in ¶¶ 23-38 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) tesetaxel was not as safe or well-tolerated as the Company had led investors to believe; (ii) consequently, tesetaxel's commercial viability as a cancer treatment was overstated; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

40.     On August 24, 2020, during pre-market hours, Odonate issued a press release announcing top-line results from the CONTESSA trial.  Although the study met its primary endpoint, tesetaxel plus capecitabine was associated with Grade 3 or higher neutropenia (low levels of white blood cells) that occurred in *71.2%* of patients with the combination treatment versus *8.3%* for capecitabine alone.  Various other Grade 3 or higher treatment-emergent AEs were also associated with tesetaxel plus capecitabine versus capecitabine alone, and discontinuation rates were 4.2%

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

from neutropenia and 3.6% from neuropathy, while the overall discontinuation rate was 23.1% in the treatment group compared to 11.9% in the capecitabine alone group. Specifically, that press release disclosed, in relevant part:

> Grade ≥3 treatment-emergent adverse events (TEAEs) that occurred in ≥5% of patients were: neutropenia (71.2% for tesetaxel plus capecitabine vs. 8.3% for capecitabine alone); diarrhea (13.4% for tesetaxel plus capecitabine vs. 8.9% for capecitabine alone); hand-foot syndrome (6.8% for tesetaxel plus capecitabine vs. 12.2% for capecitabine alone); febrile neutropenia (12.8% for tesetaxel plus capecitabine vs. 1.2% for capecitabine alone); fatigue (8.6% for tesetaxel plus capecitabine vs. 4.5% for capecitabine alone); hypokalemia (8.6% for tesetaxel plus capecitabine vs. 2.7% for capecitabine alone); leukopenia (10.1% for tesetaxel plus capecitabine vs. 0.9% for capecitabine alone); and anemia (8.0% for tesetaxel plus capecitabine vs. 2.1% for capecitabine alone).

> [AEs] resulting in treatment discontinuation in ≥1% of patients were: neutropenia or febrile neutropenia (4.2 for tesetaxel plus capecitabine vs. 1.5% for capecitabine alone); neuropathy (3.6% for tesetaxel plus capecitabine vs. 0.3% for capecitabine alone); diarrhea (0.9% for tesetaxel plus capecitabine vs. 1.5% for capecitabine alone); and hand-foot syndrome (0.6% for tesetaxel plus capecitabine vs. 2.1% for capecitabine alone). Treatment discontinuation due to any adverse event occurred in 23.1% of patients treated with tesetaxel plus capecitabine versus 11.9% of patients treated with capecitabine alone.

> Grade 2 alopecia (hair loss) occurred in 8.0% of patients treated with tesetaxel plus capecitabine versus 0.3% of patients treated with capecitabine alone. Grade ≥3 neuropathy occurred in 5.9% of patients treated with tesetaxel plus capecitabine versus 0.9% of patients treated with capecitabine alone.

41.    On this news, Odonate's stock price fell $15.21 per share, or 45.35%, to close at $18.33 per share on August 24, 2020.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

42.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

43.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Odonate securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.   Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

44.    The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Odonate securities were actively traded on the NASDAQ.   While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.   Record owners and other members of the Class may be identified from records maintained by Odonate or its transfer agent and may be notified of the

17

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

45.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

47.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Odonate;

- whether the Individual Defendants caused Odonate to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Odonate securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

48.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

49.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Odonate securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Odonate securities between the time the Defendants failed to disclose

19

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

50.   Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

51.   Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

## (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

52.   Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53.   This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

54.   During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various

20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Odonate securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Odonate securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

55.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Odonate securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Odonate's finances and business prospects.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

56.     By virtue of their positions at Odonate, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

57.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Odonate, the Individual Defendants had knowledge of the details of Odonate's internal affairs.

58.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Odonate.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Odonate's businesses, operations, future

22

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Odonate securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Odonate's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Odonate securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

59.   During the Class Period, Odonate securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Odonate securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Odonate securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The

23

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

market price of Odonate securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

60.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

62.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

63.     During the Class Period, the Individual Defendants participated in the operation and management of Odonate, and conducted and participated, directly and indirectly, in the conduct of Odonate's business affairs.  Because of their senior positions, they knew the adverse non-public information about Odonate's misstatement of income and expenses and false financial statements.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

64.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Odonate's financial condition and results of operations, and to correct promptly any public statements issued by Odonate which had become materially false or misleading.

65.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Odonate disseminated in the marketplace during the Class Period concerning Odonate's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Odonate to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Odonate within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Odonate securities.

66.     Each of the Individual Defendants, therefore, acted as a controlling person of Odonate.  By reason of their senior management positions and/or being directors of Odonate, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Odonate to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised

control over the general operations of Odonate and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

67.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Odonate.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  September 16, 2020

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

HOLZER & HOLZER, LLC
Corey D. Holzer
(*pro hac vice* application
forthcoming)
1200 Ashwood Parkway, Suite 410
Atlanta, Georgia 30338
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
cholzer@holzerlaw.com

*Attorneys for Plaintiff*

27

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

DocuSign Envelope ID: 32B06962-28CA-4B25-BE9A-740BAE914ECD

**CERTIFICATION PURSUANT
TO FEDERAL SECURITIES LAWS**

1.      I, Kevin Kendall, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Odonate Therapeutics, Inc. ("Odonate" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Odonate securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Odonate securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      To the best of my current knowledge, the attached sheet lists all of my transactions in Odonate securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      I declare under penalty of perjury that the foregoing is true and correct.

**Executed** __September 14, 2020__
               **(Date)**

_kevin kendall_
8EA6744A87AA41A...
_____
        **(Signature)**

Kevin Kendall
_____
      **(Type or Print Name)**

## SUMMARY OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES | PRICE PER SHARE |
|---|---|---|---|
| 08/17/2020 | Purchase | 1700 | $35.58 |
| 08/24/2020 | Sale | 1700 | $19.44 |

**Odonate Therapeutics, Inc. (ODT)**                                                          **Kendall, Kevin**

**List of Purchases and Sales**

| Security Type | Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|---|
| Common Stock | Purchase | 8/17/2020 | 200 | $35.7400 |
| Common Stock | Purchase | 8/17/2020 | 100 | $35.8400 |
| Common Stock | Purchase | 8/17/2020 | 100 | $35.8400 |
| Common Stock | Purchase | 8/18/2020 | 500 | $35.5100 |
| Common Stock | Purchase | 8/18/2020 | 800 | $35.5100 |
| ODT Aug 21 20 35.0 Call | Sale | 8/17/2020 | (2) | $5.7200 |
| ODT Aug 21 20 35.0 Call | Sale | 8/17/2020 | (1) | $5.5000 |
| ODT Aug 21 20 35.0 Call | Sale | 8/17/2020 | (1) | $5.8000 |
| ODT Aug 21 20 35.0 Call | Sale | 8/18/2020 | (1) | $4.5000 |
| ODT Aug 21 20 35.0 Call | Sale | 8/18/2020 | (2) | $4.3000 |
| ODT Aug 21 20 35.0 Call | Sale | 8/18/2020 | (2) | $4.3000 |
| ODT Aug 21 20 35.0 Call | Sale | 8/18/2020 | (2) | $4.4100 |
| ODT Aug 21 20 35.0 Call | Sale | 8/18/2020 | (4) | $4.3000 |
| ODT Aug 21 20 35.0 Call | Sale | 8/18/2020 | (2) | $4.1000 |