COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
RYAN E. BLAIR (246724)
(rblair@cooley.com)
STEPHEN RICHARDS (308868)
(srichards@cooley.com)
4401 Eastgate Mall
San Diego, California 92121-1909
Telephone:  +1 858 550 6000
Facsimile:   +1 858 550-6420

Attorneys for Defendants
Odonate Therapeutics, Inc., Kevin C. Tang,
Michael Hearne, and John G. Lemkey

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN KENDALL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ODONATE THERAPEUTICS, INC., KEVIN C. TANG, MICHAEL HEARNE, and JOHN G. LEMKEY,<br><br>Defendants. | Case No. 3:20-cv-01828-H-LL<br><br>CLASS ACTION<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>Date: August 16, 2021<br>Time: 10:30 a.m.<br>Courtroom: 15A<br>Judge: Hon. Marilyn L. Huff<br><br>**Oral Argument Requested**<br><br>**Demand for Jury Trial** |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

# TABLE OF CONTENTS

**Page**

I.   Introduction ..................................................................................................... 1
II.  Argument ........................................................................................................ 2
    A.   The SAC Is Not Properly Pleaded .......................................................... 2
    B.   Plaintiff Has Failed to Plead Falsity ...................................................... 3
        1.   "Generally Well Tolerated" ........................................................... 3
        2.   "Manageable Side Effects" ............................................................ 6
    C.   Plaintiff Has Failed to Plead a Strong Inference of Scienter ................. 7
        1.   Actual Knowledge/Reckless Disregard ......................................... 7
        2.   Motive ............................................................................................ 8

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**REPLY ISO MOT. TO DISMISS SAC**
**CASE NO. 3:20-CV-01828-H-LL**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Arrowhead Pharms., Inc. Securities Litigation*,
2017 WL 5635422 (C.D. Cal. Sept. 20, 2017)........................................................3

*In re Atossa Genetics Inc. Securities Litigation*,
868 F.3d 784 (9th Cir. 2017)................................................................................6

*City of Dearborn Heights Act 345 Police & Fire Retirement System v.
Waters Corp.*,
632 F.3d 751 (1st Cir. 2011) ...............................................................................8

*In re Connetics Corporation Securities Litigation*,
2008 WL 3842938 (N.D. Cal. Aug. 14, 2008)......................................................4

*In re Daou Systems, Inc. Securities Litigation*,
411 F.3d 1006 (9th Cir. 2005).............................................................................8

*In re Delcath Systems, Inc. Securities Litigation*,
36 F. Supp. 3d 320 (S.D.N.Y. 2014)....................................................................7

*ESG Capital Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016).............................................................................8

*In re Geron Corporation Securities Litigation*,
2015 U.S. Dist. LEXIS 49759 (N.D. Cal. Apr. 15, 2015) ...................................4

*In re Immune Response Securities Litigation*,
375 F. Supp. 2d 983 (S.D. Cal. 2005) .................................................................4

*In re Maxwell Technologies, Inc. Securities Litigation*,
18 F. Supp. 3d 1023 (S.D. Cal. 2014) .................................................................9

*In re MELA Sciences, Inc. Securities Litigation*,
2012 WL 4466604 (S.D.N.Y. Sept. 19, 2012)......................................................3

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020).................................................................1, 7, 10

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*,
697 F.3d 869 (9th Cir. 2012)...............................................................................1

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**REPLY ISO MOT. TO DISMISS SAC**
**CASE NO. 3:20-CV-01828-H-LL**

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Smith v. Antares Pharma, Inc.*,
   2020 WL 2041752 (D.N.J. Apr. 28, 2020)..........................................................4

*In re Time Warner Inc. Securities Litigation*,
   9 F.3d 259 (2d Cir. 1993) .................................................................................10

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016) ...............................................................................6

**Other Authorities**

Fed. R. Civ. P. 11..................................................................................................3

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

## I.   INTRODUCTION

Plaintiff's claims are foreclosed by controlling Ninth Circuit authority: *In re Rigel Pharmaceuticals, Inc. Securities Litigation*, 697 F.3d 869 (9th Cir. 2012), and *Nguyen v. Endologix, Inc.*, 962 F.3d 405 (9th Cir. 2020).[1]  *Rigel* held that drug companies need not disclose safety results from clinical trials so long as the actual statements they make regarding those trials are not misleading.  697 F.3d at 880 n.8.  And *Endologix* held that "implausible" allegations "do not create a strong inference of scienter," and that it "does not make a whole lot of sense" for a drug company to stake its prospects on a drug it supposedly knows will not gain FDA approval.  962 F.3d at 408, 415-16.

Here, Plaintiff's Opposition[2] argues that Defendants should have disclosed interim results from CONTESSA, an ongoing Phase 3 clinical study of Odonate's breast cancer drug candidate, tesetaxel, because Defendants (accurately) described tesetaxel as having been "generally well tolerated" in ***prior*** clinical studies.  But this theory runs headlong into *Rigel*: because Defendants said ***nothing*** about ***CONTESSA's*** interim results, what they said about tesetaxel's ***prior*** studies (***pre-CONTESSA***) is not actionable.  Moreover, Plaintiff ignores that Defendants expressly and repeatedly warned investors that the FDA previously had placed tesetaxel on a clinical hold in 2007 due to patient deaths associated with severe neutropenia, a recognized side effect of all taxanes, including tesetaxel.  Investors read Defendants' statements about tesetaxel's prior clinical performance in the context of these warnings and, therefore, could not have believed that Defendants were promising that tesetaxel would not be associated with neutropenia in CONTESSA.

---

[1] Plaintiff discusses *Rigel* only in a footnote, (Dkt. 30 ("Opposition" or "Opp.") at 19 n.19), and does not mention *Endologix* at all.

[2] Plaintiff's Opposition was filed late, even though Defendants (1) agreed to an extension for Plaintiff to file the brief, and then (2) did not oppose a motion by Plaintiff for extra pages.  (Dkt. 26; Dkt. 29.)  In an effort to preserve the Court's resources, Defendants have elected to respond to the late-filed Opposition rather than move to strike it.

As for scienter, Plaintiff's theory continues to make no sense. Plaintiff suggests that Defendants deliberately flushed away *hundreds of millions of their own dollars*—including more than *$20 million* invested *after* CONTESSA's top-line results were published—while knowing *since 2017* that tesetaxel was "unlikely to support FDA approval." (Opp. at 15.) Yet Plaintiff cannot explain how this theory is as compelling as the obvious alternative: (1) that Defendants disclosed tesetaxel's prior performance in clinical studies, including its documented association with neutropenia; (2) that they believed in the drug; and (3) that they then put their money where their mouths were in an effort to get a breast cancer therapy approved. The FDA ultimately may not have agreed with Defendants regarding tesetaxel's potential, but there are *no* well-pled facts that even suggest Defendants deliberately misled investors or acted with reckless disregard, let alone that establish the required strong inference of scienter. This is particularly true because the SAC is bereft of any allegation that either the FDA or the independent committee of cancer physicians and statisticians charged with ensuring patient safety (the Independent Data Monitoring Committee) who reviewed CONTESSA data on a regular basis expressed concerns over the interim trial data. (*See* ¶[3]146(a).)[4] Plaintiff's claims should be dismissed.

## II.   ARGUMENT

### A.   The SAC Is Not Properly Pleaded

Plaintiff offers no defense whatsoever for the most egregious pleading defect in the SAC: the overlong Class Period. Plaintiff says that Defendants knew

---

[3] Unless otherwise noted, emphasis is added and citations and quotation marks are omitted. Citations to "¶__" are to Dkt. 24 ("SAC"). Citations to "Motion" or "Mot." are to Defendants' opening brief. (Dkt. 25-1). Citations to "Ex.__" are to exhibits to the Declaration of Ryan E. Blair. (Dkt. 25-2).

[4] Plaintiff asserts that "Defendants met with FDA by December 2020" regarding CONTESSA. (Opp. at 1; *see id.*at 11 ("Tang himself admitted engaging FDA by December 2020").) This is false. Plaintiff apparently premises this assertion on comments Mr. Tang made at a December 2020 Odonate analyst event, where Mr. Tang recited a history of the CONTESSA study and noted that Odonate had gone "to the FDA to discuss [a] *registration study*." (¶ 129(a); Supplemental Declaration of Ryan E. Blair Ex. W at 161.) But Mr. Tang was referring to Odonate's *pre-CONTESSA* meeting with the FDA, not to any December 2020 meeting. (*Id.*) Odonate did not meet with the FDA in December 2020, and it never said that it did.

CONTESSA was "unlikely to support FDA approval" "as early as *May / June 2018*, when CONTESSA trial data began to be received." (Opp. at 15 (emphasis original).) Yet the Class Period begins on *December 7, 2017*, before any patients were even enrolled in CONTESSA. (¶ 217.) It is *impossible* for Defendants to have misled investors in 2017 by not disclosing data that *did not even exist until 2018*. Plaintiff's choice to define a Class Period beginning in 2017 is wholly frivolous. *See* Fed. R. Civ. P. 11(b)(3) (requiring "factual contentions" to have "evidentiary support").

The SAC also exemplifies puzzle-pleading. Plaintiff tried to cloak a deficient theory of fraud in more than 150 pages of dross, then accused Defendants of "miscast[ing]" and "misfram[ing]" the incoherent SAC, or of "waiv[ing]" arguments against it. (Opp. at 16-17.) Courts do not tolerate this approach. (Mot. at 10-11.)

## B.    Plaintiff Has Failed to Plead Falsity

As detailed in the Motion, Plaintiff's SAC contains more than *150 pages* of allegedly false or misleading statements. The vast majority of these are unremarkable, such as those describing tesetaxel as "unique among taxanes" (which is true) and noting that the company "expect[ed] to complete enrollment of CONTESSA in the second half of 2019 . . ." (which was also true, and actually came to pass). Apparently conceding that virtually all of these run-of-the-mill statements are either true or are inactionable, Plaintiff now focuses on just two: (1) Odonate's description of tesetaxel as having been "generally well tolerated" in prior studies, and (2) its statement that tesetaxel "was associated with a manageable side effect profile." Neither can form the basis for a 10b-5 claim here.

### 1.    "Generally Well Tolerated"

First, regardless of what gloss Plaintiff attempts to put on Odonate's statements, "[c]haracterizing [a] drug as 'well tolerated' is not actionable." *In re Arrowhead Pharms., Inc. Sec. Litig.*, 2017 WL 5635422, at *9 (C.D. Cal. Sept. 20, 2017); *see also In re MELA Scis., Inc. Sec. Litig.,* 2012 WL 4466604, at *13 (S.D.N.Y. Sept. 19, 2012) ("Plaintiffs cannot premise a fraud claim upon a mere

disagreement with how defendants chose to interpret the results of the clinical trial."). This is because describing a drug as "well tolerated" is an opinion, and "[o]pinions are only actionable under the securities laws if they are not honestly believed and lack a reasonable basis." *Smith v. Antares Pharma, Inc.*, 2020 WL 2041752, at *5 (D.N.J. Apr. 28, 2020). Plaintiff has not pled any facts suggesting Defendants did not "honestly believe" tesetaxel was generally well tolerated.

Plaintiff's authority is readily distinguishable. For example, in *In re Connetics Corporation Securities Litigation*, 2008 WL 3842938, at *6 (N.D. Cal. Aug. 14, 2008), the court found a statement that a drug was "safe and well tolerated" actionable where defendants failed to disclose the results of a ***prior*** trial in mice indicating the drug was linked to cancer. This has no bearing here because Odonate openly and accurately disclosed data from ***past*** studies. Next, while *In re Immune Response Securities Litigation*, 375 F. Supp. 2d 983, 1010 (S.D. Cal. 2005), lists "well tolerated" as one of many statements made by the defendants, the case contains no substantive discussion of that statement whatsoever. And in *In re Geron Corporation Securities Litigation*, 2015 U.S. Dist. LEXIS 49759, at *2-3 (N.D. Cal. Apr. 15, 2015), the court held that the defendant "repeatedly told investors that [its drug] was 'well tolerated' in patients despite having information that revealed significant safety concerns or liver problems in <u>all</u> of the trial subjects" (emphasis original). Here, by contrast, Defendants described tesetaxel as having been "well tolerated" only in ***prior*** studies, not in the ongoing CONTESSA study. And in any event, neutropenia and patient discontinuation rates in CONTESSA were consistent with prior combination chemotherapy studies. (Ex. L at 60, 63.)

Confronted with case law showing that Odonate's "generally well tolerated" statements cannot form the basis for a 10b-5 claim, Plaintiff attempts a grammar lesson, pointing out that the statement is sometimes used in the past tense—*i.e.*, "was generally well tolerated" (*see, e.g.*, ¶ 58)—and sometimes in the present perfect continuous tense—*i.e.*, "has been generally well tolerated" (*see, e.g.*, ¶ 141).

Conspicuously absent from Plaintiff's Opposition, however, is the full context of these statements, **all** of which (regardless of tense) relate to tesetaxel's **past** trials. In ¶ 58, for example, the statement "[t]esetaxel was generally well tolerated" referred to "Study 927E-PRT005" and "Study TOB203," tesetaxel studies conducted by other companies "from 2004 to 2006" and "from 2010 to 2012," respectively. In ¶ 141—a statement issued while CONTESSA was underway—the "has been generally well tolerated" language **still** refers to previous, completed studies: "Tesetaxel has been generally well tolerated in clinical studies and has demonstrated robust single-agent antitumor activity in two multicenter, Phase 2 studies in patients with locally advanced or metastatic breast cancer. We are conducting a . . . Phase 3 study in MBC, known as CONTESSA, and we expect to report top-line results from this study in 2020." Investors reading these statements understood that the statement "well tolerated" referred not to CONTESSA, but to **previous** studies for which data had been published. Plaintiff has not identified a single statement in which the statement "well tolerated" expressly (or even implicitly) referred to CONTESSA.

Worse, Plaintiff misleads the Court by suggesting that there are "'will' version[s]" of Odonate's "well tolerated" statements—*i.e.*, that Odonate promised investors that tesetaxel "will" continue to be "well tolerated" in the future. (Opp. at 17-18.) This is not true. When referring to a "'will' version," Plaintiff actually means Odonate's description of CONTESSA's **hypothesis** (shown below):

### Hypothesis

The all-oral regimen of tesetaxel plus a *reduced dose* of capecitabine will lengthen PFS while being well-tolerated as compared to capecitabine alone

Cooley LLP
Attorneys at Law
San Diego

(Ex. S at 81.) As Odonate previously observed, investors know what a "hypothesis" is, and Plaintiff should have acknowledged that when Odonate made this statement, it was explicitly describing a hypothesis. (Mot. at 16 n.5; *see* ¶ 6.) Plaintiff's gambit only demonstrates that no actionable statements exist here.

### 2.   "Manageable Side Effects"

Plaintiff next argues that Odonate's December 11, 2020 statement that "Tesetaxel plus capecitabine was associated with a manageable side effect profile" was misleading. (Opp. at 19.) This is baffling, since the statement was presented ***side-by-side*** with CONTESSA's top-line results, in which Odonate reported the exact percentages of patients who experienced side effects. (*See* ¶ 126.) In other words, Odonate disclosed the facts—the percentage of patients that experienced side effects—and then provided an opinion[5] that these numbers were consistent with a "manageable side effect profile."[6] Investors were free to draw their own conclusions from the facts provided, but Odonate's opinion, based on ***disclosed information***, simply is not actionable. *See In re Atossa Genetics Inc Sec. Litig.*, 868 F.3d 784, 802 (9th Cir. 2017) ("[F]or an opinion to be misleading by omission, (1) the statement must omit material facts about the defendant's inquiry into or knowledge concerning a statement of opinion, and (2) those facts must conflict with what a reasonable investor would take from the statement itself.") (cleaned up); *Tongue v. Sanofi*, 816 F.3d 199, 214 (2d Cir. 2016) ("Plaintiffs' allegations regarding Defendants' stated opinion about the . . . trial results are little more than a dispute about the proper interpretation of data, a dispute this Court [has] rejected as a basis for liability[.]").

The only case Plaintiff meaningfully cites on this point, *In re Delcath Systems, Inc. Securities Litigation*, 36 F. Supp. 3d 320 (S.D.N.Y. 2014), confirms that

---

[5] Defendants made clear that their assessment of the side effects as "manageable" was an opinion. (¶ 118(b) ("Tesetaxel plus capecitabine was associated with ***what we believe are*** manageable side effects."); ¶¶ 118(c), 120(c), 122, 126 (same).)

[6] Plaintiff inconsistently argues both that CONTESSA's side effects were "decidedly *unmanageable*" (Opp. at 19 (emphasis original)), and that Odonate "managed" the side effects by revising the trial protocol, (*id.*). Only one of these can be true.

Odonate's opinion here is inactionable.  In finding the statements actionable in *Delcath*, the court went out of its way to note that the plaintiff's allegations did "not involve differing interpretations of disclosed data, but rather data that was not disclosed." *Id.* at 333.  The same is not true here, as Odonate disclosed the exact data its interpretation was based on.  No reasonable investor would be misled as to the basis of Odonate's honestly held opinion that these side effects were "manageable," a belief shared by investment analysts at the time.  (*See*, *e.g.*, Ex. R at 78.)[7]

### C.   Plaintiff Has Failed to Plead a Strong Inference of Scienter

Plaintiff faces a steep hill to plead scienter.  In securities fraud cases, a plaintiff usually attempts to tell a story about why defendants would have wanted to inflate a company's stock price: often so that the defendants could sell their own stock.  Here, no such story exists.  No Defendant ever sold Odonate stock (even when its price was supposedly "inflated"), and Defendants continued pouring money into Odonate until the bitter end, when they lost a fortune on a drug in which they believed.  It is not apparent what good it would have done Defendants to knowingly defraud investors, as Plaintiff alleges.  Plaintiff's theories of scienter have never added up and therefore fall well short of the PSLRA's demanding standard.  *See Endologix*, 962 F.3d at 408 ("Allegations that are implausible do not create a strong inference of scienter.").

### 1.   Actual Knowledge/Reckless Disregard

Plaintiff's lead theory of scienter is that Defendants ***knew of*** "elevated" neutropenia rates among CONTESSA patients, and of a supposed "emergency"

---

[7] Plaintiff makes a series of other scattershot falsity arguments, none of which have merit.  Plaintiff argues, for example, that CONTESSA had a "wave of disenrollments" and that Odonate never disclosed these disenrollments to the investing public.  (Opp. at 20.)  But Odonate had no affirmative duty to disclose disenrollments because it never said anything about disenrollments in the first place—Plaintiff's attempt to conflate Odonate's factually accurate statements about the completion of ***enrollment*** and any subsequent ***disenrollments*** is simply a red herring.  (*See* ¶ 81.)  Plaintiff also tries to downplay the explicit risk warnings Odonate placed on every statement it made.  (Opp. at 20-23.)  At the end of the day, Plaintiff still has not explained how a risk warning specifically detailing a past FDA clinical hold and ***previously disclosed patient deaths related to neutropenia*** could mislead a reasonable investor into believing that neutropenia was not a concern.

program instituted to combat those rates, but they never disclosed either of those things until August 2020, and therefore they must have acted with scienter in not making a disclosure. Plaintiff still confuses *intent* and *knowledge*. Scienter is about whether a defendant intended to deceive, not whether a defendant knew of undisclosed facts. (Mot. at 21 (citing *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 758 (1st Cir. 2011).) In nearly all non-disclosure cases, a defendant will know of the undisclosed facts; that does not mean that scienter is automatically present.[8]

Instead, for Plaintiff's "actual knowledge" theory of scienter to carry the day, Plaintiff would need to allege, *at minimum*, that (1) CONTESSA's preliminary neutropenia rates were not consistent with prior studies, (2) Defendants knew this, (3) Defendants nevertheless falsely told investors that the rates *were* consistent with prior studies, and (4) in doing so, Defendants intended to deceive investors. Plaintiff pleads *none* of these things, and cannot plead them in any amended pleading. In reality, (1) CONTESSA's neutropenia and discontinuation rates were consistent with studies of similar drugs approved by the FDA; (2) no well-pled facts suggest Defendants believed anything to the contrary; (3) Defendants never said *anything* about those rates before August 2020, let alone that they would match prior studies; and (4) Defendants therefore could not have intended to mislead investors.

### 2. Motive

Plaintiff's only other scienter theory of consequence is that Defendants had a "motive" to commit fraud because Odonate sought to raise capital during the Class Period, and Defendants wanted to "inflate Odonate's stock price" and therefore

---

[8] Plaintiff says *City of Dearborn Heights* is "inapposite" (Opp. at 26), but does not say why, or explain how that case's commonsense observation that access to information cannot alone establish scienter is incorrect. Instead, Plaintiff cites to what really are inapposite cases: *In re Daou Systems, Inc. Securities Litigation*, 411 F.3d 1006, 1022-23 (9th Cir. 2005), where scienter could be inferred from executives "manually adjust[ing]" revenue figures in contravention of established procedures, and *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1035 (9th Cir. 2016), in which the defendant realized a company was being defrauded in a securities deal with a third party hiding behind an alias, but helped facilitate the deal anyway.

"minimize their dilution" during the capital raise.[9]   (Opp. at 27.)   This makes absolutely no sense on the pleaded facts and cannot support any inference of scienter.

The premise of Plaintiff's SAC is that the top-line CONTESSA results killed tesetaxel's chances for FDA approval, but Defendants lied to investors about those results to keep Odonate afloat.  (See, e.g., ¶ 60 (alleging that CONTESSA's interim results "were grounds for the FDA to refuse approval" of the drug).)  Yet Plaintiff concedes that Defendants "owned a $300+ million stake in Odonate" (Opp. at 27), and continued to invest money even after the top-line CONTESSA results were published in 2020.  If it were true, as Plaintiff says, that Defendants knowingly lied to investors about the likelihood of FDA approval and therefore believed Odonate's stock was overvalued, then Defendants would have cashed out by selling their stock. ***Instead, they bought $20 million more***: exactly what they would ***not*** have done if they believed the stock were overvalued.  (Ex. V at 151-56.)  Plaintiff's "dilution" theory is therefore incoherent: Defendants cannot have been attempting to protect their dilution by executing a capital raise at an inflated price, given that they ***personally participated in the raise***.  And in any event, if Plaintiff were correct that Defendants realized tesetaxel was unlikely to be approved, then Defendants would have necessarily understood that Odonate would be wound down, at which point the company would be practically valueless and "dilution" would not matter.[10]

[9] Plaintiff's satellite theories of scienter are meritless for the reasons set forth in the Motion.  (See Mot. at 22-25 (discussing Odonate's work environment, the core operations doctrine, SOX certifications, Odonate's code of conduct, and Mr. Lemkey's resignation).)  Plaintiff says that Defendants "ignore[d]" allegations regarding data access.  (Opp. at 27.)  In fact, Defendants cited authority—wholly ignored by Plaintiffs—that a "secretive and isolationist" environment does not support scienter. (Mot. at 22 (citing In re Maxwell Techs., Inc. Sec. Litig., 18 F. Supp. 3d 1023, 1039 (S.D. Cal. 2014)).)  At any rate, Plaintiff offers no authority for the notion that unless a company grants broad internal access to its clinical data, it has the requisite intent for securities fraud.  As to Plaintiff's allegations sourced from CWs, no CW alleges firsthand knowledge of any Defendant's mental state.

[10] Plaintiff's authority for this dilution theory, In re Time Warner Inc. Securities Litigation, 9 F.3d 259 (2d Cir. 1993), is distinguishable on several grounds: (1) there was no indication the defendant intended to contribute funds to the capital raise at issue there, which would nix any dilution motive; (2) Time Warner was a company

At bottom, this case falls squarely within the Ninth Circuit's analysis in *Endologix*, 962 F.3d at 416. There, as here, the plaintiff alleged that the defendant knew its drug would not be approved by the FDA. And there, as here, there were no allegations that the defendants "sought to profit" by lying about the drug's approvability, for example, by "selling off their stock or selling the company at a premium." *Id.* at 415. Instead, the Ninth Circuit was asked—just as Plaintiff is asking this Court—to accept a theory that the defendants "were promising FDA approval for a [drug] application they knew was unapprovable, misleading the market all the way up to the point that defendants were unable to avoid the inevitable." *Id.*[11]

That theory did "not make a whole lot of sense" in *Endologix*, and it does not make a whole lot of sense here. It certainly is not as cogent an explanation as the non-culpable one: that Defendants believed in tesetaxel enough to invest a fortune of their own money in the drug, but the drug did not pan out. That is always a risk with experimental drugs, and Plaintiff knew as much when investing in Odonate. Plaintiff's attempt to hedge an investment bet with securities fraud litigation is meritless. The SAC should be dismissed.

---

that would survive and conduct ongoing business regardless of the success of the raise, making dilution concerns more plausible; and (3) *Time Warner* is a pre-PSLRA case, and the court applied a now-outdated standard for pleading scienter. *See id.* at 270 (scienter theory "arguable" after "all inferences [were] drawn in favor of the plaintiffs").

[11] Plaintiff attempts to walk back this theory, saying that Defendants have "hyperbolically miscast[]" the SAC as alleging that FDA approval was out of the question, when this is really a case about the relative risk of the FDA not approving tesetaxel. Defendants submit that the SAC speaks for itself. (*See, e.g.*, ¶ 54 (alleging that Defendants wrongfully "maintain[ed] that tesetaxel could be approved"); ¶ 60 (alleging Defendants knew CONTESSA's interim results "were grounds for the FDA to refuse approval"); ¶ 129(i) (faulting Defendants for "continu[ing] to tout tesetaxel's viability as an FDA-approved treatment").) But in any case, Plaintiff's theories of scienter make no more sense even if Plaintiff meant to allege only that Defendants understated the risk of non-approval. Once again, if Defendants legitimately believed that they were misleading investors about tesetaxel's chances of approval, and therefore that Odonate's stock was priced artificially high as a result, then Defendants *would not have bought $20 million worth of that stock at the prevailing price*.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

10

REPLY ISO MOT. TO DISMISS SAC
CASE NO. 3:20-CV-01828-H-LL

Dated:  July 26, 2021                                    COOLEY LLP


By: */s/ Ryan E. Blair*
     Ryan E. Blair

Attorneys for Defendants
Odonate Therapeutics, Inc., Kevin C.
Tang, Michael Hearne, and John G.
Lemkey