COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
RYAN E. BLAIR (246724)
(rblair@cooley.com)
STEPHEN RICHARDS (308868)
(srichards@cooley.com)
4401 Eastgate Mall
San Diego, California 92121-1909
Telephone:  +1 858 550 6000
Facsimile:   +1 858 550-6420

Attorneys for Defendants
Odonate Therapeutics, Inc., Kevin C. Tang,
Michael Hearne and John G. Lemkey

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN KENDALL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ODONATE THERAPEUTICS, INC., KEVIN C. TANG, MICHAEL HEARNE, and JOHN G. LEMKEY,<br><br>Defendants. | Case No. 3:20-cv-01828-H-LL<br><br>CLASS ACTION<br><br>**REPLY IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE AND FOR INCORPORATION BY REFERENCE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Date: August 16, 2021<br>Time: 10:30 a.m.<br>Courtroom: 15A<br>Judge: Hon. Marilyn L. Huff<br><br>**Oral Argument Requested** |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

## I.    INTRODUCTION

Plaintiff's Partial Opposition to Defendants' Request for Judicial Notice (the "RJN Opp.," Dkt. 28) challenges only whether the Court can judicially notice Exhibits G, I, L–O, Q, and R to the Declaration of Ryan E. Blair (the "Blair Declaration," Dkt. 25-2).   But in doing so, Plaintiff asks the Court to ignore documents in the ***public record*** that give crucial context to the very statements Plaintiff contends are false and misleading.  It is elementary in securities fraud cases like this one that the doctrines of judicial notice and incorporation by reference are appropriately used to show what information was available to market participants at a particular time, and to place allegedly false statements in context.  *See In re Amgen, Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1023-24 (C.D. Cal. 2008).  That is precisely what Defendants endeavor to do here, and their Request for Judicial Notice (the "RJN," Dkt. 25-4) should be granted.[1]

## II.    ARGUMENT

### A.    Exhibits G, I, L–O, Q, and R Are Subject to Judicial Notice

#### 1.    Analyst Reports (Exhibits I, N, O, Q, and R)

Plaintiff argues that the Court should not take notice of Exhibits I, N, O, Q, and R—all analyst reports discussing Odonate—because Defendants "impermissibly seek to introduce [these exhibits] for the truth of the contents therein." (RJN Opp. at 5.)  It is true, of course, that judicial notice does not always extend to the truth of a document's contents.  Defendants expressly acknowledged as much in their RJN. (RJN at 5:7-12.)  But these analyst reports are nevertheless subject to judicial notice and/or incorporation by reference for two reasons.

*First*, the SAC itself says that it is "based upon . . . ***analysts' reports and***

---

[1] Citations to "¶__" are to the Second Amended Complaint ("SAC").  (Dkt. 24.) Citations to "Ex.__" are to the Blair Declaration. (Dkt. 25-2.) Citations and quotation marks are omitted, and emphasis added, unless otherwise noted.

*advisories and other press coverage about Odonate*.” (SAC at 1.) Having pleaded that the SAC's claims are based on analyst reports, Plaintiff cannot now complain about Defendants putting those same, or similar, analyst reports before the Court. *See, e.g.*, *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1106, 1116 n.10 (C.D. Cal. 2003) (taking judicial notice of analyst reports “comparable in form and content” to reports quoted in the complaint, and explaining that having “rel[ied] heavily on such analysts' reports to state their claims,” the plaintiffs could “hardly complain” when the defendants used the same information). This is particularly true here because Plaintiff's allegation that “[a]nalysts” were “shocked” by CONTESSA's top-line results (¶ 9) is (1) wholly conclusory, and (2) not at all supported by the analyst reports that supposedly form the basis of the SAC. And courts may take judicial notice of documents that “create factual disputes with a plaintiff's *conclusory* allegations.” *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *7 (N.D. Cal. Apr. 28, 2020) (emphasis in original); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (“The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.”).

*Second*, in any case, Defendants do not cite these analyst reports for the truth of the matters contained in them, but to show the Court what information was available to the market: the paradigmatic use of judicial notice in securities fraud cases. *See In re Amgen*, 544 F. Supp. 2d at 1023-24. For example, Defendants cite Exhibit I to show that analysts warned investors of a “downside scenario” for tesetaxel that involved “the potential for safety issues to arise . . . .” (Dkt. 25-2 at 6 (citing Ex. I at 48).) This report is not used to show that such a “downside scenario” *actually existed*, or was *likely to occur*. Instead, it is used to show that warnings of a “downside scenario” were *in the public realm*—something that is particularly important for the Court to understand in light of Plaintiff's (unsupported) allegation that “Defendants shocked the market” by releasing CONTESSA's top-line results.

(¶ 54; *see also* Dkt. 25-2 at 7 n.2 (citing Ex. N[2] not for the truth of an analyst's opinion that concerns about neutropenia were "profoundly misplaced," but to show that such an opinion was being communicated to the market); *id.* at 18 (citing Ex. R to show that, contrary to Plaintiff's conclusory allegation, analysts shared Odonate's assessment of neutropenia as "manageable," not that the neutropenia was, in fact, manageable).)

### 2.   FDA Drug Labels (Exhibits L and M)

Plaintiff next argues that the FDA drug labels for capecitabine (which was the "control" arm in CONTESSA, and one-half of the tesetaxel-plus-capecitabine "treatment" arm) and docetaxel (another taxane) are not judicially noticeable because those drugs are not at issue in the case, or because the labels cannot be introduced for the truth of their contents. Plaintiff is wrong on both counts.

*First*, Plaintiff's suggestion that capecitabine is not "at issue" in this case is bewildering. (RJN Opp. at 1.) The SAC uses the word ***capecitabine*** more than ***three hundred times***. ***Every patient*** in the CONTESSA trial received capecitabine (sometimes with tesetaxel, and sometimes not). And Plaintiff's whole theory of the case is that Defendants committed fraud because tesetaxel's side effects "compare[d] unfavorably against such risks from treatment alternatives, ***like capecitabine alone***." (¶ 5.) Having premised the case on how capecitabine's side effects compare to tesetaxel's, Plaintiff cannot now object to the Court taking judicial notice of capecitabine's side effect profile, particularly in the form of a document as unassailable as an FDA label. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (giving FDA labels as an example of a document for which "authenticity" and "accuracy of the information displayed therein" cannot be questioned).

---

[2] Judicial notice of Exhibit N is particularly appropriate given that it is an analyst report by Cowen's Marc Frahm and Laura Christianson, the ***same analysts*** that authored the analyst report cited in ¶ 164 of the SAC. (*See* Ex. H.) That Plaintiff wants the Court to know only ***some*** of what these analysts said about Odonate is precisely why the doctrines of judicial notice and incorporation by reference exist.

So too with docetaxel, another taxane administered in conjunction with capecitabine. The SAC mentions docetaxel multiple times, specifically in the context of comparing **tesetaxel's** side effects with **docetaxel's** side effects when both drugs were administered with capecitabine. (¶¶ 58(i), 68(b); *see also* ¶ 129(a), (d) (quoting Mr. Tang comparing CONTESSA figures to those for "other taxanes," other taxane "doublets," or other treatments involving "two chemotherapies").) Because this comparison—tesetaxel against other taxanes—is at the heart of Plaintiff's case, Plaintiff cannot be allowed to prevent the Court from understanding what the side effects associated with other taxanes **actually are**, especially when those side effects were known to the investing public.[3]

*Second*, judicial notice **can** extend to facts, so long as those facts are "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The truth of the information contained in Exhibits L and M, labels produced by the FDA, cannot reasonably be questioned, which is why courts in this Circuit routinely take judicial notice of the **contents** of FDA drug labels. (*See* RJN at 5 (collecting authority).)

### 3.    Medical Journal Article (Exhibit G)

The Court also should take judicial notice of Exhibit G, a medical journal article concerning the rates at which drugs are approved by the FDA. It is uncontroversial, of course, that courts can take judicial notice of a "publication[] introduced to indicate what was in the public realm at the time, not whether the contents of [the publication] were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010). Here, Defendants seek judicial notice of Exhibit G to show that the article was in the public realm and therefore

---

[3] This distinguishes Plaintiff's authority cited in the RJN Opp., in which the FDA labels in question were for drugs "unrelated to the facts and claims" of the case. *Ferraro Family Found., Inc. v. Corcept Therapeutics Inc.*, 501 F. Supp. 3d 735, 752 (N.D. Cal. 2020).

would have been considered by investors who read Odonate's statements about CONTESSA. This is a permissible use of judicial notice. *See, e.g.*, *United States v. DaVita Inc.*, 2021 WL 1087769, at *2 (C.D. Cal. Feb. 1, 2021) (taking judicial notice of "eleven medical journal articles" "for the purpose of demonstrating that the articles exist, that they were published on a certain date, and that they contain the statements [a party] claims they contain").

And even if Defendants could be said to seek judicial notice of the truth of the *contents* of Exhibit G, Plaintiff does not persuasively contend that those contents are disputed such that judicial notice would be inappropriate. After all, Exhibit G simply counts the cancer drugs that gain FDA approval, and then counts the ones that do not. Plaintiff does not dispute those counts or otherwise argue that the information in Exhibit G is "subject to reasonable dispute." Fed. R. Evid. 201(b).[4]

### B.   The Court Need Not Convert Defendants' Motion to Dismiss to a Motion for Summary Judgment

Finally, Plaintiff contends that if the Court "grant[s] Defendants' request for judicial notice," it "must convert Defendants' [motion to dismiss] into a motion for summary judgment." (RJN Opp. at 6.) This is upside-down. The doctrines of incorporation by reference and judicial notice are "***exceptions to*** the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Accordingly, if the Court determines that these materials are subject to judicial notice, then by definition it ***need not*** convert Defendants' Rule 12 motion to a Rule 56 motion.[5]

---

[4] Plaintiff complains that Exhibit G reports "the percentage of drugs that ***generally*** proceed to FDA approval," but he does not dispute that Exhibit G ***correctly*** reports that percentage. (RJN Opp. at 4 (emphasis in original).) Plaintiff also says that Exhibit G is subject to possible "selection biases" (*id.*), but this is a misreading of Exhibit G, which explains that "[p]revious estimates" were "subject to potential selection biases"—hence the need for the updated survey that became Exhibit G. (Ex. G at 41.)

[5] Plaintiff cites *Wong v. Flynn-Kerper*, 999 F.3d 1205 (9th Cir. 2021), without noting that in that case, the Ninth Circuit applied the summary judgment standard because

## III.   CONCLUSION

Defendants' RJN should be granted.

Dated:        July 26, 2021                COOLEY LLP


By: */s/ Ryan E. Blair*
Ryan E. Blair

Attorneys for Defendants
Odonate Therapeutics, Inc., Kevin C. Tang, Michael Hearne and John G. Lemkey

the district court had considered "declarations," not materials in the public record. *Id.* at 1210. *Garot v. County of San Diego* also is inapposite, as it did not concern judicial notice or the incorporation by reference doctrine at all. 2019 WL 5963641 (S.D. Cal. Nov. 13, 2019) (Huff, J.). Instead, this Court uncontroversially determined that factual disputes regarding injuries to the plaintiff prisoner while in county custody were "better suited to a motion for summary judgment." *Id.* at 6. Neither *Garot* nor *Wong* stand for the proposition Plaintiff tries to assign to them; namely, that a district court must convert a motion to dismiss to a motion for summary judgment ***even if*** it determines that the judicial notice or incorporation by reference doctrines apply.