1  Jennifer Pafiti (SBN 282790)
2  **POMERANTZ LLP**
   1100 Glendon Avenue, 15th Floor
3  Los Angeles, CA 90024
   Telephone: (310) 405-7190
4  Email: jpafiti@pomlaw.com

5  *Counsel for Lead Plaintiff and Proposed Lead Class Counsel*

6  [Additional Counsel Listed on Signature Page]

7                    **UNITED STATES DISTRICT COURT**

8                    **SOUTHERN DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| 10 | Case No. 3:20-cv-01828-H-LL |
| 11  KEVIN KENDALL, Individually and on Behalf of All Others Similarly Situated, | **LEAD PLAINTIFF'S NOTICE OF** |
| 12 | **UNOPPOSED MOTION FOR** |
| 13                              Plaintiff, | **PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT &** |
| 14                        v. | **DIRECTING DISSEMINATION OF NOTICE TO THE CLASS AND** |
| 15 | **MEMORANDUM OF POINTS** |
| 16  ODONATE THERAPEUTICS, INC., KEVIN C. TANG, MICHAEL | **AND AUTHORITIES IN SUPPORT** |
| 17  HEARNE, and JOHN G. LEMKEY, | Date:   January 10, 2022 |
| 18 | Time:  10:30 a.m. |
| 19                          Defendants. | Place:  Courtroom 15A, 15th Floor |
| 20 | Judge:  Hon. Marilyn L. Huff |
| 21 | |

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 2

I.     INTRODUCTION ................................................................................ 2

II.    SUMMARY OF THE LITIGATION AND SETTLEMENT ............... 3

       A.    Procedural History ...................................................................... 3

       B.    Settlement Discussions and Negotiations ................................... 4

       C.    Summary of Key Terms of the Proposed Settlement ................. 5

             1.    Relief to Class Members ..................................................... 5

             2.    Class Notice and Settlement Administration .................... 5

             3.    Objection/Exclusion Provisions ........................................ 7

             4.    Release Provisions ............................................................. 7

             5.    Attorneys' Fees Award, Reimbursement of Expenses, Lead Plaintiff Award ......................................................... 8

III.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ................................................................................... 8

       A.    Preliminary Approval Standards ................................................ 8

       B.    The Settlement Resulted from Arm's Length Negotiations ........ 9

       C.    Reasonableness of the Settlement Fund ................................... 10

       D.    The Risk, Expense and Complexity of the Action ................... 13

       E.    The Proceedings Are Sufficiently Advanced to Permit Preliminary Approval of The Settlement ................................. 15

       F.    The Risks of Maintaining the Class Action Through Trial ....... 16

IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ............................................................................... 17

A. The Proposed Settlement Class Meets the Prerequisites for Class Certification Under Rule 23 ............................................ 17

    1. Numerosity ............................................................................ 19

    2. Commonality ......................................................................... 20

    3. Typicality ............................................................................... 21

    4. Adequacy ............................................................................... 22

    5. Common Questions of Law Predominate and a Class Action Is the Superior Method of Adjudication .............. 23

B. The Proposed Plan and Method for Notice Meets All Requirements ......................................................................... 25

C. Proposed Schedule for Final Approval ...................................... 29

V. CONCLUSION ......................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.,*
731 F.3d 952 (9th Cir. 2013) ................................................................. 20

*Alfus v. Pyramid Tech. Corp.,*
764 F. Supp. 598 (N.D. Cal. 1991) ........................................................ 21

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ................................................... 18, 21, 23, 24

*Athale v. Sinotech Energy Ltd.,*
No. 11-CV-05831-AJN, 2013 WL 11310685
(S.D.N.Y. Sept. 4, 2013) ....................................................................... 16

*Blackie v. Barrack,*
524 F.2d 891 (9th Cir. 1975) ....................................................... 18, 20

*Chinitz v. Intero Real Est. Servs.,*
No. 18-cv-05623-BLF, 2020 WL 7042871 (N.D. Cal. Dec. 1, 2020) .............. 25

*Churchill Vill., L.L.C. v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004) ................................................................. 13

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) ................................................................. 8

*Cohen v. U.S. Dist. Ct. for N. Dist. of California,*
586 F.3d 703 (9th Cir. 2009) ................................................................. 22

*Danis v. USN Commc'ns, Inc.,*
189 F.R.D. 391 (N.D. Ill. 1999) ............................................................ 21

*Erica P. John Fund, Inc. v. Halliburton Co.,*
563 U.S. 804 (2011) ............................................................................... 23

*Franco v. Ruiz Food Prod., Inc.*,
    No. 1:10-CV-02354-SKO, 2012 WL 5941801
    (E.D. Cal. Nov. 27, 2012) ................................................................. 12

*Gittin v. KCI USA, Inc.*,
    No. 09-CV-05843 RS, 2011 WL 1467360
    (N.D. Cal. Apr. 12, 2011) ................................................................. 25

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................... 8, 17, 22, 23

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ............................................................ 21

*Harris v. Palm Springs Alpine Ests., Inc.*,
    329 F.2d 909 (9th Cir. 1964) ............................................................ 19

*Hodges v. Akeena Solar, Inc.*,
    274 F.R.D. 259 (N.D. Cal. 2011) ................................................. 17, 22

*Ikonen v. Hartz Mountain Corp.*,
    122 F.R.D. 258 (S.D. Cal. 1988) ...................................................... 21

*In re Adobe Sys., Inc. Sec. Litig.*,
    139 F.R.D. 150 (N.D. Cal. 1991) ...................................................... 17

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................... 16

*In re Apple Comput. Sec. Litig.*,
    No. 84-20148-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ......... 14

*In re BofI Holding, Inc. Sec. Litig.*,
    No. 315CV02324GPCKSC, 2021 WL 3742924
    (S.D. Cal. Aug. 24, 2021) ................................................................. 23

*In re Cooper Cos. Inc. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009) ......................................... 17, 22, 24, 25

*In re Emulex Corp. Sec. Litig.*,
    210 F.R.D. 717 721(C.D. Cal. 2002) ............................................. 22, 24

*In re En Pointe Techs., Inc. Sec. Litig.*,
 No. 01CV0205 BEN (AJB), 2005 WL 8173600
 (S.D. Cal. May 31, 2005) ...................................................................................... 19

*In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.*,
 No. MDL 901, 1992 WL 226321 (C.D. Cal. June 10, 1992)............................ 10

*In re Initial Pub. Offering Sec. Litig.*,
 260 F.R.D. 81 (S.D.N.Y. 2009) ........................................................................... 24

*In re KaloBios Pharms., Inc. Sec. Litig.*,
 No. 5:15-CV-05841-EJD, 2017 WL 574444
 (N.D. Cal. Jan. 20, 2017) .................................................................................... 27

*In re LDK Solar Sec. Litig*,
 255 F.R.D. 519 (N.D. Cal. 2009) ......................................................................... 24

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000), *as amended* (June 19, 2000).............................. 14

*In re Omnivision Techs., Inc.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2008).................................................................. 9

*In re Pac. Enters. Sec. Litig.*,
 47 F.3d 373 (9th Cir. 1995).......................................................................... 10, 12

*In re Portal Software, Inc. Sec. Litig.*,
 No. C 03 5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) .............. 28

*In re Tableware Antitrust Litig.*,
 484 F. Supp. 2d 1078 (N.D. Cal. 2007)................................................................ 10

*In re Toronto-Dominion Bank Sec. Litig.*,
 No. 1:17-cv-01665-NLH-JS (D.N.J.), ECF No. 111 (July 18, 2019) .............. 27

*In re UTStarcom, Inc. Sec. Litig.*,
 No. C 04-04908 JW, 2010 WL 1945737
 (N.D. Cal. May 12, 2010)..........................................................17, 19, 20, 21, 24

*In re Wireless Facilities, Inc. Sec. Litig. II*,
 253 F.R.D. 607 (S.D. Cal. 2008) ........................................................................... 9

*Keirsey v. eBay, Inc.*,
    No. 12-cv-01200-JST, 2014 WL 644697 (N.D. Cal. Feb. 14, 2014)................25

*Khoja v. Orexigen Therapeutics, Inc.*,
    No. 15-cv-540 JLS (KSC), 2021 WL 1579251
    (S.D. Cal. Apr. 22, 2021).............................................................................9, 23

*Kim v. Sheraton Operating Corp.*,
    No. 17-cv-9247 FMO, 2021 WL 3598578 (CD. Cal. June 23, 2021) ..............26

*Knight v. Red Door Salons, Inc.*,
    No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ..................13, 14

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507 (9th Cir. 1978).........................................................................22

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) .........................................................................8

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .........................................................................20

*Monachelli, et al. v. Hortonworks, Inc.*,
    No. 3:16-cv-00980-SI (N.D. Cal.), ECF No. 66 (June 12, 2017) ....................27

*Murillo v. Pac. Gas & Elec. Co.*,
    266 F.R.D. 468 (E.D. Cal. 2010).....................................................................24

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................14

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San
    Francisco*,
    688 F.2d 615 (9th Cir. 1982)...........................................................................12

*Perez v. Higher One Holdings, Inc.*,
    No. 3:14-cv-00755 (D. Conn.), ECF No. 141 (Mar. 6, 2018)...........................27

*Perez-Funez v. Dist. Dir., I.N.S.*,
    611 F. Supp. 990 (C.D. Cal. 1984)...................................................................19

*Ramirez v. DeCoster*,
   203 F.R.D. 30 (D. Me. 2001) ............................................................. 24

*Rosenburg v. Int'l Bus. Mach. Corp.*,
   No. 06-cv-00430-PJH, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007)............ 9, 28

*Satchell v. Fed. Express Corp.*,
   No. C-03-2878-SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ...................... 9

*Schleicher v. Wendt*,
   618 F.3d 679 (7th Cir. 2010)........................................................ 24, 25

*Schwartz v. Harp*,
   108 F.R.D. 279 (C.D. Cal. 1985) ....................................................... 19

*Vathana v. EverBank*,
   No. C-09-02338 RS, 2010 WL 934219 (N.D. Cal. Mar. 15, 2010).................. 23

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) .............................................................. 26

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) and 4 ..................................................... 26

*Welling v. Alexy*,
   155 F.R.D. 654 (N.D. Cal. 1994) ...................................................... 19

*West v. Circle K Stores, Inc.*,
   No. CIV-S-04-0438-WBS-GGH, 2006 WL 1652598 (E.D. Cal.
   June 13, 2006)................................................................. 8, 10, 21, 29

*Yamner v. Boich*,
   No. C-92-20597 RPA, 1994 WL 514035 (N.D. Cal. Sept. 15, 1994) .............. 19

*Ybarrondo v. NCO Fin. Sys., Inc.*,
   No. 05 cv 2057-L(JMA), 2009 WL 3612864
   (S.D. Cal. Oct. 28, 2009) ............................................................... 23

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001), *opinion amended on denial of reh'g*,
    273 F.3d 1266 (9th Cir. 2001) ................................................................. 24

**Statutes**

15 U.S.C. § 78u-4(a)(7) ....................................................................... 25, 28

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 .... 3, 25, 26, 28

Securities Exchange Act of 1934 §10(b) ...................................................... 3

Securities Exchange Act of 1934 §20(a) ...................................................... 3

**Rules**

Fed. R. Civ. P. 23(a) ...................................... 17, 18, 19, 20, 21, 22, 23, 25

Fed. R. Civ. P. 23(b) ................................................................... 17, 18, 23, 25

Fed. R. Civ. P. 23(c) ........................................................... 6, 25, 26, 28

Fed. R. Civ. P. 23(e) ........................................................................... 8

Fed. R. Civ. P. 26(f) ........................................................................... 4

**TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on January 20, 2022, at 10:30 a.m., or as soon thereafter as the matter may be heard, Lead Plaintiff Kevin Kendall ("Lead Plaintiff") will, and hereby does, move the Honorable Marilyn L. Huff, located in James M. Carter and Judith N. Keep United States Courthouse, 333 West Broadway, Courtroom 15A, 15th Floor, San Diego, CA 92101, for an entry of an order: (1) granting preliminary approval of the proposed Settlement, which provides an aggregate recovery in the form of the Settlement Amount of twelve million seven hundred fifty thousand dollars ($12,750,000.00) as documented within the Stipulation of Settlement dated November 18, 2021, and the exhibits thereto (collectively the "Stipulation");[1] (2) preliminary certifying the Settlement Class,[2] appointing Lead Plaintiff as representative of the Settlement Class, and appointing Co-Lead Counsel as counsel for the Settlement Class; (3) approving the form and manner of giving notice of the proposed Settlement to the Settlement Class, including publishing notice substantially in the form of Stipulation Exhibit C and mailing notice to Settlement Class members substantially in the form of either Stipulation Exhibit B1 (short-form) or Stipulation Exhibit B2 (long-form), as the Court prefers, with all notices and the rest of the Stipulation to thereafter be posted on the Claims Administrator's website; and (4) setting a hearing for final approval thereof (the "Settlement Hearing") and a schedule for various deadlines relevant thereto.

---

[1]   All capitalized terms, unless otherwise defined herein, have the same meaning herein as set forth in the Stipulation.  A true and correct copy of the Stipulation and its exhibits are altogether attached hereto as Exhibit 1 to the declaration of Matthew L. Tuccillo in support of this motion.

[2]   The Settlement Class means all Persons or entities who purchased, or otherwise acquired, the stock of Odonate during the Settlement Class Period of December 7, 2017 through March 25, 2021, dates inclusive, subject to certain exclusions discussed below.

As demonstrated herein, Lead Plaintiff respectfully submits that the proposed Settlement is an excellent result for the Settlement Class under the circumstances; is fair, reasonable, and adequate under the governing standards within the Ninth Circuit; and warrants the approval of this Court.  In support of this Motion, which is filed with Defendants' consent, Lead Plaintiff submits herewith the below Memorandum of Points and Authorities and exhibits thereto, including the proposed Order Granting Preliminary Approval of Settlement (the "Preliminary Approval Order") that is Exhibit A to the Stipulation.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Lead Plaintiff respectfully submits this memorandum in support of his Motion for Preliminary Approval of Settlement (the "Motion"). The proposed Settlement, as embodied within the Stipulation, provides an aggregate recovery of twelve million seven hundred fifty thousand dollars ($12,750,000.00) to resolve the claims in this Action as to Defendants Odonate Therapeutics, Inc. ("Odonate"), Kevin C. Tang ("Tang"), Michael Hearne ("Hearne"), and John G. Lemkey ("Lemkey").

The Settlement, as detailed herein, is the product of extensive work by Co-Lead Counsel, which included the investigation of claims, preparation of the initial and two amended complaints, litigation of a motion to dismiss and, following this Court's order denying Defendants' motion to dismiss, engaging in intensive settlement negotiations with Defendants' counsel while preparing for discovery. As detailed below, the Settlement is an excellent result for Settlement Class members given the immediate financial recovery it provides compared to the substantial risks associated with further litigation, including rapidly escalating expenses, motions for summary judgment, extensive use of experts, the possibility of an unfavorable result at trial, and the inevitable appeals following trial, combined with the reality

that Odonate's financial condition presents significant questions about Defendants' ability to satisfy a substantial judgment against them.

## II.   SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.   Procedural History

On September 16, 2020, Lead Plaintiff Kendall filed a class action complaint for violation of the federal securities laws against Defendants (ECF No. 1).   On December 10, 2020, Lead Plaintiff filed a motion for appointment as lead plaintiff (ECF No. 10).   On December 14, 2020, Lead Plaintiff and Co-Lead Counsel were appointed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").   (ECF No. 11).

On February 16, 2021, Lead Plaintiff filed his First Amended Complaint (ECF No. 21) ("FAC").   After Odonate announced it was discontinuing operations, Lead Plaintiff chose to further amend before the Court ruled on any dispositive motion, and thereafter filed the operative Second Amended Complaint ("SAC") (ECF No. 24), on April 13, 2021.   The SAC asserted claims against all the Defendants under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, alleging that Defendants made material misstatements and omissions between December 7, 2017 and March 19, 2021, both dates inclusive (ECF No. 24).   The SAC alleged, *inter alia*, that the Defendants unlawfully inflated Odonate's stock price by misleading investors about the development of Odonate's cancer drug, tesetaxel, its Phase 3 Clinical Trial CONTESSA, and the likelihood of its FDA approval.   The SAC further alleged that Defendants made a partial corrective disclosure on August 24, 2020, when Odonate announced top-line safety results from CONTESSA, but Defendants continued issuing false and misleading statements, including in connection with public offerings, thus further extending the fraud until March 25, 2021, when Odonate announced that tesetaxel's clinical trial package was unlikely to support its FDA

3

approval and that Odonate would wind down operations.  The SAC alleged that Defendants' statements had artificially inflated Odonate's stock price and, when the truth was revealed and the stock price fell as a result, Class Members suffered injury.

On May 13, 2021, Defendants filed their motion to dismiss the SAC, supported by a memorandum of law, declaration, and various materials for which they sought judicial notice (ECF Nos. 25- 25-4).  Lead Plaintiff opposed Defendants' motion on June 26, 2021, (ECF No. 30), and Defendants filed their reply on July 26, 2021 (ECF No. 32).  On August 4, 2021, Judge Huff entered an Order (ECF No. 36) denying Defendants' motion in full.  Defendants answered the SAC on September 3, 2021.  (ECF No. 37.)

**B.**     **Settlement Discussions and Negotiations**

After the Court's Order, during early work towards discovery, the Parties discussed the possibility of resolving the case and agreed to mediation before Michelle Yoshida, Esq. of Phillips ADR Enterprises.  Beforehand, the parties exchanged mediation statements and exchanged other preliminary information. Co-Lead Counsel also prepared a draft schedule for the Joint Discovery Plan to be filed pursuant to Fed. R. Civ. P. 26(f) and began drafting written discovery requests, so that Co-Lead Counsel could prosecute the case expeditiously should the mediation fail to produce a settlement.

On September 20, 2021, the Parties held a virtual mediation.  Despite a full day of negotiations and extensive work with the mediator, the Parties were unable to reach a settlement.  Over the next three weeks, the Parties continued to discuss and negotiate a settlement.  These negotiations culminated in an agreement to settle the Action in principle, and, after continued intensive negotiations and exchanges of drafts and redlines, a Memorandum of Understanding was executed October 19, 2021.

The Parties then engaged in intensive and extensive negotiations to formalize the Settlement in the Stipulation.  Over the ensuing weeks, Co-Lead Counsel and counsel for Defendants engaged in telephonic and written correspondence, including exchanging and negotiating redlines of documents, to finalize the Stipulation and its accompanying Exhibits.

### C.   Summary of Key Terms of the Proposed Settlement

#### 1.   Relief to Class Members

In full and final settlement of all claims in this Action, and all claims that have been or could have been asserted by Settlement Class Members or Lead Plaintiff against Defendants and Released Parties in the Action, the Defendants shall pay the Settlement Amount of twelve million seven hundred fifty thousand dollars ($12,750,000.00) into the Escrow Account within fifteen (15) business days after the Court's entry of an order granting preliminary approval of the Settlement. *See* Stipulation ¶¶1.32, 2.0.

#### 2.   Class Notice and Settlement Administration

<u>Notice</u>.  Within twenty-one (21) days after the entry of the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), Co-Lead Counsel, through the third-party Claims Administrator, Strategic Claims Services, shall cause a copy of the Notice and the Proof of Claim, substantially in the forms of Stipulation Exhibit B1 or B2 (as the Court chooses) and D, respectively, to be mailed by First-Class Mail to all Settlement Members who can be identified with reasonable effort and will arrange for Publication Notice, substantially in the form of Stipulation Exhibit C, to be published once over a national newswire service. The Stipulation and its Exhibits will also be posted on the Claims Administrator's website.  *See* Stipulation ¶¶1.16, 1.22, 1.23; Exhibit A ¶4(b).

The Notice describes in plain English the terms of the Settlement; the considerations and risks that led Co-Lead Counsel and Lead Plaintiff to conclude that it is fair and adequate; the maximum attorneys' fees award, expense reimbursement, and compensatory awards to the Lead Plaintiff that may be sought; the proposed Plan of Allocation, the procedure for objecting to and opting out of the Settlement, and the date and place of the Settlement Hearing.  Here, Lead Plaintiff has given the Court a choice between a traditional, long-form notice (Stipulation Exhibit B1), which is longer to read and more costly to mail, or, consistent with recent modernization trends, a short-form notice (Stipulation Exhibit B2), which is more streamlined, is cheaper to mail, and directs Settlement Class Members to a website where they can learn more information about the Settlement.  *See* Stipulation ¶¶1.16, 4.0.  Counsel for Lead Plaintiff has offered the same choice to other federal courts, which have appreciated the flexibility and chosen the short-form notice, as discussed, *infra*.  This more streamlined notice, which refers recipients to the Claims Administrator's website, where additional materials including the Stipulation and long-form notice are posted for review and/or printing, is in line with recent amendments to the Federal Rules of Civil Procedure.  *See, e.g.*, Fed. R. Civ. P. 23(c)(2)(B).  This notice program will fairly apprise Settlement Class Members of the Settlement and their options with respect thereto, and fully satisfies due process requirements.

Administration. The Claims Administrator will administer distribution of the Net Settlement Fund pursuant to the Stipulation. Per the Stipulation, Defendants shall pay or cause to be paid the Settlement Amount, to be held in the interest-bearing Escrow Account to be controlled by the Escrow Agent, Huntington National Bank, for the benefit of the Settlement Class, with all interest to accrue for the benefit of the Settlement Class.  *See* Stipulation ¶¶1.9, 1.31.  Once the Settlement becomes Final following entry of the Final Judgment, substantially in

the form of Stipulation Exhibit E (the "Judgment"), no monies shall revert to Defendants or any other person or entity that paid any portion of the Settlement Amount. *Id*. ¶2.5.

Costs of Administration. Within seven (7) days after the payment of the Settlement Amount into the Settlement Account, the Escrow Agent may transfer up to three hundred thousand dollars ($300,000.00) into an interest-bearing escrow account ("Notice & Administration Account") to pay the Claims Administrator's reasonable, necessary, and actually incurred Notice & Administration Costs related to the Settlement. *Id*. ¶2.6.

### 3.    Objection/Exclusion Provisions

Any Settlement Class Member who wishes to object to the fairness of the Stipulation or the Settlement must, by the objection deadline set forth in the Notice, file any such objection with the Court, and provide copies of the objection to Lead Counsel, Defendants' Counsel, the Settlement Administrator, and the Court.

Any Settlement Class Member who wishes to be excluded from the Settlement may submit a written exclusion request, no later than the deadline set forth in the Notice, to the Settlement Administrator.

### 4.    Release Provisions

The Stipulation sets forth mutual, reciprocal releases, which were the subject of hard-fought, arm's length negotiation. As set forth in Stipulation ¶1.25, the "Released Claims" include both the "Released Defendant Claims," which are set forth in Stipulation ¶¶1.26 and 5.2, and the "Released Settlement Class Claims," which are set forth in Stipulation ¶¶1.27 and 5.1. As per Stipulation ¶1.28, the Released Parties include not only Defendants and related persons and entities (with respect to the Released Settlement Class Claims), but also Lead Plaintiff, Co-Lead Counsel, and Settlement Class Members (as regards to the Released Defendant Claims).

1
2

**5.     Attorneys' Fees Award, Reimbursement of Expenses, Lead Plaintiff Award**

3
4
5
6
7
8
9
10
11
12

The Notice informs Settlement Class Members that, as compensation for services rendered on a contingent basis on behalf of the Settlement Class, Co-Lead Counsel intends to seek an attorneys' fee award not to exceed one third (33 1/3%) of the Settlement Amount and for reimbursement of expenses up to one hundred thousand dollars ($100,000.00) advanced in connection with the Action up to the point of the Settlement.  *See* Stipulation §II.H.; Exhibit B1 at 2, 9.  The Notice further informs the Class that Lead Counsel will ask the Court to provide a compensatory award to Lead Plaintiff of up to five thousand dollars ($5,000.00) for reimbursement of reasonable costs and expenses incurred by Lead Plaintiff related to his representation of the Settlement Class.  *Id.*

13
14

**III.   <u>PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED</u>**

15

**A.     Preliminary Approval Standards**

16
17
18
19
20
21
22
23
24

Fed. R. Civ. P. 23(e) requires Court approval for a class action settlement. The Ninth Circuit maintains a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *West v. Circle K Stores, Inc.*, No. CIV-S-04-0438-WBS-GGH, 2006 WL 1652598, at *1 (E.D. Cal. June 13, 2006). Approval of a proposed class action settlement is within the broad scope of authority of the district court, consistent with this long-standing policy favoring settlements. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).

25
26
27

The class action settlement approval process involves two steps: first, preliminary approval, followed by notice to the class; and second, final approval. The class action settlement approval process involves two steps: first, preliminary

28

approval, followed by notice to the class; and second, final approval. "[A]t the preliminary approval stage, approval should be granted if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Khoja v. Orexigen Therapeutics, Inc.*, No. 15-cv-540 JLS (KSC), 2021 WL 1579251, at *6 (S.D. Cal. Apr. 22, 2021); *see also, e.g.*, *Rosenburg v. Int'l Bus. Mach. Corp.*, No. 06-cv-00430-PJH, 2007 WL 128232 at *5 (N.D. Cal. Jan. 11, 2007) (granting preliminary approval where "[s]ettlement has no obvious defects and is within the ranges of possible Settlement approval such that notice to the Class is appropriate"); *Satchell v. Fed. Express Corp.*, No. C-03-2878-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (preliminarily approving non-collusive settlement that had no obvious defects and was within the range of fairness).

## B. The Settlement Resulted from Arm's Length Negotiations

There is an initial presumption of fairness for a proposed settlement that results from arm's-length negotiations. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008); *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008). Here, the proposed Settlement is the product of arm's length negotiations between Lead Plaintiff, through Co-Lead Counsel, and the Defendants, through their counsel. As noted above, to reach a just resolution for the putative class, Co-Lead Counsel negotiated with counsel for the Defendants on numerous occasions, either via videoconference, telephonically, in writing, or some combination thereof, over time, to reach an agreement to settle the case and to arrive at the terms of the Memorandum of Understanding ("MOU"). The Parties thereafter conducted additional, extensive, arm's-length negotiations as to the key terms, which included exchanges between the Parties of drafts and redlines of both the MOU and the Stipulation and its Exhibits. As a result of these extensive efforts,

Lead Counsel was able to negotiate a fair Settlement, considering the costs and risks of continued litigation, including the inherent problems of proof of, and possible defenses to, the federal securities law violations asserted in the Action, as well as the financial condition of Odonate.

The settlement negotiations undertaken in connection with the Settlement produced a result that the Parties believe to be within their respective best interests. Co-Lead Counsel and the Defendants' counsel believe that they have come to an agreement for a fair, adequate, and reasonable Settlement.  Counsel for the Parties are highly experienced in this category of complex litigation, and the opinion of well-informed and experienced counsel in support of a class action settlement should be given significant weight.  *See, e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation"); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007); *In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) (counsel's opinion favoring settlement is a compelling factor.

### C.    Reasonableness of the Settlement Fund

"[A]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'"  *West*, 2006 WL 1652598, at *11 (citation omitted); James W. Moore, et al., MOORE'S FED. PRAC., ¶23.8102-1, at 23-479 (2d ed. 1993).   Under this Settlement, the Defendants will pay twelve million seven hundred fifty thousand dollars ($12,750,000.00), which represents a significant benefit to the Settlement Class.

The law and public policy that favors settlements is particularly strong here where an eight-figure recovery provides an excellent result given the procedural posture of the case and considerable concerns over Defendants' ability to pay a

10

more substantial judgment.  This Court, after careful consideration of detailed briefing by the parties and in a well-reasoned Order, found that Lead Plaintiff's claims were sufficiently pled and could proceed to discovery. However, Defendants mounted a strong fight in support of their efforts to obtain dismissal and would continue to contest the merits of the case through summary judgment or trial. Additionally, Odonate is in the process of winding down operations and, after exchanging information regarding available insurance, Lead Counsel has serious concerns regarding Defendants' ability to satisfy any future judgment. These considerations also favored entering into the Settlement before litigation costs rapidly escalated during discovery, making the Action even more difficult to resolve, and further reducing any potential future recovery.

It is exceedingly difficult to compare the Settlement to any theoretical amount that the Settlement Class could have potentially obtained from the Defendants had it successfully survived attacks on class certification, *Daubert* motions, and/or summary judgment, and ultimately established liability at trial. Such outcomes are highly speculative, particularly given the early stage of the Action, and would have required years of additional efforts at high cost to attempt. During the settlement negotiations, the Defendants maintain that they have meritorious defenses to the claims alleged in the Action, and they denied, and continue to deny, each and every claim alleged in the Action; all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged in the Action; the allegations that any of the Defendants made any material misstatements or omissions; and that any member of the Settlement Class has suffered damages resulting from the conduct alleged in the Action.  Defendants made it clear they intended to raise such challenges at every opportunity, making any further successful prosecution of the Action and any theoretical recovery highly uncertain.

While Lead Plaintiff and Co-Lead Counsel believe the claims were meritorious, they understood and acknowledged these considerable risks, concluding it was in the Settlement Class's best interests to settle with the Defendants now in light of these factors, among others: (1) the immediate benefits of the significant cash consideration of the Settlement; (2) the avoidance of the uncertainties, burden, risk, and expense of further litigation as to the Defendants, particularly given concerns over Defendants' continued financial ability to satisfy a judgment; (3) the cost and time necessary to prosecute the Action through trial and one or more appeals; (4) the challenges asserted by and available to the Defendants that could reduce claimed damages; and (5) the value obtained for the Settlement Class. Lead Plaintiff and Co-Lead Counsel have properly accounted for the likelihood of success in agreeing to settle their claims. *See Franco v. Ruiz Food Prod., Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *11 (E.D. Cal. Nov. 27, 2012) (settlement approval favored where the plaintiffs properly accounted for their likelihood of success).

Lead Plaintiff's expert indicated that, based on the allegations in the SAC, class-wide damages using different models ranged from $331.7 million to $365.5 million. Compared to this range of damages, the Settlement represents an excellent result, returning 3.84% of estimated damages (using the low end of the range) or 3.49% (using the high end of the range). As such, the Settlement Amount falls well within the range of possible approval, particularly considering the substantial risks and challenges outlined above. *See In re Pac. Enters.*, 47 F.3d at 377-78 (affirming settlement where potential recovery of over $1 billion was far larger than the $12 million settlement but was appropriate under the circumstances); *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair");

*Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *3 (N.D. Cal. Feb. 2, 2009) ("The immediacy and certainty of the settlement award justifies a recovery smaller than the Class Members could seek in the case."); *see also* Cornerstone Research, Securities and Class Action Settlements, 2020 Review and Analysis, at 6 (2020) (median 2020 recovery as percentage of "simplified tiered damages" was 3.9% for securities class actions with damages of $250 - $499 million).

Lead Plaintiff, having considered the myriad risks of continued litigation, respectfully submits that, if the Court preliminarily approves the Settlement, the Court ultimately will find that the Settlement is fair, reasonable, and adequate and is deserving of final approval, once the Settlement Class has had a chance to speak following dissemination of the Notice. The Settlement is within the range of possible approval and deserves to be presented to Settlement Class Members, who will have every opportunity through the exclusion and objection process provided for in the Stipulation, the mailed Notice, and the Publication Notice to decide whether the Settlement is fair. The Court's ultimate assessment of the Settlement at the final approval stage would benefit from knowing whether Settlement Class Members generally support or reject the Settlement.

### D. The Risk, Expense and Complexity of the Action

The fairness of the Settlement is further underscored when the obstacles the Settlement Class faced in succeeding on the merits, as well as the expense and likely duration of the litigation, are considered. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004). This Action would have required a significant amount of additional time to conduct discovery and would also have faced a battle over class certification, experts, summary judgment and then a trial – all of which would be very expensive, time-consuming, and highly risky. It is all the riskier given that Lead Plaintiff has thoughtfully considered Defendants'

13

insistence that they would continue to put up a vigorous defense through summary judgment, or, if necessary, trial, as well as Defendants' uncertain financial viability.

A securities class action is an inherently complex and lengthy litigation to prosecute.  As discussed above, the Defendants have steadfastly maintained that Lead Plaintiff would not be able to survive summary judgment and contested or would contest numerous elements of Lead Plaintiff's claims, including falsity, materiality, scienter, loss causation, and damages.  Although Lead Plaintiff believes Defendants' arguments lack merit, a substantial risk exists that the Defendants would prevail on one or more of their arguments at summary judgment, or ultimately at trial.[3]

In this context, the Settlement will confer an immediate, substantial benefit to the Settlement Class and eliminate the risk of continued litigation as to the Defendants under circumstances where a favorable outcome against them is far from certain and could lead to no recovery at all. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000), *as amended* (June 19, 2000) (affirming approval of settlement because "[c]omplex litigation is inherently uncertain and Plaintiffs would have had much difficulty proving scienter"); *see also Red Door*, 2009 WL 248367, at *3 (settlement agreement offered an immediate and certain award for the class that was a superior alternative to continued litigation in light of the uncertain risks associated with plaintiffs' claims); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and

---

[3]     Even if Lead Plaintiff were to prevail at trial, risks to the Settlement Class would remain. For example, the Defendants certainly would initiate a lengthy and costly appeal process to challenge the verdict. Moreover, any verdict returned by a jury would be subject to the presiding judge's evaluation and, as such, could be overturned. *See, e.g.*, *In re Apple Comput. Sec. Litig.*, No. 84-20148-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (judgment notwithstanding the verdict for the individual defendant and a new trial ordered against the corporate defendant).

approval are preferable to lengthy and expensive litigation with uncertain results.")
(internal citation omitted).

### E.   The Proceedings Are Sufficiently Advanced to Permit Preliminary Approval of The Settlement

Lead Plaintiff, through Co-Lead Counsel, has vigorously protected the rights of the Settlement Class.  Lead Plaintiff has conducted an extensive investigation, which translated into the filing of multiple complaints, including the initial complaint filed on September 16, 2020, the FAC filed February 16, 2021, and the comprehensive SAC filed on April 13, 2021, which detailed facts discovered during Co-Lead Counsel's investigation.   Co-Lead Counsel's investigation included, among other things: (i) interviews with many former Odonate employees, during continued monitoring of the employment status of company employees as Odonate wound down its business operations; (ii) consultation with, and analysis by, damages experts; (iii) review of Odonate's public statements, SEC filings, annual reports, press releases, and other publicly available information; (iv) review of analysts' reports and articles relating to Odonate; (v) research into the Individual Defendants' venture capital activities and ownership stakes in Odonate and other pharmaceutical companies; (vi) research into Odonate's public offerings and equity capital raises; and (vii) research of the applicable law with respect to the claims and the potential defenses thereto.  Lead Plaintiff, through Co-Lead Counsel, litigated a hard-fought motion to dismiss, which fully vetted the operative pleadings.  As the case entered the discovery phase, Lead Plaintiff, through Co-Lead Counsel, negotiated the Settlement through an exchange of mediation statements, a full-day mediation before a skilled mediator, and extensive and intensive additional negotiations before and after the mediation.  Throughout, Lead Plaintiff and Co-Lead Counsel also had the benefit of seeing and testing Defendants' merits arguments in extensive dispositive motion papers, which prompted the Court's

valuable insights as set forth in its detailed Order, and understanding Defendants' positions on liability and damages as set forth in Defendants' mediation statement and as discussed from the neutral perspective of an experienced mediator.

As a result, Lead Counsel is thoroughly familiar with the facts of the case and has had ample opportunity to assess the strengths and weaknesses of the claims in which to appraise the sufficiency of the Settlement. *See, e.g.*, *Athale v. Sinotech Energy Ltd.*, No. 11-CV-05831-AJN, 2013 WL 11310685 at *4 (S.D.N.Y. Sept. 4, 2013) (approving partial settlement of securities class action at parallel stage of proceedings); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425– 426 (S.D.N.Y. 2001) ("To approve a proposed settlement . . . the Court need not find that the parties have engaged in extensive discovery.  Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.") (quotation marks and citations omitted). After all that work, Lead Plaintiff and Lead Counsel firmly believes that the Settlement is in the best interests of Lead Plaintiff and the Settlement Class.

## F.     The Risks of Maintaining the Class Action Through Trial

To be entitled to class certification, Lead Plaintiff must show that common issues predominate over individual issues. But for the Defendants' consent to certification of the Settlement Class for purposes of effectuating the Settlement, Lead Plaintiff would have to meet his burden by showing that Odonate's stock trades on an efficient market, entitling purchasers to the presumption of reliance on the Defendants' alleged materially false statements. While it is not unusual for courts to certify securities class actions, it is by no means automatic – particularly given Defendants' preliminary challenge to the length of the proposed Class Period and the inevitable battle of experts at the class certification phase, which, among other things, would have had to account for the volatility in Odonate's stock in the

16

latter stages of the class period once tesetaxel's prospects became clouded and the company's future more uncertain. Thus, without the Settlement, the Settlement Class risks that certification would not be granted.

## IV.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

### A.   The Proposed Settlement Class Meets the Prerequisites for Class Certification Under Rule 23

The Ninth Circuit has long recognized that class actions may be certified for the purpose of settlement only. *See, e.g.*, *Hanlon*, 150 F.3d at 1019. Rule 23(a) sets forth the following four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation.    *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 349 (2011). In addition, the class must meet one of the three requirements of Rule 23(b).   *See* Fed. R. Civ. P. 23; *In re UTStarcom, Inc. Sec. Litig.*, No. C 04-04908 JW, 2010 WL 1945737, at *3 (N.D. Cal. May 12, 2010) (citing *Hanlon*, 150 F.3d at 1019).

Courts routinely endorse the use of the class action device to resolve claims brought pursuant to the federal securities laws. *See, e.g.*, *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 266 (N.D. Cal. 2011); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009). "[C]lass actions commonly arise in securities fraud cases as the claims of separate investors are often too small to justify individual lawsuits, making class actions the only efficient deterrent against securities fraud." Accordingly, courts within the Ninth Circuit typically hold a liberal view of class actions in securities litigation. *See, e.g., In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991) (citations omitted); *see also Cooper*, 254 F.R.D. at 642 ("The availability of the class action to redress such frauds has been consistently upheld in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the

securities laws.") (quoting *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975)). This Action is no exception, and Lead Plaintiff respectfully submits that the proposed Settlement Class satisfies each of the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).

Moreover, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Indeed, "[t]he type of certification approval that courts provide with a preliminary settlement approval is accorded under a 'more relaxed' standard" than in the typical certification process. 4 *NEWBERG ON CLASS ACTIONS* § 13:18 (5th ed. 2012).

The Settlement Class is defined as all persons who purchased or otherwise acquired the stock of Odonate between December 7, 2017 and March 25, 2021, both dates inclusive, subject to extensive exclusions, which the Defendants helped identify under the terms of the Stipulation and which ensured that the Settlement Fund is delivered only to those investors who were unaffiliated with Defendants.[4] *See* Stipulation ¶1.33. Significantly, these negotiated exclusions removed over 23 million shares from the Settlement Class, thereby increasing the per-share recoveries for the remaining Settlement Class Members. Thus, the proposed Settlement Class meets the prerequisites for class certification, particularly under the "more relaxed" standard that is to be applied at this stage when a court is considering preliminary approval of a settlement.

---

[4]     Per Stipulation ¶1.33, the Settlement Class excludes "Defendants; members of their immediate families and their affiliates; any entity in which any Defendant had a controlling interest during the Settlement Class Period; any person who served as an officer or director of Odonate during the Settlement Class Period; the judges presiding over the Action and the immediate family members of such judges; certain Odonate shareholders and their affiliated entities as set forth on the Settlement Exclusion List, as derived from Part III of Odonate's Form 10-K for the period ending December 31, 2020; and the successors, heirs, and assigns of any excluded person."

### 1. Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. The Ninth Circuit has stated that "'impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). "Numerosity is generally assumed to have been met in class action suits involving nationally traded securities." *In re En Pointe Techs., Inc. Sec. Litig.*, No. 01CV0205 BEN (AJB), 2005 WL 8173600, at *4 (S.D. Cal. May 31, 2005) (internal quotations omitted). Indeed, classes consisting of as few as 25 members have been held to be large enough to justify certification. *See, e.g.*, *Perez-Funez v. Dist. Dir., I.N.S.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984); *see also Welling v. Alexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994) (no set cut-off number for numerosity). Additionally, the exact size of the class need not be known so long as general knowledge and common sense indicate that the class is large. *Id.*; *see also Schwartz v. Harp*, 108 F.R.D. 279, 281-82 (C.D. Cal. 1985) ("A failure to state the exact number in the proposed class does not defeat class certification, and plaintiff's allegations plainly suffice to meet the numerosity requirement of Rule 23.") (citations omitted).

Here, Odonate shares traded on the NASDAQ, and there were over 38 million shares of its common stock outstanding as of May 7, 2021. *See* Odonate 10-K, filed May 14, 2021. Accordingly, even after the exclusion of insider shares as discussed above, the proposed Settlement Class consists of at least hundreds, and perhaps thousands, of investors who purchased Odonate shares during the Settlement Class Period. A class of this size is sufficiently numerous to make individual joinder impracticable. *See In re UTStarcom*, 2010 WL 1945737, at *4; *Yamner v. Boich*, No. C-92-20597 RPA, 1994 WL 514035, at *3 (N.D. Cal. Sept. 15, 1994). Thus, the numerosity element is easily satisfied.

## 2.    Commonality

Fed. R. Civ. P. 23(a)(2) is satisfied where the proposed class representatives share at least one question of fact or law with the claims of the prospective class. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012). Commonality exists even if there are varying fact situations among individual members of the class, so long as the claims of the plaintiffs and other class members are based on the same legal or remedial theory. *Blackie*, 524 F.2d at 902. Even just a single common question of law or fact, if significant, may satisfy the commonality requirement. *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013).

Here, common questions of fact and law include: (i) whether the Defendants' alleged conduct violated the federal securities laws; (ii) whether statements made by the Defendants to the investing public during the Settlement Class Period misrepresented and/or omitted material facts about Odonate, including, *e.g.*, tesetaxel's risk-safety profile, a high rate of adverse events encountered during CONTESSA, a revision to the CONTESSA trial protocol, and/or tesetaxel's prospects for FDA approval; (iii) whether the Defendants acted knowingly or recklessly in issuing any false and misleading public statements; (iv) whether the price of Odonate securities during the Settlement Class Period was artificially inflated by the Defendants' conduct; and (v) the extent of damages suffered by the Settlement Class and the appropriate measure for those damages.

Securities actions containing common questions such as the ones listed above repeatedly have been held to be prime candidates for class certification. *See, e.g.*, *In re UTStarcom*, 2010 WL 1945737, at *4 (finding common questions of law and fact as to whether "Defendants engaged in a fraudulent scheme and omitted or misrepresented material facts," whether the "publicly traded securities were artificially inflated," and whether "Defendants' . . . omissions caused class members to suffer economic losses"). Because the core complaint of all Settlement

20

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY
APPROVAL OF SETTLEMENT
Case No. 3:20-cv-01828-H-LL

Class Members is that they purchased Odonate stock at artificially inflated prices, the commonality requirement of Rule 23(a)(2) is satisfied.

### 3.   Typicality

Fed. R. Civ. P. 23(a)(3)'s typicality requirement is satisfied when the claims or defenses of the party representing the class are typical of those of other class members. *See Amchem*, 521 U.S. at 625 (common issues test readily met in securities cases). "[A] plaintiff's claim is typical if it arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988). Differences in the amount of damage, size or manner of purchase, nature of the purchaser, or date of purchase are insufficient to defeat class certification. *See Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 606 (N.D. Cal. 1991). In other words, typicality exists "even where factual distinctions exist between the claims of the named representative and the other class members." *Danis v. USN Commc'ns, Inc.*, 189 F.R.D. 391, 395-97 (N.D. Ill. 1999) (citation omitted); *see also West*, 2006 WL 1652598, at *5.

Lead Plaintiff's claims arise from the same events or course of conduct giving rise to other Settlement Class Members' claims and are based on the same legal theories. *See In re UTStarcom*, 2010 WL 1945737, at *5 (the test for typicality is "whether 'other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct'") (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Indeed, Rule 23(a)(3) typicality exists because the claims of all Settlement Class Members derive from the same legal theories and set of operative facts. Lead Plaintiff, like the other Settlement Class Members, purchased Odonate stock in the same manner and pursuant to the same alleged fraud (*i.e.*, the same alleged false and misleading

statements and omissions by the Defendants are alleged to have artificially inflated Odonate's stock price). *See In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717 721 (C.D. Cal. 2002) ("[t]he predominant questions of law or fact at issue in this case are the alleged misrepresentation Defendants made during the Class Period and are common to the class").  Lead Plaintiff is not subject to any unique defenses that could make him atypical of Settlement Class Members.  Thus, his claims are typical of the claims of the Settlement Class. *See Hodges*, 274 F.R.D. at 266-67; *Cooper*, 254 F.R.D. at 635-36.

### 4.    Adequacy

To satisfy Fed. R. Civ. P. 23(a)'s requirement to fairly and adequately protect the Settlement Class's interests, a proposed class representative must be free of interests that are antagonistic to the other class members, and proposed class counsel must be qualified, experienced, and capable of conducting the litigation. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at 1020.  Here, as described above, Lead Plaintiff has claims that are typical of and coextensive with those of the Settlement Class, having purchased Odonate stock at prices alleged to have been artificially inflated due to the Defendants' alleged materially false and misleading statements and/or omissions. Moreover, district Courts should generally defer to a Lead Plaintiff's choice of counsel. *Cohen v. U.S. Dist. Ct. for N. Dist. of California*, 586 F.3d 703, 712 (9th Cir. 2009).  Lead Plaintiff has retained counsel highly experienced in securities class action litigation, who have successfully prosecuted many securities and other complex class actions throughout the United States and recovered substantial monies for clients and class members.  Together, Lead Plaintiff and Co-Lead Counsel have performed a thorough investigation relating to the claims and the underlying events, litigated a hard-fought dispositive motion, and engaged in intensive negotiations to reach the Settlement. Thus, Lead Plaintiff is an adequate

representative of the Settlement Class, and Co-Lead Counsel (as has already been demonstrated) is qualified, experienced, and capable of prosecuting this Action in accordance with Fed. R. Civ. P. 23(a)(4).

### 5.   Common Questions of Law Predominate and a Class Action Is the Superior Method of Adjudication

The Settlement also satisfies Fed. R. Civ. P. 23(b)(3), which requires that the proposed class representative show that common questions of law or fact predominate over individual questions and that a class action is superior to other methods of adjudication.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011); *In re BofI Holding, Inc. Sec. Litig.*, No. 315CV02324GPCKSC, 2021 WL 3742924, at *9 (S.D. Cal. Aug. 24, 2021); *Vathana v. EverBank*, No. C-09-02338 RS, 2010 WL 934219, at *2 (N.D. Cal. Mar. 15, 2010) (noting that "subsection [23(b)(3)] encompasses 'those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results'") (quoting Fed. R. Civ. P. 23 1966 advisory committee's note).

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.  "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Khoja*, 2021 WL 1579251, at *5 (citing *Amchem Prods.,* 521 U.S. at 623).  When certifying a class for settlement purposes only, the standards for establishing Rule 23(b)(3) "superiority" may be relaxed, because the Court need not consider the difficulties of managing the class in any future litigation or at trial.  *See, e.g.*, *Ybarrondo v. NCO Fin. Sys., Inc.*, No. 05 cv 2057-L(JMA), 2009 WL 3612864,

at *7 n.3 (S.D. Cal. Oct. 28, 2009); *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 477 (E.D. Cal. 2010).[5]  Also, the superiority of class actions in large securities cases is well recognized.  *See Amchem*, 521 U.S. at 625 (common questions predominated in securities class action certified for settlement).  A superiority analysis focuses on the efficiency and economy of resources a class action would provide.  *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

The many common questions of law and fact discussed above would warrant class certification of this matter, because they clearly predominate over individual questions, since Defendants' alleged conduct impacted all Settlement Class Members the same way. *See, e.g.*, *Cooper*, 254 F.R.D. at 632 ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages."). Issues relating to the Defendants' liability are common to all Settlement Class members. *Id.*; *see also In re LDK Solar Sec. Litig*, 255 F.R.D. 519, 530 (N.D. Cal. 2009); *In re UTStarcom*, 2010 WL 1945737, at *9 (same); *In re Emulex*, 210 F.R.D. at 721 ("The predominant questions of law or fact at issue in this case are the alleged misrepresentation Defendants made during the class period and are common to the class.").

Falsity, materiality, scienter, and loss causation are issues that "affect investors alike," whose proof "can be made on a class-wide basis" because they "affect[] investors in common." *Schleicher v. Wendt*, 618 F.3d 679, 682, 687 (7th

---

[5]     Indeed, courts nationwide have certified class actions for settlement purposes even where certification was denied or likely would have been denied for litigation purposes. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 116 & n.308 (S.D.N.Y. 2009) (granting preliminary approval of settlement class that included § 11 claimants who had been excluded from the litigation class on grounds of "predominance"); *Ramirez v. DeCoster*, 203 F.R.D. 30, 36-37 (D. Me. 2001) (certifying settlement class despite previous ruling that predominance requirement not met).

Cir. 2010). Here, Defendants' alleged misrepresentations "affect[ed] [all] investors alike" and proof of falsity, materiality, scienter, and causation will "be made on a class-wide basis." *Id.* at 685, 687; *see also Cooper*, 254 F.R.D. at 641. Certification of a settlement class would provide significant efficiencies compared to any alternative method of adjudication. Common questions of law and fact predominate.

All Fed. R. Civ. P. 23(a) and (b) requirements are satisfied, and no issue would prevent the Court from certifying this Settlement Class for settlement purposes, appointing Lead Plaintiff as Class Representative, and appointing Co-Lead Counsel as Settlement Class counsel. *See, e.g.*, *Gittin v. KCI USA, Inc.*, No. 09-CV-05843 RS, 2011 WL 1467360, at *19 (N.D. Cal. Apr. 12, 2011).

## B. The Proposed Plan and Method for Notice Meets All Requirements

For a class certified under Fed. R. Civ. P. 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). Recent amendments to Rule 23(c)(2) clarify that providing "the best notice that is practicable under the circumstances" to individual class members may include "electronic means, or other appropriate means." *See Chinitz v. Intero Real Est. Servs.*, No. 18-cv-05623-BLF, 2020 WL 7042871, at *1 (N.D. Cal. Dec. 1, 2020) (notice plan providing for notice via email to class members with known email addresses and via mailed postcard for the other class members); *Keirsey v. eBay, Inc.*, No. 12-cv-01200-JST, 2014 WL 644697, at *1 (N.D. Cal. Feb. 14, 2014) (notice sent primarily through email and then via postcard to those with undeliverable emails and whose addresses were available).

The PSLRA and the Due Process Clause of the U.S. Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7). "The standard for the adequacy

of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Kim v. Sheraton Operating Corp.*, No. 17-cv-9247 FMO (ASx), 2021 WL 3598578, at *8 (CD. Cal. June 23, 2021) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 113 (2d Cir. 2005)). There are "no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements – [rather,] the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'  Notice is 'adequate if it may be understood by the average class member.'"  *Wal-Mart*, 396 F.3d at 114 (quoting *Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) and 4 *NEWBERG ON CLASS ACTIONS* § 11:53, at 167.  The proposed notice program provided under the Stipulation complies with the requirements of Fed. R. Civ. P. 23, the PSLRA, and due process and was instituted in a cost-conscious manner, to maximize the funds that will be available for distribution to Settlement Class Members.

After a competitive bidding process, Co-Lead Counsel retained Strategic Claims Services ("SCS"), an experienced claims administrator, to handle the notice and claims process as Claims Administrator.  Co-Lead Counsel asked for bids from three claims administration firms, all of which submitted initial bids as well as revised bids, taking into account Lead Counsel's questions, proposals, and pushback as to costs.  Co-Lead Counsel selected SCS after assessing its bid to be the strongest, most cost-effective, and the most competitive of those submitted. SCS will send notice to Settlement Class Members by First-Class Mail, in either of the two forms, as the Court selects.  Guided by recent Rule 23(c) amendments, which permit more cost-efficient notice including "electronic means, or other appropriate means," Lead Plaintiff has given the Court the option of approving distribution by mail of either a full, long-form notice (Stipulation Exhibit B1) (at a

26

far greater cost) or a shorter, more cost-effective version (Stipulation Exhibit B2) instructing Settlement Class Members how to access the long-form notice, the Stipulation, and its other Exhibits electronically on the Claims Administrator's website.  In recent years, Co-Lead Counsel has found that federal courts appreciate being offered these two options, and when presented with them, invariably choose the short-form version.  *See, e.g.*, *In re KaloBios Pharms., Inc. Sec. Litig.*, No. 5:15-CV-05841-EJD, 2017 WL 574444, at \*3 (N.D. Cal. Jan. 20, 2017) (authorizing transmission of short-form notice to class members for the first partial settlement) and ECF No. 129 (Apr. 2, 2018) (Amended Preliminary Approval Order) (authorizing transmission of short-form notice for second partial settlement); *Monachelli, et al. v. Hortonworks, Inc.*, No. 3:16-cv-00980-SI (N.D. Cal.), ECF No. 66 (June 12, 2017) (Preliminary Approval Order) (same).[6]  SCS will also publish the Publication Notice, Stipulation Exhibit C, over a national newswire service, which will likewise direct Settlement Class Members to the Settlement materials posted online, including the long-form Notice.  *See* Stipulation Exhibit A ¶4(c). To facilitate notice, within seven (7) days after the Court enters a Preliminary Approval Order, Odonate shall assist SCS in obtaining, from its transfer agent, records of ownership sufficient to identify any known Settlement Class Members. *See id.* ¶4(a). The Notice – in whichever form the Court approves (Stipulation Exhibit B1 or B2) – will be mailed to Settlement Class members within twenty-one (21) business days after entry of the Preliminary Approval Order and mailed to other Settlement Class Members identified in response to requests to nominees promptly upon such identification. *See id.* ¶4(b).  The Stipulation and all its Exhibits will also be posted throughout the Settlement approval process on the

---

[6]     *See also Perez v. Higher One Holdings, Inc.*, No. 3:14-cv-00755 (D. Conn.), ECF No. 141 (Mar. 6, 2018) (Preliminary Approval Order) (same); *In re Toronto-Dominion Bank Sec. Litig.*, No. 1:17-cv-01665-NLH-JS (D.N.J.), ECF No. 111 (Preliminary Approval Order) (July 18, 2019) (same).

Claims Administrator's website, where it can be found by Settlement Class Members through Internet searches or through directions seen in the mailed notice and where it can be downloaded or printed as Settlement Class Members see fit. *See id.* ¶4(b).

This Notice program, taken together, advises putative Settlement Class Members of the existence of the Action, the Settlement, and their rights.   It describes in plain English the Action and the Settlement Class; describes the claims, defenses, and issues on which the Settling Parties disagree; discloses the Parties' reasons for Settlement and the considerations that led Lead Plaintiff and Co-Lead Counsel to conclude it was fair and adequate; and the Settlement's terms. It notifies Settlement Class Members of the procedures to object to or be excluded from the Settlement; the date and place of the Settlement Fairness Hearing; and their rights to appear, object, and opt out.   It clearly explains the binding nature of the Settlement and sets forth the Plan of Allocation pursuant to which the Net Settlement Fund will be allocated among Settlement Class Members.   Consistent with the PSLRA, the Notice also provides the relevant statement of recovery, describes potential outcomes of the case, identifies Co-Lead Counsel, and states the maximum amounts Co-Lead Counsel can seek as expenses reimbursement, attorneys' fees, and Lead Plaintiff compensatory award.  *Id*; *see* 15 U.S.C. § 78u-4(a)(7).   In short, the notice program satisfies Fed. R. Civ. P. 23, the PSLRA's statutory requirements, and due process and is the sort routinely approved by courts.  *See In re Portal Software, Inc. Sec. Litig.*, No. C 03 5138 VRW, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (holding that "notice by mail and publication is the 'best notice practicable under the circumstances,' as mandated by Fed. R. Civ. P. 23(c)(2)(B)"); *see also Rosenburg*, 2007 WL 128232, at *5-6 (approving similar notice and finding it sufficiently informed class members of

their rights); *West*, 2006 WL 1652598, at *11 (approving settlement notice that explained to class members their options).

### C.    Proposed Schedule for Final Approval

Lead Plaintiff proposes the following schedule of events leading to the Settlement Hearing as set forth in the Preliminary Approval Order filed herewith:

| EVENT | DEADLINE FOR COMPLIANCE |
|---|---|
| Date for Settlement Hearing. | At least 90 days after the Court preliminarily approves the settlement on a date to be determined by the Court (Preliminary Approval Order ¶3) |
| Mailing of Notice and Proof of Claim and Release. | No later than twenty-one (21) calendar days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶4(b)) |
| Publication of Summary Notice. | No later than twenty-one (21) calendar days after the entry of Preliminary Approval Order (Preliminary Approval Order ¶4(c)) |
| Filing deadline for requests for exclusion. | Received no later than twenty-one (21) calendar days prior to the Settlement Fairness Hearing. (Preliminary Approval Order ¶12) |
| Deadline to file and serve papers in support of the Settlement and Plan of Allocation and for application for attorneys' fees, reimbursement of expenses, and Lead Plaintiff compensatory award. | No later than twenty-one (21) calendar days prior to the Settlement Fairness Hearing. (Preliminary Approval Order ¶18) |
| Filing deadline for objections. | Received no later than twenty-one (21) calendar days prior to the Settlement Fairness Hearing. (Preliminary Approval Order ¶13) |
| Deadline to file reply papers in support of the Settlement and Plan of Allocation and for application for attorneys' fees, reimbursement of expenses, and Lead Plaintiff compensatory award. | Seven (7) calendar days prior to the Settlement Fairness Hearing. (Preliminary Approval Order ¶18) |
| Deadline for submitting claim forms | Received no later than fourteen (14) days before the Settlement Fairness Hearing (Preliminary Approval Order ¶9) |

1

## V.   **<u>CONCLUSION</u>**

2   Lead Plaintiff respectfully asks the Court to enter an Order, in substantially

3   the form of the proposed Preliminary Approval Order submitted herewith as

4   Stipulation Exhibit A:  (1) preliminarily approving the Settlement; (2) preliminarily

5   certifying the Settlement Class and appointing Lead Plaintiff as Class

6   Representative and Co-Lead Counsel as Class Counsel for the Settlement Class; (3)

7   directing that notice be given to the Settlement Class Members substantially in the

8   form of Stipulation Exhibit C (Publication Notice) and either Stipulation Exhibit B1

9   or B2 (mailed Notice); and (4) setting a date for a Settlement Fairness Hearing and

10   deadlines for the mailing and publication of the Notices, the filing of Settlement

11   Class Member objections, the filing of Settlement Class Member opt-out notices,

12   and the filing of Co-Lead Counsel's application for attorneys' fees and expenses

13   and award to Lead Plaintiff for reimbursement of time and expenses in overseeing

14   this matter.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: December 3, 2021                    Respectfully submitted,

                                           */s/ Matthew L. Tuccillo*
                                           Matthew L. Tuccillo

                                           **POMERANTZ LLP**
                                           Matthew L. Tuccillo
                                           (admitted *pro hac vice*)
                                           Jennifer Banner Sobers
                                           (admitted *pro hac vice*)
                                           600 Third Avenue, 20th Floor
                                           New York, New York 10016
                                           Telephone: (212) 661-1100
                                           Facsimile: (212) 661-8665
                                           Email: mltuccillo@pomlaw.com
                                                      jbsobers@pomlaw.com

                                           **POMERANTZ LLP**
                                           Jennifer Pafiti (282790)
                                           1100 Glendon Avenue, 15th Floor
                                           Los Angeles, California 90024
                                           Telephone: (310) 405-7190
                                           Email: jpafiti@pomlaw.com

                                           **HOLZER & HOLZER, LLC**
                                           Corey D. Holzer (admitted *pro hac vice*)
                                           211 Perimeter Center Parkway
                                           Suite 1010
                                           Atlanta, Georgia 30346
                                           Telephone: (770) 392-0090
                                           Facsimile: (770) 392-0029
                                           cholzer@holzerlaw.com

                                           *Counsel for Lead Plaintiff and*
                                           *Proposed Lead Class Counsel*

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY
APPROVAL OF SETTLEMENT
Case No. 3:20-cv-01828-H-LL

1

## <u>CERTIFICATE OF SERVICE</u>

2

3

I hereby certify that this document filed through the CM/ECF system will be

4

sent electronically to the registered participants as identified on the Notice of

5

Electronic Filing and paper copies will be sent to those indicated as non-registered

6

participants on December 3, 2021.

7

8

/s/ Matthew L. Tuccillo
Matthew L. Tuccillo

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY
APPROVAL OF SETTLEMENT
Case No. 3:20-cv-01828-H-LL