# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN KENDALL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ODONATE THERAPEUTICS, INC., KEVIN C. TANG, MICHAEL HEARNE, JOHN G. LEMKEY,<br><br>Defendants. | Case No.: 3:20-cv-01828-H-LL<br><br>**ORDER:**<br><br>**(1) CERTIFYING CLASS FOR SETTLEMENT PURPOSES;**<br><br>**(2) PRELIMINARILY APPROVING CLASS SETTLEMENT;**<br><br>**(3) APPOINTING CLASS REPRESENTATIVE AND CO-COUNSEL;**<br><br>**(4) APPROVING CLASS NOTICE; and**<br><br>**(5) SCHEDULING FINAL APPROVAL HEARING**<br><br>[Doc. No. 43.] |

On December 3, 2022, Plaintiff Kevin Kendall filed an unopposed motion for preliminary approval of class action settlement and directing dissemination of notice to the class. (Doc. No. 43.) On January 3, 2022, Defendants Odonate Therapeutics, Inc., Kevin C. Tang, Michael Hearne, John G. Lemkey (collectively, "Defendants") filed a notice of non-opposition to Plaintiff's motion. (Doc. No. 46.) The Court held a hearing on the matter on January 10, 2022. Corey D. Holzer, Jennifer Banner Sobers, and Matthew L. Tuccillo appeared on behalf of Plaintiff. Stephan Ryan Benson Richards appeared on behalf of Defendants. For the following reasons, the Court grants Plaintiff's motion and sets a schedule for further proceedings.

## Background

**I. Factual and Procedural Background**

This is a securities class action against Odonate Therapeutics, Inc. ("Odonate") and three of its officers under Section 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5. (Doc. No. 24, SAC ¶¶ 225–41.) The case is brought on behalf of all persons and entities who purchased or otherwise acquired the stock of Odonate between December 7, 2017 and March 25, 2021 (the "Class Period"). (Id. ¶ 217.) Odonate is a pharmaceutical company based in San Diego. (Id. ¶ 2.) Odonate's single, primary drug candidate is tesetaxel, an orally administered chemotherapy agent developed to treat patients with locally advanced or metastatic breast cancer. (Id. ¶¶ 33–35.) Defendants Tang, Hearne, and Lemkey were officers and collectively the majority shareholder of Odonate during the Class Period. (Id. ¶¶ 1, 3, 19–21.) In December 2017, Odonate initiated a Phase 3 study of tesetaxel. (Id. 36, 57-59.) Plaintiff alleges that between December 8, 2017 and February 23, 2021, Odonate filed for an Initial Public Offering ("IPO") with the Securities and Exchange Commission ("SEC") and held multiple subsequent public offering of its shares in order to raise funds for Odonate's continued operations and tesetaxel's study. (Id. ¶¶ 37–38, 188.) Plaintiff alleges that through its IPO and subsequent offerings, Odonate raised $394.6 million in gross proceeds and $369.78 million in net proceeds. (Id. ¶ 39.)

1  Plaintiff alleges Odonate's value proposition to investors was tesetaxel. (Id. ¶ 36.)
2  Plaintiff alleges that during the Class Period, significant safety concerns regarding
3  tesetaxal arose during the Phase 3 study, which Plaintiff alleges Defendants were aware
4  of but did not disclose to investors or the public. (Id. ¶¶ 5–7, 40.)  Plaintiff also alleges
5  that during the class period, Defendants made false and misleading statements containing
6  misrepresentations and omissions regarding the tesetaxel Phase 3 study, patient outcomes
7  and experiences while using tesetaxel, and the likelihood of tesetaxels' approval by the
8  FDA. (Id. ¶¶ 56–181.) On March 22, 2021, Odonate issued a press release announcing it
9  was discontinuing tesetaxel's development following feedback from the U.S. Food and
10 Drug Administration ("FDA") that the clinical data package for tesetaxel was unlikely to
11 support FDA approval. (Id. ¶ 168.) On March 25, 2021, Odonate filed a Form 8-K with
12 the SEC providing more details about Odonate's discontinuation of tesetaxels'
13 development and the wind-down of Odonate's operations. (Id. ¶ 170.) Plaintiff alleges
14 Odonate's stock price fell dramatically following the press release and Form 8-K filing.
15 (Id. ¶¶ 169, 171.)

16  On September 16, 2020, Plaintiff filed a class action complaint against Defendants.
17 (Doc. No. 1.) On December 14, 2020, the Court granted Plaintiff's unopposed motion to
18 appoint Plaintiff as Lead Plaintiff and approval of Plaintiff's selection of counsel. (Doc.
19 No. 11.) On February 16, 2021, Plaintiff filed the first amended class action complaint.
20 (Doc. No. 21.) On April 13, 2021, Plaintiff filed the second amended class action
21 complaint. (Doc. No. 24.) On May 13, 2021, Defendants filed a motion to dismiss
22 Plaintiff's second amended complaint. (Doc. No. 25.) On August 4, 2021, the Court
23 denied Defendants' motion to dismiss. (Doc. No. 36.) On September 3, 2021, Defendants
24 filed their answer to Plaintiff's second amended complaint. (Doc. No. 37.)

25  On September 20, 2021, the parties held a virtual mediation before Michelle
26 Yoshida, Esq. of Phillips ADR Enterprise, but were unable to reach a settlement that day.
27 (Doc. No. 43 at 4.) Over the next three weeks the parties continued negotiations and
28 ultimately came to an agreement to settle the action in principle. (Id.) On October 19,

2021, the parties executed a memorandum of understanding regarding the settlement in principle. (Id.) On October 26, 2021, the parties filed a joint motion to enter a stipulation to stay the proceedings pending settlement. (Doc. No. 39.) On November 3, 2021, the Court granted the parties' joint motion to stay the proceedings. (Doc. No. 39.) The Court also ordered Plaintiff to file a motion for preliminary approval of the class action settlement on or before January 31, 2022. (Id.) On December 3, 2021, Plaintiff filed the present unopposed motion seeking (1) preliminary approval of the proposed class action settlement; (2) preliminary certification of the settlement class, appointment of Lead Plaintiff as representative of the settlement class, and appointment of Co-Lead Counsel as counsel for the settlement class; (3) approval of the form and manner of giving notice to the class; and (4) a final approval hearing and a schedule for various deadlines. (Doc. No. 43.)

## II.     Proposed Settlement

Under the proposed settlement, Defendants will pay the settlement amount of $12,750,000.00. (Doc. No. 43-2, Tuccillo Decl. Ex. 1 ¶¶ 1.32, 2.0 ("Stipulation").) The settlement will be distributed to class members pro rata in accordance with a plan of allocation that has been designed by Co-Lead Counsel. (Id. ¶ 6.7; Ex. B1 at 6.) Under the plan of allocation, a Recognized Loss amount for each share purchased within the Class Period will be calculated based when the stock was purchased or acquired and, if applicable, sold. (Id.; Ex. B1 at 14–15.) The Recognized Loss is the basis for how the settlement fund will be proportionately allocated to class members. (Id. at 12.) The Recognized Loss is intended to estimate the alleged artificial inflation of the price of Odonate stock at different times during the Class Period due to alleged misrepresentations by Defendants. (Id. at 12.) No distribution will be made to class members who would receive a distribution of less than $10.00. (Id. at 16.) Any remaining funds in the settlement fund after at least six (6) months after the initial distribution will be used first, to pay any amounts mistakenly omitted from the initial disbursement; second, to pay any additional settlement administration fees, costs, and expenses; and

third, to make a second distribution to class members who cashed their checks from the initial distribution. (Id. at 17.) None of the funds will revert back to Defendants. (Id. ¶¶ 2.5, 6.8.)

The class members will receive payment from the settlement fund after taxes and tax expenses, administration costs, a fee and expenses award to Co-Lead Counsel, and a compensatory award to Lead Plaintiff. (Id. § H; Ex. B1 at 2, 9.) The parties agreed to an attorney fee award of up to 33 1/3% of the settlement amount and reimbursement of up to $100,000.00. (Id. § H; Ex. B1 at 2, 9.) The class representatives service award is $5,000. (Id., Ex. B1 at 2, 9.) The parties also agreed to allocate up to $300,000 to pay for the costs and expenses of the claim administrator in disseminating notice and administering claims. (Id. ¶¶ 1.17–18, 2.6–2.7.) Each settlement class member is required to submit to the claim administrator a completed proof of claim form to receive their payment. (Id. ¶ 6.4(a).) Notice of the terms of the settlement will be sent to class members by first-class mail and posted on the claims administrator's website. (Doc. No. 43 at 26–27.) A publication notice will also be published once over a national newswire service. (Id. at 27.) Class members reserve the right to object to or opt out of the settlement. (Ex. B1 at 3.)

## Discussion

### I. Class Certification

Plaintiff seeks to certify a class pursuant to Federal Rule of Civil Procedure 23(b)(3) for purposes of settlement. (Doc. No. 43 at 23.) The settlement class includes all persons who purchased or otherwise acquired stock of Odonate between December 7, 2017 and March 25, 2021, both dates inclusive. (Id. at 18; Stipulation ¶¶ 1.32, 1.35.) Excluded from the class are Defendants; members of Defendants' immediate families and their affiliates; any entity in which any Defendant had a controlling interest during the Class Period; any person who served as an officer or director of Odonate during the Class Period; the judges presiding over the action and the immediate family members of such judges; any persons or entities listed on the Settlement Exclusion List; and the successor,

heirs, and assignees of any excluded person. (Id. at 18 n.4; Stipulation ¶ 1.33.)

A plaintiff seeking to certify a class under Rule 23(b)(3) must first satisfy the requirements of 23(a). Fed. R. Civ. P. 23(b); see also Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548 (2011). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3). Id.

### A.  Rule 23(a) Requirements

Rule 23(a) establishes that one or more plaintiffs may sue on behalf of class members if all of the following requirements are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. F. Civ. P. 23(a).

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." Rannis v. Recchia, 380 F. App'x 646, 651 (9th Cir. 2010); see also Hilsley v. Ocean Spray Cranberries, Inc., 2018 WL 6300479, *3 (S.D. Cal. Nov. 29, 2018) (quoting Ikonen v. Hartz Mtn. Corp., 122 F.R.D. 258, 262 (S.D. Cal. Sept. 20, 1988) ("As a general rule,…classes of 40 or more are numerous enough."). "Numerosity 'is generally assumed to have been met in class action suits involving nationally traded securities.'" In re En Pointe Techs., Inc. Sec. Litig., 2005 WL 8173600, *4 (S.D. Cal. May 31, 2005) (citation omitted); see also In re Juniper Networks, Inc. Sec. Litig., 264 F.R.D. 584, 588 (N.D. Cal. Oct. 16, 2009) ("Some courts have assumed that the numerosity requirement is met in securities fraud suits involving nationally traded stocks.") Plaintiff represents that Odonate shares traded on NASDAQ and there were over 38 million shares of its common stock outstanding as of May 7, 2021. (Doc. No. 23 at 19.) Plaintiff estimates that the proposed settlement class consists of at least hundreds, if not thousands, of investors, even after the exclusion of insider shares. (Id. at 19.) As such, the numerosity prerequisite is met. See, e.g., In re Biolase, Inc. Sec. Litig., 2015 WL 12697736, *3 (C.D. Cal. June 5, 2015) (finding the numerosity requirement met where defendant had more than 31 million shares of common stock outstanding).

The commonality prerequisite is met if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" Abdullah v. U.S. Sec. Assoc., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Dukes, 131 S. Ct. at 2551). "Because of the common effect that such misrepresentations have on all shareholders, '[r]epeated misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2).'" Brown v. China Integrated Energy, Inc., 2015 WL 12720322, *14 (C.D. Cal. Feb. 17, 2015) (quoting In re Juniper Networks, Inc. Sec. Litig., 264 F.R.D at 588). Plaintiff argues common question of fact and law to the class include whether statements made by Defendants to the investing public during the Class Period misrepresented or omitted materials facts about Odonate, whether Defendants' alleged conduct violated federal securities law, whether Defendants acted knowingly or recklessly in issuing any false and misleading public statements, and whether the price of Odonate securities during the settlement class period was artificially inflated by Defendants' conduct. (Doc. No. 43 at 20.) The commonality prerequisite is met.

Typicality requires that "the claims or defense of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claims are "'typical' if they are reasonably co-extensive with those of absent class members." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998). Typicality requires that a representative plaintiff "possess the same interest and suffer the same injury as the class members." Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 156 (1982). Here, Plaintiff alleges Lead Plaintiff Kendall purchased Odonate stock during the class period and pursuant to the same alleged fraud as the other settlement class members. (Doc. No. 43 at 21–22.) Plaintiffs also allege Lead Plaintiff Kendall is not subject to any unique defenses from the other settlement class members. (Id. at 22.) As a result, the typicality prerequisite is met.

The adequacy of representation prerequisite requires that the class representative

be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the plaintiff and class counsel (1) do not have any conflicts of interest with any other class members and (2) will prosecute the action vigorously on behalf of the class. Hanlon, 150 F.3d at 1020. First, Lead Plaintiff Kendall's claims are typical and coextensive with those of the settlement class, and there does not appear to be any potential conflict of interest between the Lead Plaintiff and the remaining class members. (Doc. No. 43 at 22.) Second, Co-Lead Counsel are experience in securities class actions and have prosecuted this case for a year and a half. (Doc. No. 43 at 22–23.) The adequacy of representation prerequisite is met. As such, each of the prerequisites of Rule 23(a) is satisfied.

### B.    Rule 23(b)(3) Requirements

Rule 23(b)(3) requires a court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These factors are referred to as the "predominance" and "superiority" tests. Hanlon, 150 F.3d at 1022–23. Rule 23(b)(3)'s requirements are designed "to cover cases 'in which a class action would achieve economies of time, effort, and expenses, and promote…uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997) (citation omitted). If the parties seek to certify a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial." Id. at 620 (citation omitted).

#### 1.    Predominance

The predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022 (quoting Amchem, 521 U.S. at 623). This analysis requires more than proof of common issues of law and fact. Id. Rather, the common questions should "present a significant aspect of the

case and…be resolved for all members of the class in a single adjudication." Id. (quotation omitted). "Predominance is a test readily met in certain cases alleging consumer or securities fraud…." Hefler v. Wells Fargo & Co., 2018 WL 4207245, * 4 (N.D. Cal. Sept. 4, 2018) (quoting Amchem, 521 U.S. at 625). Plaintiff argues that issues related to Defendants' liability are common to all class members. (Doc. No. 43 at 24.) As such, common questions of law and fact predominate. See, e.g., Hefler, 2018 WL 4207245, *4 ("Whether [d]efendants' statements were false, material, made with the required scienter, and caused the class members losses are significant aspects of the case and susceptible to common proof.").

### 2. Superiority

The superiority inquiry requires determination of "whether objectives of the particular class action procedure will be achieved in the particular case." Hanlon, 150 F.3d at 1023 (citation omitted.) Notably, the class-action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallce, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted). Plaintiff argues the settlement class likely consists of hundreds, if not thousands, of investors. (Doc. No. 43 at 19.) Resolving these disputes in a single class action rather than individually would be far more efficient. See Hefler, 2018 WL 4207245, *4. As such, a class action is a superior method of adjudicating this matter.

The requirements of Rule 23(b)(3) are satisfied. As a result, the Court grants preliminary certification of the proposed class. The Court may review this finding at the final approval hearing.

### C. Appointment of Class Representative and Class Counsel

Lead Plaintiff Kendall meets the commonality, typicality, and adequacy requirements of Rule 23(a). As such, Lead Plaintiff Kendall is appointed as class representative. See In re Bridgepoint Educ. Inc. Secs. Litig., 2015 WL 224631, *8 (S.D. Cal. Jan. 15, 2015).

Under Rule 23(g), a court that certifies a class must appoint class counsel. Fed. R. Civ. P. 23(g)(1). A court must consider the following factors when appointing class counsel: "(i) the work counsel has done in identifying or investigating potential clams in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsels' knowledge of the applicable law; and (iv) the resources that counsel will commit to represent the class." Fed. R. Civ. P. 23(g)(1)(A). The court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class." Fed. R. Civ. P. 23(g)(1)(B). Since taking over as Co-Lead Counsel, (Doc. No. 11.), Pomerantz LLP and Holzer & Holzer, LLC have obtained a good understanding of the issues and have prosecuted this action through a dispositive motion, mediation, and settlement negotiations. (Doc. No. 43 at 3–4.). Pomerantz LLP and Holzer & Holzer, LLC also have significant prior experience in litigating securities fraud cases, including class actions. (Doc. No. 11 at 4.) As a result, Pomerantz LLP and Holzer & Holzer are appointed as class counsel pursuant to Federal Rule of Civil Procedures 23(g).

## II.     The Settlement

Rule 23(e) requires the Court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (quoting Hanlon, 150 F.3d at 1026). To make this determination, the Court must consider a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. Id.

In addition, the settlement may not be the product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000)(citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

"Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (citation omitted). "Signs of collusion include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a 'clear sailing provision'; and (3) an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund." Hefler v. Wells Fargo & Co., 2018 WL 4207245, *7 (N.D. Cal. Sept. 4, 2018) (quoting In re Bluetooth, 654 F.3d at 947).

      Given that some of these factors cannot be fully assessed until the Court conducts the final approval hearing, "a full fairness analysis is unnecessary at this stage." Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. June 24, 2008) (citation omitted). Rather, at the preliminary approval stage, the Court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and thus, whether the notice to the class and the scheduling of a fairness hearing is appropriate. Id. at 666 (citation omitted). Preliminary approval of a settlement and notice to the class is appropriate if "(1) the proposed settlement appears to be the product of serious, informed, and noncollusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls within the range of possible approval." In re Tableware Antitrust Litig. 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. Apr. 12, 2007); see also Beaver v. Tarsadia Hotels, 2017 WL 2268853, *3 (S.D. Cal. May 24, 2007); Loeza v. JPMorgan Chase Bank, NA, 2015 WL 13357592, *7 (S.D. Cal. Aug. 18, 2015).

      In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Seattle, 955 F.2d at 1276. Additionally, the Ninth Circuit favors deference to the "private consensual decision [settling] parties,"

particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party. See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009).

After reviewing the proposed settlement in light of the above factors and the current stage of the litigation, the Court concludes that preliminary approval is appropriate. The proposed settlement appears to be the result of serious, informed, and non-collusive negotiations. Prior to reaching this settlement, the parties engaged in significant investigation and substantive briefing on Defendants' motion to dismiss. (Doc. No. 43 at 3–4, 15–16.) The parties also participated in a full day of voluntary mediation before Michelle Yoshida, Esq. of Phillips ADR Enterprises and an additional three weeks of negotiations before reaching an agreement to settle in principle. (Id. at 4–5.)

The proposed settlement also does not appear to have any obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval. Class Co-Counsel is experienced in securities class actions. (Doc. Nos. 43 at 10; 11 at 5.) Class Co-Counsel represents that while Plaintiff's claims are meritorious, continuing to litigate the case would pose significant risks for the class and the settlement offers meaningful relief. (Doc. No. 43 at 13–14.) The settlement agreement provides for a settlement fund of $12,750,000.00. (Doc. No. 43 at 5.) Plaintiff represents their expert estimates that, "based on the allegations in the SAC, class-wide damages using different models range[] from $331.7 million to $365.5 million." (Id. at 12.) According to Plaintiff, the settlement represents between 3.49% and 3.84% of estimated damages. (Id.) This falls within the range of possible approval. See Loeza v. JPMorgan Chase Bank, NA, 2015 WL 13357592, *8 (S.D. Cal. Aug. 8, 2015) (citing In re Tableware, 484 F. Supp. 2d at 1080) ("In determining whether a settlement agreement is substantively fair to the class, a court must balance the value of plaintiffs' expected recovery against the value of the settlement offer."); In re Zynga Inc. Sec. Litig., 215 WL 6471171, *10 (N.D. Cal. Oct. 27, 2015) (citation omitted) ("A cash settlement amounting to only a fraction of the potential

recovery does not per se render the settlement inadequate or unfair.").

The Class Co-Counsel intend to seek an attorneys' fee award not to exceed 33 1/3% of the settlement amount and reimbursement of expenses up to $100,000.00. (Stipulation, Ex. B1 at 2, 9.) The request for attorneys' fees is within the range of acceptable attorneys' fees in Ninth Circuit cases. See (E.D. Cal. Mar. 6, 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% the total settlement value, with 25% considered the benchmark"). The proposed incentive award of $5,000 for the Lead Plaintiff appears reasonable. (Stipulation, Ex. B1 at 9.); see In re Mego, 213 F.3d at 463 (affirming incentive award of $5,000 to two plaintiff representatives of 5,400 potential class members in $1.75 million settlement, where incentive payment constituted only 0.57% of the settlement fund.)

For the foregoing reasons, the Court conditionally grants preliminary approval of the proposed settlement. The Court reserves judgment on the reasonableness of the attorneys' fees for the final approval hearing.

### III. Approving Class Notice

The class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). In addition, the class notice must satisfy the content requirements of Rule 23(c)(2)(B), which provides the notice must clearly and concisely state in plain, easily understood language:

> (i) [t]he nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

#### A. Content of Notice

The content of the notice meets the requirements of Rule 23(c)(3). In clearly understandable language, the notice provides the following: a description of the lawsuit; a

description of the settlement class; an explanation of the material elements of the settlement; a statement declaring that class members may exclude themselves from or object to the settlement; a description that explains how class members may exclude themselves from or object to the terms of the settlement; and a description of the fairness hearing. (Doc No. 43 at 28; Stipulation, Ex. B1.)

### B. Method of Notice

The proposed method of notice is also reasonable. The parties have selected Strategic Claims Services ("SCS") to be their settlement claims administrator after a competitive bidding process. (Doc. No. 43 at 26.) Within seven (7) days after the Court enters a preliminary approval order, Odonate will assist SCS is obtaining the record of ownership to identify class members for notice. (Id. at 27.) Within twenty-one (21) business days after the Court enters a preliminary approval order, SCS will send notice to the class members by first-class mail. (Id.) SCS will also publish the publication notice over a national newswire service that will direct settlement class members to the settlement materials posted online. (Id. at 27.) The stipulation and all exhibits will also be posted on SCS's website. (Id. at 27–28.)

Plaintiff has provided the Court with the option of either a full, long-form notice or a shorter notice that contains instructions on how to access the long-form notice, stipulations, and other exhibits electronically on the claims administrator's website. (Doc. No. 43 at 26–27; Stipulations, Exs. B1, B2.) The Court approves the use of the short-form notice. See, e.g., In re Bofi Holdings, Inc. Secs. Litig., 2021 WL 6051671, *2 (S.D. Cal. Dec. 20, 2021) (approving class action notice plan where a short-form notice is mailed to class members and the long-form notice is posted on a website). SCS will mail, by first-class mail, the short-form notice to settlement class members and post the long-form notice on their website.

After reviewing the content and the proposed method of providing notice, the Court determines that the notice is adequate and sufficient to inform the class members of their rights. Accordingly, the Court approves the form and manner of giving notice of the

proposed settlement.

### IV.   Scheduling Fairness Hearing

The Court schedules the final approval hearing for **Monday, June 6, 2022**, at **10:30 a.m.** Defendants must provide an updated class list to the settlement administrator by **January 24, 2022**. The settlement administrator must mail class notice and proof of claim by **February 7, 2022**. The settlement administrator must also publish the publication notice by **February 7, 2022**.  Potential class members must return their claims and other responses by **May 2, 2022**. Plaintiff must file all papers in support of settlement, the plan of allocation, and any fee and expense application or compensatory award by **May 16, 2022**. Any reply papers must be filed by **May 23, 2022**.

### Conclusion

The Court approves Plaintiff's request for provisional certification of the class for purposes of settlement, request for preliminary approval of the proposed settlement, and the form and manner of the notice of the proposed settlement to the class members. Additionally, the Court sets the final approval hearing for **Monday, June 6, 2022** at **10:30 a.m.** Plaintiff must file a motion for final approval of the settlement, and any motions for fee awards and incentive awards on or before **May 16, 2022**.

**IT IS SO ORDERED.**

DATED: January 11, 2022

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT