1
2
3
4
5

Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

6

*Counsel for Lead Plaintiff and Proposed Lead Settlement Class Counsel*

7
8

[Additional Counsel Listed on Signature Page]

9
10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

11

12
13
14

KEVIN KENDALL, Individually and on Behalf of All Others Similarly Situated,

15
16

Plaintiffs,

17

v.

18
19
20
21

ODONATE THERAPEUTICS, INC., KEVIN C. TANG, MICHAEL HEARNE and JOHN G. LEMKEY,

22
23

Defendants.

Case No. 3:20-cv-01828-H-JLB

**LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION**

Date:   June 6, 2022
Time:   10:30 a.m.
Place:  Courtroom TBD
Judge:  Hon. Marilyn L. Huff

24
25
26
27
28

**TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to the Court's Order Granting Preliminary Approval of Settlement (ECF No. 50) entered on January 18, 2022 ("Preliminary Approval Order"), on June 6, 2022, at 10:30 a.m., or as soon thereafter as the matter may be heard, at the James M. Carter and Judith N. Keep United States Courthouse, Southern District of California (courtroom to be determined), before the Honorable Marilyn L. Huff, Lead Plaintiff Kevin Kendall ("Lead Plaintiff" or "Kendall") will and hereby does move for an order: (1) granting final approval of the proposed class action settlement (the "Settlement") in the above-captioned action (the "Action"), which provides an aggregate recovery in the form of the Settlement Amount of twelve million seven hundred fifty thousand dollars ($12,750,000.00) as documented within the Stipulation of Settlement dated November 18, 2021, and the exhibits thereto (collectively the "Stipulation");[1] (2) certifying the Settlement Class;[2] and (3) approving the Plan of Allocation.

As demonstrated herein, Lead Plaintiff respectfully submits that the proposed Settlement is an excellent result for the Settlement Class under the circumstances; the Settlement and Plan of Allocation are fair, reasonable, and adequate under the governing standards within the Ninth Circuit; to date, despite the mailing of over ***25,000 notices*** resulting in over ***4,800 claims*** submitted, ***no objections*** to the Settlement have been filed

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning herein as set forth in the Stipulation. ECF No. 43-2. All internal citations and quotations are omitted, unless otherwise indicated.

[2] The Settlement Class preliminarily certified by the Court for purposes of this Settlement is comprised of "all persons or entities that purchased or otherwise acquired the stock of Odonate (NASDAQ: ODT) between December 7, 2017 through March 25, 2021, both dates inclusive" (the "Settlement Class Period"), subject to certain exclusions set forth in the Stipulation.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and ***no Class Member sought to be excluded*** from the Settlement;[3] and the Settlement warrants final approval of this Court.  This Motion, which is unopposed by Defendants, is supported by the following materials, including those submitted herewith: the accompanying Memorandum of Points and Authorities; the Declaration of Matthew L. Tuccillo, Esq. ("Tuccillo Decl."); the Declaration of Corey D. Holzer, Esq. ("Holzer Decl."); the Declaration of Lead Plaintiff Kevin Kendall ("Kendall Decl."); the Bravata Declaration; the Stipulation and all other pleadings and papers filed in this action; and other such matters and arguments as the Court may consider at the hearing of this Motion.

---

[3]      *See* Declaration of Josephine Bravata Concerning (A) Mailing of the Short Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Decl.") ¶¶7, 13-14.

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

I.      INTRODUCTION AND BACKGROUND ....................................................1

II.     THE LITIGATION AND SETTLEMENT ....................................................2

III.    PRELIMINARY APPROVAL OF SETTLEMENT AND NOTICE .............5

IV.     THE SETTLEMENT WARRANTS FINAL APPROVAL............................5

        A.      The Settlement Meets The Standard For Judicial Approval................5

        B.      The Settlement Is Fair, Reasonable, And Adequate, Meriting
                Final Approval Under The Rule 23(e)(2) And Hanlon Factors...........7

                1.      The Settlement Class Was Adequately Represented.................7

                2.      Experienced Counsel Negotiated The Settlement In
                        Good Faith And At Arm's-Length. ............................................9

                3.      Class Relief Is Adequate In Light Of The Risks, Costs,
                        and Delay of Continued Litigation. .........................................10

                        a.      Lead Plaintiff Faced Challenges On The Merits...........10

                        b.      Continued Litigation Would Be Complex
                                and Costly......................................................................11

                4.      The Rule 23(e)(2)(C)(ii)-(iv) Factors Support
                        Final Approval. ........................................................................13

                        a.      The Method Of Distributing Relief Is Reasonable. ......13

                        b.      The Proposed Attorneys' Fees Are Reasonable............13

                        c.      The Parties' Agreements Are Reasonable.....................14

                5.      The Amount Obtained In The Settlement Is Reasonable........14

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF
SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION –
Case No. 3:20-cv-01828-H-JLB

6.    The Extent Of Discovery And Stage Of The Proceedings.......15

7.    The Settlement Class's Positive Reaction. ..............................17

8.    The Absence of Collusion Among
      The Negotiating Parties. ...........................................................17

9.    The Absence Of A Governmental Participant.........................18

V.    CLASS NOTICE SATISFIED DUE PROCESS .........................................18

VI.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE,
      AND ADEQUATE.........................................................................................20

VII.  SETTLEMENT CLASS CERTIFICATION IS WARRANTED ................21

      A.    The Settlement Class Satisfies Rule 23(a)........................................22

      B.    The Settlement Class Satisfies Rule 23(b)(3). ..................................23

VIII. CONCLUSION ..............................................................................................24

CERTIFICATE OF SERVICE ...........................................................................26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfus v. Pyramid Tech. Corp.*,
   764 F. Supp. 598 (N.D. Cal. 1991)............................................................23

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)...................................................................22, 23

*Athale v. Sinotech Energy Ltd.*,
   No. 11- CV-05831, 2013 WL 11310685 (S.D.N.Y. Sept. 4, 2013) ............16

*Brown v. China Integrated Energy, Inc.*,
   No. 11-cv-02559 BRO, 2015 WL 12720322 (C.D. Cal. Feb. 17, 2015) ...................22

*Browne v. Am. Honda Motor Co.*,
   No. 09-cv-06750 MMM, 2010 WL 9499072 (C.D. Cal. July 29, 2010) ...................12

*Elliott v. Rolling Frito-Lay Sales, LP*,
   No. SACV 11-01730 DOC, 2014 WL 2761316,
   (C.D. Cal. June 12, 2014) ............................................................9

*Evans v. Jeff D.*,
   475 U.S. 717 (1986).................................................................6

*Feyko v. AAD Partners LP*,
   No. LACV 11-05511 DDP (PJWx), 2014 WL 12572678,
   (C.D. Cal. Mar. 7, 2014) .............................................................18

*Glass v. UBS Fin. Servs., Inc.*,
   No. 06-cv-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007),
   *aff'd*, 331 Fed. Appx. 452 (9th Cir. 2009) .................................................17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................6, 7, 8, 14, 22, 23

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011) .......................................................24

*Hayes v. MagnaChip Semiconductor Corp.*,
    No. 14-cv-01160-JST, 2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ...................... 11

*Hefler v. Wells Fargo & Co.*,
    No. 16-cv-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ........................ 23

*Hodges v. Akeena Solar, Inc.*,
    274 F.R.D. 259 (N.D. Cal. 2011) ................................................................................ 23

*In re Biolase, Inc. Sec. Litig.*,
    No. SACV 13-1300-JLS, 2015 WL 12697736 (C.D. Cal. June 5, 2015) .................. 22

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .............................................................................. 7, 18

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
    No. 12-md-02330-EMC, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) .................. 14

*In re Cooper Cos. Inc. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009) ............................................................................... 23

*In re Critical Path, Inc. Sec. Litig.*,
    No. 01-cv-00551 WHA, 2002 WL 32627559 (N.D. Cal. June 18, 2002) .................. 16

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, 2005 WL 1594403
    (C.D. Cal. June 10, 2005) ........................................................ 9, 10, 11, 12, 17, 21

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................................................................... 20

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ............................................................ 7, 13, 14, 15, 16

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................... 5, 9, 10, 14, 17, 21

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .......................................................................................... 9

*In re Rambus Inc. Derivative Litig.*,
    No. 06-cv-3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) .................. 17

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF
SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION –
Case No. 3:20-cv-01828-H-JLB

*In re Sumitomo Cooper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ..................................................................10

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) .......................................................................5

*In re UTStarcom, Inc. Sec. Litig.*,
No. 04-cv-04908 JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010)........................22

*In re Vivendi Universal, S.A., Sec. Litig.*,
No. 02-cv-5571 (RJH), 2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) .................12

*In re Wireless Facilities, Inc. Sec. Litig.*,
253 F.R.D. 630 (S.D. Cal. 2008) ..................................................................20

*Jenson v. Fiserv Trust Co.*,
256 F. App'x 924 (9th Cir. 2007) ................................................................11

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) .....................................................................16

*Loeza v. JPMorgan Chase Bank, NA*,
No. 13-cv-0095-L (BGS), 2015 WL 13357592 (S.D. Cal. Aug. 8, 2015)............15, 16

*Mild v. PPG Indus., Inc.*,
2:18-cv-04231-RGK-JEM, 2019 WL 3345714 (C.D. Cal. July 25, 2019) ..................8

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004).................................................................12

*Nguyen v. Radient Pharms. Corp.*,
No. 11-cv-00406, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................21

*Nobles v. MBNA Corp.*,
No. 06-cv-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009) .......................11

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
688 F.2d 615, 625 (9th Cir. 1982) ...........................................................7, 14

*Rannis v. Recchia*,
380 F. App'x 646 (9th Cir. 2010) ...............................................................22

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF
SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION –
Case No. 3:20-cv-01828-H-JLB

*Riker v. Gibbons*,
No. 08-cv-00115-LRH-VPC, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) ...............21

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ........................................................................19

*Satchell v. Fed. Express Corp.*,
No. 03-cv-2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)...........................18

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ..........................................................................5

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) .....................................................................7, 10

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) ........................................................................23

*Van Wingerden v. Cadiz, Inc.*,
No. LA CV15-03080 JAK (JEMx), 2017 WL 5565263,
(C.D. Cal. Feb. 8, 2017)..............................................................................21

*Yaron v. Intersect ENT, Inc.*,
No. 4:19-CV-02647-JSW, 2021 WL 5150052 (N.D. Cal. Nov. 5, 2021)..................13

**Statutes**

15 U.S.C. § 78u-4............................................................................................19

Private Securities Litigation Reform Act of 1995 ............................................2

Securities Exchange Act of 1934 ....................................................................3

**Rules**

Fed. R. Civ. P. 23 .......................................................................5, 6, 11, 13, 14

Fed. R. Civ. P. 26 ..............................................................................................4

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF
SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION –
Case No. 3:20-cv-01828-H-JLB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION AND BACKGROUND

Lead Plaintiff and Co-Lead Counsel successfully achieved the Settlement of this complex securities fraud class action lawsuit for a total recovery of twelve million seven hundred and fifty thousand dollars ($12,750,000.00) in cash to resolve the claims against Defendants Odonate Therapeutics, Inc. ("Odonate"), Kevin C. Tang, Michael Hearne, and John G. Lemkey.

The Settlement is the product of extensive work by Co-Lead Counsel Pomerantz LLP and Holzer & Holzer ("Co-Lead Counsel"), which included investigating the claims, preparing the initial and two amended complaints, and litigating a motion to dismiss. Following this Court's order denying Defendants' motion to dismiss, Co-Lead Counsel engaged in intensive, mediator-assisted settlement negotiations with Defendants' counsel while simultaneously preparing for discovery.

Having evaluated the facts and applicable law, and recognizing the risks and expense of continued litigation, Lead Plaintiff and Co-Lead Counsel submit that the proposed Settlement is in the best interests of the Settlement Class.  Before entering into the Settlement, Lead Plaintiff and Co-Lead Counsel understood the strengths and weaknesses of the claims and defenses and engaged in significant efforts to protect the Settlement Class's interests, including, but not limited to, reviewing public statements, press releases, disclosures, and filings; retaining a private investigator and consulting confidential witnesses; engaging experts on issues such as damages and loss causation; drafting and repeatedly amending the complaint; successfully opposing Defendants' Motion to Dismiss; drafting initial discovery requests and case management papers; and engaging in mediator-assisted settlement discussions.  Tuccillo Decl. ¶¶18-21, 27.

The Settlement provides relief to the Settlement Class, which is defined as "[a]ll Persons who purchased, or otherwise acquired, Odonate securities during the Settlement

1

1
2

Class Period" of December 7, 2017 through March 21, 2021, inclusive.  *See* Stipulation at §1.33.  Excluded from the Settlement Class are:

3
4
5
6
7

> Defendants; members of Defendants' immediate families and their affiliates; any entity in which any Defendant had a controlling interest during the Class Period; any person who served as an officer or director of Odonate during the Class Period; the judges presiding over the action and the immediate family members of such judges; any persons or entities listed on the Settlement Exclusion List; and the successors, heirs, and assigns of any excluded persons.

8

*Id*.

9
10
11
12
13
14
15
16

Previously, the Court preliminarily approved the Settlement and the Settlement Class and directed Lead Plaintiff to issue Notice.  *See* ECF No. 50.  Lead Plaintiff caused Notice of the Settlement to be issued to members of the Settlement Class.  Bravata Decl. ¶¶4-10.  To date, having mailed ***over 25,000*** notices and received ***4833 claim forms***, ***no objections to the Settlement have been filed*** and ***no Settlement Class Member sought to be excluded from the Settlement.***  *See* Bravata Decl. ¶7, 13-14.  The May 2, 2022 deadline for filing any such objection has passed.  ECF No. 50 at 15.

17
18
19
20

As detailed below, the Settlement is a favorable result for the Settlement Class, providing immediate financial recovery and eliminating substantial risks associated with further litigation, especially considering that Odonate's financial condition presents significant questions about the ability to satisfy a substantial future judgment.

## II.   THE LITIGATION AND SETTLEMENT

21
22
23
24
25
26

On September 16, 2020, Lead Plaintiff Kendall filed a class action complaint for violation of the federal securities laws against Defendants.  ECF No. 1.  On November 16, 2020, Lead Plaintiff filed a motion for appointment as lead plaintiff ECF No. 3.  On December 14, 2020, Lead Plaintiff and Co-Lead Counsel were appointed pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  ECF No. 11.

27

After extensive investigation, on February 16, 2021, Lead Plaintiff filed his First

28

Amended Complaint ("FAC").   ECF No. 21.   After Odonate announced it was discontinuing operations, Lead Plaintiff chose to further investigate and to amend before the Court ruled on any dispositive motion, and thereafter filed the Second Amended Complaint ("SAC") (ECF No. 24) on April 13, 2021.  The SAC asserted claims against Defendants under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, for making material misstatements and omissions between December 7, 2017 and March 19, 2021 (the "Class Period").[4]  ECF No. 24.

The SAC alleged, *inter alia*, that the Defendants misled investors during the Class Period about the development of Odonate's cancer drug, tesetaxel, its Phase 3 Clinical Trial CONTESSA, and the likelihood of tesetaxel's receiving FDA approval.  *See, e., g.* ECF No. 24, ¶¶8-12. The SAC further alleged that Defendants made a partial corrective disclosure on August 24, 2020, when Odonate announced top-line safety results from CONTESSA. *Id.*  It alleged that Defendants continued issuing similar false and misleading statements, including in connection with public offerings. *Id.* On March 22, 2021, Odonate announced that tesetaxel's clinical trial package was unlikely to support its FDA approval and that Odonate would wind down operations, and on March 25, 2021, Odonate announced a plan of termination for its workforce.  The SAC alleged that Odonate's stock price fell as the truth was revealed, causing Class Members injury. *Id.*

On May 13, 2021, Defendants filed their motion to dismiss the SAC ("MTD"), supported by a memorandum of law, declaration, and various materials for which they sought judicial notice.  ECF Nos. 25-25-4.  Lead Plaintiff filed his partial opposition to Defendants' request for judicial notice (ECF No. 28) on June 25, 2021, and his opposition

---

[4]   The Class Period ends on March 19, 2021, which slightly differs from the Settlement Class Period ending date of March 25, 2021.

to Defendants' MTD (ECF No. 30) on June 26, 2021.  Defendants filed their replies on July 26, 2021.  ECF Nos. 32-34.  On August 4, 2021, the Court entered its Order denying Defendants' motion in full ("MTD Order").  ECF No. 36.  On September 3, 2021, Defendants answered the SAC.  ECF No. 37.

After the MTD Order, Co-Lead Counsel prepared a draft schedule for the Joint Discovery Plan to be filed pursuant to Fed. R. Civ. P. 26(f) and began drafting discovery requests.  Tuccillo Decl. ¶12.  The Parties also discussed the possibility of resolution and agreed to a mediation before Michelle Yoshida, Esq. of Phillips ADR Enterprises, in advance of which, they exchanged mediation statements and other information.  *Id.* at ¶11.

On September 20, 2021, the Parties held a virtual mediation.  Despite a full day of negotiations, the Parties were unable to reach a settlement.  Over the next three weeks, the Parties negotiated further, culminating in an agreement in principle to settle.  After continued intensive negotiations and exchanges of drafts and redlines, a Memorandum of Understanding was executed October 19, 2021. *Id.* at ¶¶13-14.  Co-Lead Counsel and defense counsel thereafter engaged in telephonic and written correspondence, including exchanging and negotiating redlines of documents to finalize the Stipulation and its accompanying exhibits.  The Stipulation was executed on November 18, 2021 and filed with the Court on December 3, 2021. Tuccillo Decl. ¶15; ECF No. 43-2.

While Lead Plaintiff and Co-Lead Counsel believe the SAC alleged meritorious claims, they faced significant risks in litigating further.  The Defendants denied liability and damages and would have had more opportunities to convince the Court, or a jury, of their position.  Moreover, given the wind down of Odonate and delisting of its stock on the Nasdaq,[5] coupled with the fact that Defendants had only $5 million in applicable

---

[5]     On January 7, 2022, Odonate announced in a press release that on January 6, 2022, Odonate received notice from Nasdaq that its stock would be delisted because Nasdaq believes Odonate is a "shell company."

insurance coverage, there was doubt as to Defendants' ability to satisfy a future judgment. *See* Tuccillo Decl. ¶22.  The Settlement eliminates these risks, provides the Settlement Class with a certain recovery of $12,750,000.00 in cash, and is a fair and reasonable resolution of the claims against Defendants.

## III.   PRELIMINARY APPROVAL OF SETTLEMENT AND NOTICE

On January 10, 2022, the Court held a hearing on Lead Plaintiff's Motion for Preliminary Approval.  ECF No. 48.  On January 11, 2022, the Court preliminarily approved the Settlement (ECF No. 49), and amended its Order on January 19, 2022.  ECF No. 50.  As required by the Court, copies of the short-form Notice were sent to ***over 25,000*** potential Settlement Class members and their nominees.[6]  *See* Bravata Decl. ¶¶4-9.  To date, there have been ***zero objections*** to any aspect of the Settlement, and ***no requests for exclusion***, while Settlement Class members have filed 4,800+ claims.  Bravata Decl. ¶¶13-15.

## IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.   The Settlement Meets The Standard For Judicial Approval.

Judicial approval is required for any compromise or settlement of class action claims, and a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  When deciding whether to approve a proposed settlement pursuant to Fed. R. of Civ. P. 23(e), the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must also be mindful of the Ninth

---

[6]   The Claims Administrator was also notified by one of the nominees on its mailing list that the nominee emailed more than 11,000 of its customers to notify them of the Settlement and provide direct links to the Short Notice on the Settlement webpage.  *Id.*

Circuit's policy favoring settlement, particularly in class action law suits."). It is within the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986).

The December 1, 2018, amendments to Rule 23(e)(2) provide the Court with four specific factors to consider when determining whether a proposed settlement is, fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3);
> and (D) the proposal treats class members equitable relative to each other.

Fed R. Civ. P. 23(e)(2). These Rule 23(e) factors are not intended to "displace" any previously adopted factors, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *See* Advisory Committee Notes to the 2018 Rules Amendments.

In exercising their discretion, courts in the Ninth Circuit have traditionally considered the following additional *Hanlon* factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

However, the importance of each factor will vary on a case-by case basis depending on issues such as the claims at issue and the relief sought. *See Officers for Justice*, 688 F.2d at 625. Moreover, a court need not consider all of these factors, or may consider others. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Accordingly, weighing the *Hanlon* factors is *not* an adjudication of the merits. In this case, Co-Lead Counsel properly accounted for the costs and risks of continued litigation, including the inherent problems of proof of, and possible defenses to, the claims asserted in the Action, and other concerns such as the ability to recover any future judgment.

Ultimately, "[a] settlement should be approved if it is 'fundamentally fair, adequate and reasonable.'" *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (same). Consequently, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should a proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. Indeed, "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id*. Lead Plaintiff respectfully submits that the proposed Settlement should receive final approval.

**B.** **The Settlement Is Fair, Reasonable, And Adequate, Meriting Final Approval Under The Rule 23(e)(2) And *Hanlon* Factors.**

**1.** **The Settlement Class Was Adequately Represented.**

Fed R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Lead Plaintiff and Co-Lead Counsel adequately represented the Settlement Class both during the litigation and its settlement.  Lead Plaintiff's interest in obtaining a fair, reasonable, and adequate settlement of the claims asserted are consistent with those of the Settlement Class Members, since they have typical and coextensive claims, including the shared interest in obtaining the largest possible recovery in this Action, and under the proposed Plan of Allocation, Lead Plaintiff will receive the same *pro rata* share of the Settlement Fund as the rest of the Settlement Class.  *Mild v. PPG Indus., Inc.*, 2:18-cv-04231-RGK-JEM, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members.")  Also, Lead Plaintiff has regularly communicated with Co-Lead Counsel throughout the Action and has fairly and adequately protected and advanced the interests of the Settlement Class.  Tuccillo Decl. ¶36; Kendall Decl. ¶4. Thus, Lead Plaintiff is an adequate representative of the Settlement Class.

Lead Plaintiff is represented by highly qualified counsel with extensive experience in securities class action litigation.  Pomerantz is one of the oldest plaintiff-side securities litigation firms in the country, routinely litigating in this Circuit and District, and Holzer has decades of experience litigating securities class action claims, with numerous appointments as lead counsel.  Tuccillo Decl. ¶26 & Exhibit 1 (Pomerantz Firm Resume); Holzer Decl. ¶4 & Exhibit 1 (Holzer Firm Resume).  As described more fully in Section II, *supra*, Lead Plaintiff and Co-Lead Counsel reviewed public statements, press releases, disclosures, and SEC filings; retained a private investigator and consulted confidential witnesses; engaged experts on issues such as damages and loss causation; drafted and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

amended the complaint; successfully opposed Defendants' MTD; and engaged in extensive settlement discussions.  Tuccillo Decl. ¶¶19-20, 27.

Accordingly, as the Court previously found in conditionally certifying the Settlement Class and appointing Lead Plaintiff as Class Representative and Pomerantz and Holzer as Co-Lead Class Counsel, *see* Preliminary Approval Order at ¶¶9-10, Lead Plaintiff and Co-Lead Counsel have adequately represented the Settlement Class and  are capable of prosecuting this Action in accordance with Fed. R. Civ. P. 23(a)(4).

## 2.    Experienced Counsel Negotiated The Settlement In Good Faith And At Arm's-Length.

Lead Plaintiff and Co-Lead Counsel, through diligent and effective efforts, agreed to a Settlement that provides substantial relief to Settlement Class members.  Courts recognize that the opinion of experienced counsel supporting the settlement after hard-fought negotiations is "entitled to considerable weight." *See, e.g.*, *Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC, 2014 WL 2761316, at *8 (C.D. Cal. June 12, 2014); *Omnivision*, 559 F. Supp. 2d at 1043 ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").  Indeed, counsel is "most closely acquainted with the facts of the underlying litigation." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005).    Throughout the litigation and settlement negotiations, the Parties were represented by skilled and highly respected counsel.  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Heritage*, 2005 WL 1594403, at *9.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 3.      Class Relief Is Adequate In Light Of The Risks, Costs, and Delay of Continued Litigation.

The expense, complexity, and possible duration of litigation are key factors in evaluating a settlement's reasonableness.  *See, e.g.*, *Torrisi*, 8 F.3d at 1375-76 ("the cost, complexity and time of fully litigating the case" rendered the settlement fair).  Co-Lead Counsel, highly experienced in litigating and resolving complex securities class actions, carefully evaluated the claim merits, risks, and weaknesses, before entering into the Settlement.  Lead Plaintiff and Co-Lead Counsel made a reasoned strategic decision to settle before engaging in full-blown discovery and further dispositive motion practice.

### a.      Lead Plaintiff Faced Challenges On The Merits.

Although Co-Lead Counsel and Lead Plaintiff believed, and continue to believe, that the case was strong, based on the substantial research and investigation conducted, they were cognizant of the substantial risk posed to the Settlement Class in continuing this Action.  *See, e.g., Heritage*, 2005 WL 1594403, at *7 ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"); *see also In re Sumitomo Cooper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999) (discussing instances where a court rejected a settlement only to have the ultimate recovery be lower).

While the SAC survived the MTD, success in the case was not guaranteed.  If not for this Settlement, Defendants would have contested class certification and, if a class was certified, Defendants would have retained the opportunity to have it de-certified.  *See Omnivision*, 559 F. Supp. 2d at 1041 (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").[7]  Lead Plaintiff also would have difficulty establishing the

---

[7]      The Court noted that certain aspects of the case were better resolved at the class certification stage. MTD Order at 13, 16. Moreover, were a class to be certified, the

elements of falsity and scienter at summary judgment and trial particularly where the Individual Defendants did not engage in insider stock sales at relevant times. *See, e.g.*, *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 WL 6902856, at *5 (N.D. Cal. Nov. 21, 2016). Lead Plaintiff would have had to develop evidence to demonstrate that Defendants intentionally or recklessly misled investors throughout the Class Period about tesetaxel, its development, and its clinical trials. Defendants have continued to insist that Lead Plaintiff would not be able to establish that any statements were materially false or misleading, made with the requisite scienter, or caused damage.

### b.    Continued Litigation Would Be Complex and Costly.

Regardless of the ultimate outcome, there is no question that further litigation against the Defendants would have been complex and expensive. It is widely acknowledged that class action litigation is inherently complex. *See, e.g.*, *Nobles v. MBNA Corp.*, No. 06-cv-3723 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (finding a proposed settlement proper "given the inherent difficulty of prevailing in class action litigation"). Securities class actions are typically expensive to pursue. *See, e.g.*, *Heritage*, 2005 WL 1594403, at *6.

The additional obstacles ahead could have significantly impacted Lead Plaintiff's ability to recover for the Class. For instance, for class certification, Lead Plaintiff needed an expert's declaration on the issue of market efficiency, and Defendants already have challenged Lead Plaintiff's class definition. *See* MTD Order at 16. Merits discovery would likely involve tens of thousands of documents (or more), extensive third party discovery, and a substantial number of depositions, including those of the Defendants. Thereafter, the parties would engage in expert discovery on questions of reliance, loss

---

Defendants could petition for immediate interlocutory appeal pursuant to Fed. R. Civ. P. 23(f), under which a certification order may be "altered or amended before final judgment." *See, e.g.*, *Jenson v. Fiserv Trust Co.*, 256 F. App'x 924 (9th Cir. 2007).

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION –
Case No. 3:20-cv-01828-H-JLB

causation and damages.  Expert discovery and trial preparation are notoriously expensive and complex.  *See Heritage*, 2005 WL 1594403, at *6 (class actions have a well-deserved reputation as being the most complex).

Accordingly, the likely duration and expense of further litigation supports a finding that the Settlement is fair, reasonable, and adequate.  Even if a class was certified, the Defendants' likely motion(s) for summary judgment would have made continued prosecution of the action complex, expensive, and lengthy with a more favorable outcome than the current Settlement highly uncertain.  *See Browne v. Am. Honda Motor Co.*, No. 09-cv-06750 MMM (DTBx), 2010 WL 9499072, at *11 (C.D. Cal. July 29, 2010) ("Had the parties aggressively litigated class certification and tried the case, it could have consumed substantial party and court resources.  There is a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'").  The cost and time of litigating class certification, motions for summary judgment, and/or *Daubert* motions was of particular concern here considering that Odonate had announced it was winding down operations and would be delisted from Nasdaq.

Thus, the present value of a certain recovery at this time, already fully funded, as opposed to the highly uncertain chance for a greater one substantially down the road, supports approval of a settlement and eliminates the attendant risk of continued litigation. *See*, *e.g.*, *In re Vivendi Universal, S.A., Sec. Litig.*, No. 02-cv-5571 (RJH), 2012 WL 362028, at *1 (S.D.N.Y. Feb. 6, 2012) (noting that two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery).

Lead Plaintiff and Co-Lead Counsel understand the strengths and weaknesses of the case and made a prudent and justifiable decision to avoid the additional risk, delay, expense, and complexity of further litigation.  *See Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

with uncertain results.").

### 4.      The Rule 23(e)(2)(C)(ii)-(iv) Factors Support Final Approval.

#### a.      The Method Of Distributing Relief Is Reasonable.

The settlement administration here includes well-established, effective procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund.  Strategic Claims Services , the Court-approved Claims Administrator, will process claims under the guidance of Co-Lead Counsel, will allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, will mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval.[8] Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Lead Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.  *See, e.g., Yaron v. Intersect ENT, Inc.*, No. 4:19-CV-02647-JSW, 2021 WL 5150052, at *1 (N.D. Cal. Nov. 5, 2021).

#### b.      The Proposed Attorneys' Fees Are Reasonable.

As more fully addressed in the accompanying Fee and Expense Application, Co-Lead Counsel are applying for a percentage of the common fund fee award to compensate them for the services rendered on behalf of the Settlement Class.  The proposed attorneys' fees of 33 and 1/3% of the Settlement Fund and expenses of $56,147.94 are reasonable in light of the work performed and the results obtained. *See, e.g.*, *Mego*, 213 F.3d at 463. Moreover, approval of the requested attorneys' fees is separate from Settlement approval, and the Settlement may not be terminated based on any ruling with respect to attorneys'

---

[8]      This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted.  *See* Stipulation ¶6.8.

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF
SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION –
Case No. 3:20-cv-01828-H-JLB

1  fees.  *See* Stipulation ¶ 2.11.

2             c.     **The Parties' Agreements Are Reasonable.**

3        In accordance with Rules 23(e)(2)(C)(iv) and 23(e)(3), and as Lead Plaintiff noted

4  in his preliminary approval papers, the Parties entered into a confidential agreement,

5  which establishes certain conditions under which Odonate may terminate the Settlement

6  if Settlement Class Members who collectively purchased a specific amount of shares of

7  Odonate common stock request exclusion (or "opt out") from the Settlement.  This type

8  of agreement is standard in securities class action settlements and has no negative impact

9  on the fairness of the Settlement.  *See, e.g.*, *In re Carrier IQ, Inc., Consumer Privacy*

10 *Litig.*, No. 12-md-02330-EMC, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016)

11 (observing that such "opt-out deals are not uncommon as they are designed to ensure that

12 an objector cannot try to hijack a settlement in his or her own self-interest," and granting

13 final approval of class action settlement).

14             5.     **The Amount Obtained In The Settlement Is Reasonable.**

15       The determination of a "reasonable" settlement is not susceptible to a mathematical

16 equation yielding a particularized sum. Nor is the proposed Settlement "to be judged

17 against a hypothetical or speculative measure of what might have been achieved by the

18 negotiators."  *Officers for Justice*, 688 F.2d at 625.  As "[s]ettlement is the offspring of

19 compromise[,] the question we address is not whether the final product could be prettier,

20 smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150

21 F.3d at 1027.  A settlement may be acceptable even if it amounts to only a fraction of the

22 potential recovery that might be available at trial.  *See Mego*, 213 F.3d at 459..

23       The law and public policy favoring settlements are particularly strong here, where

24 an eight-figure recovery provides a favorable result.  *In re Omnivision Techs., Inc.*, 559 F.

25 Supp. 2d 1036, 1041 (N.D. Cal. 2008).  Though Lead Plaintiff and Co-Lead Counsel

26 believe the claim was strong and could hold up to legal scrutiny, they had to factor in

practical considerations.   Defendants repeatedly claimed they had valid defenses, contesting that false or misleading statements had been made or that they acted with scienter.   Defendants insisted that the length of the alleged Class Period was improper, an argument with the potential to reduce the size of any recovery.   Thus, a contested class certification and motion for summary judgment would have occurred if litigation proceeded.   Discovery was about to ratchet up, which would quickly cause expenses to escalate, eating into the available funds that could go towards funding the Settlement at a time when Defendants were well into the process of winding down Odonate's operations.   These considerations strongly favored entering the Settlement while costs remained relatively low.   *See, e.g., Loeza v. JPMorgan Chase Bank, NA*, No. 13-cv-0095-L (BGS), 2015 WL 13357592, *8 (S.D. Cal. Aug. 8, 2015) (a settlement must balance the offer against the expected recovery).

It is exceedingly difficult to compare the Settlement to any theoretical amount that the Settlement Class could have potentially obtained from the Defendants had Lead Plaintiff successfully obtained class certification, defeated a motion for summary judgment, and ultimately established liability at trial. Such outcomes are highly speculative, and would have required years of additional efforts at a high cost, which would have drained the limited available insurance coverage.   The Settlement's total value is $12,750,000.00 in cash.   This outcome provides a fair and reasonable recovery under the circumstances, providing an immediate and tangible benefit to the Settlement Class that is well within a range of reasonableness in light of a possible recovery and the substantial risks presented by the litigation.

### 6.    The Extent Of Discovery And Stage Of The Proceedings.

The stage of the proceedings and the amount of information available to the parties to assess strengths and weaknesses are additional *Hanlon* factors.   *See Mego*, 213 F.3d at 458.   The parties need not have engaged in extensive formal discovery if they have

engaged in sufficient investigation of the facts to enable themselves and the Court to intelligently appraise the Settlement.

As described more fully in Section II, *supra*, Co-Lead Counsel conducted a thorough review of Odonate's SEC filings and press releases, its stock chart, and other publicly available news reports and information relating to Odonate.  Tuccillo Decl. ¶¶19, 27.  Based on this public information and on private investigation work, including interviews with confidential witnesses, Lead Plaintiff filed his FAC on February 16, 2021, and his SAC on April 13, 2021.  Following the filing of the SAC, Lead Plaintiff and Co-Lead Counsel vigorously and successfully opposed the motion to dismiss.  *Id.* at ¶¶8-10. Thereafter, the Parties exchanged mediation statements before mediating with Michelle Yoshida, Esq. on September 20, 2021, and shared their perspectives during the all-day mediation and in ensuing discussions.  *Id.* at ¶¶11-14.  The Parties exchanged multiple drafts of settlement documentation, further illuminating core issues and positions.  *Id.* at 15.  As a result, Co-Lead Counsel had ample opportunity to assess the strengths and weaknesses of the claims to appraise the Settlement's sufficiency. *See, e.g., Athale v. Sinotech Energy Ltd.*, No. 11- CV-05831, 2013 WL 11310685 (S.D.N.Y. Sept. 4, 2013) (approving settlement of securities class action at parallel stage); Tuccillo Decl. ¶¶18-19.

Courts in this Circuit have recognized that, "[t]hrough protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing." *In re Critical Path, Inc. Sec. Litig.*, No. 01-cv-00551 WHA, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002).  As a result, courts regularly approve settlements reached relatively early in the formal litigation process.  *See, e.g., Mego*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to

make an informed decision about settlement."). For this reason, courts have commended class counsel for recognizing when, as here, a prompt resolution of the matter is in the best interest of the class. *See Glass v. UBS Fin. Servs., Inc*., No. 06-cv-4068 MMC, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly."), *aff'd*, 331 Fed. Appx. 452, 457 (9th Cir. 2009). In sum, the parties reached the Settlement when they were well informed as to the facts, legal issues, and risks of the Action.

### 7. The Settlement Class's Positive Reaction.

The reaction of the Settlement Class, which was extremely favorable here, is another factor in supporting the adequacy of the Settlement. *See Omnivision*, 559 F. Supp. 2d at 1043; *In re Rambus Inc. Derivative Litig.*, No. 06-cv-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). To date, ***no Settlement Class member has objected*** to the Settlement, the Plan of Allocation, Co-Lead Counsel's fee and expense request, or Lead Plaintiff's request for compensatory awards, and there are ***no requests for exclusions*** from the Settlement Class, despite the mailing of ***over 25,000 notices***. S*ee* Bravata Decl. ¶¶4-9. Thus far, ***over 4,800 Settlement Class members have submitted claims*** to benefit from the Settlement recovery. *Id.* at ¶15, *see also, Heritage*, 2005 WL 1594403, at *12 ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and defending the action, the Court finds the plan of allocation as fair and adequate.").

### 8. The Absence of Collusion Among The Negotiating Parties.

The Parties' negotiations were thorough, and the Settlement was reached without collusion after good faith bargaining among the parties. *See* Tuccillo Decl. ¶20. To assist in reaching a settlement, the Parties retained experienced mediator Michelle Yoshida,

Esq., which further lends credibility to the negotiating process. *See Feyko v. AAD Partners LP*, No. LACV 11-05511 DDP (PJWx), 2014 WL 12572678, at *7 (C.D. Cal. Mar. 7, 2014) ("Settlements reached with the help of a mediator are likely non-collusive."); *Satchell v. Fed. Express Corp.*, No. 03-cv-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (noting that the assistance of an experienced mediator in the settlement process supported the non-collusive nature of the settlement). As set forth above, the procedurally fair process of negotiating the Settlement included consideration of the costs and risks of continued litigation, including the risk that the class would not be certified or that the Defendants could successfully escape liability either through a motion for summary judgement, a defense verdict, or a successful appeal.

Moreover, the Settlement does not display any indicators of a collusive agreement. *See In re Bluetooth* 654 F.3d at 947. Here, the total recovery amount of $12,750,000.00 was put into interest-bearing escrow account, from which Co-Lead Counsel is seeking an award of fees and expenses. The Settlement does not include a clear sailing provision; and any remaining funds in the Settlement fund are to be distributed to Settlement Class Members, or *cy pres* recipients - no amount will revert to the Defendants.

### 9. The Absence Of A Governmental Participant.

There was no governmental participant litigating on behalf of or alongside the Class in this Action. Without this private civil action, there would have been no recovery for the Class. Accordingly, this factor supports approval of the Settlement.

## V. CLASS NOTICE SATISFIED DUE PROCESS

Co-Lead Counsel caused the Settlement Class to receive adequate notice of the Settlement. The Claims Administrator sent over 25,000 copies of the Court-approved short-form Notice to potential Settlement Class Members and their nominees who could be identified with reasonable effort, from multiple sources. Bravata Declaration ¶¶4-9. This short-form Notice directed Settlement Class Members to the Claims Administrator's

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

website, where the Proof of Claim and Release Form, long-form Notice, and Stipulation, along with the deadlines approved by the Court, were posted.  *Id.* at ¶12.  The Claims Administrator also sent 2,200 letters to Nominee Account Holders and Institutional Groups contained on a master mailing list of 978 banks and brokerage companies, as well as 1,222 mutual funds, insurance companies, pension funds, and money managers that may have traded or owned Odonate common stock in their clients' or their own accounts. *Id.* at ¶5. The Summary Notice was published on the GlobeNewswire on February 7, 2022. *Id.* at ¶10. This method of notice, previously approved by the Court, is appropriate because it directed notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]."  Fed. R. Civ. P. 23(e)(1).

The Notice program provided the necessary information for Settlement Class Members to make an informed decision.  Among other things, the Notices disclosed: (1) the Settlement amount; (2) the reasons the parties proposed it; (3) that Lead Counsel would apply for an award of attorneys' fees not to exceed 33 and 1/3% of the Settlement Fund, litigation expenses not to exceed $100,000.00 advanced in connection with the Action up to the point of the Settlement, and compensatory awards to Lead Plaintiff in the amount of $5,0000; (4) the name, telephone number, and address of representatives of Co-Lead Counsel available to answer questions; (5) the right of Settlement Class Members to object to the Settlement or to seek exclusion from the Settlement Class, and the consequences thereof; and (6) the dates and deadlines, as updated, for certain Settlement-related events. *See* ECF No. 43-2; 15 U.S.C. § 78u-4(a)(7).  It further explained that the Net Settlement Fund will be distributed to eligible Settlement Class Members who submit valid and timely Proof of Claim Forms under the Plan of Allocation, which it described.  *Id.*

The Notice program was sufficient because it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir.

2009); *In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008). The Notice fairly apprised Settlement Class Members of their rights with respect to the Settlement, was the best notice practicable under the circumstances, and complied with the Court's Preliminary Approval Order, Fed. R. Civ. P. 23, the PSLRA, and due process. *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007).

## VI.  THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

In the Preliminary Approval Order, the Court preliminarily approved the Plan of Allocation.  Lead Plaintiff now requests that the Court give final approval of the Plan of Allocation, for the purpose of administering the Settlement. The Plan of Allocation was prepared with the assistance of Lead Plaintiff's damages consultant and is based on an estimation as to the amount of artificial inflation in the prices of Odonate common stock during the Class Period.  *See* Tuccillo Decl. ¶23.  It is substantively similar to other plans that have been approved to successfully allocate recoveries in other securities class actions.  *Id.*  Lead Plaintiff submits that the Plan of Allocation is fair, reasonable and adequate, and should be approved.

The proposed Plan of Allocation has a rational basis and was fully described in the long-form Notice posted on the Claims Administrator's website, to which Settlement Class Members were directed via the short-form Notice and the published Summary Notice. *See* Bravata Decl. ¶12; Stipulation, Exhibit B1 (ECF No. 43-2) at 12-15. Importantly, all Class Members are treated equitably - under the proposed Plan of Allocation, each Authorized Claimant (including Lead Plaintiff) will receive *pro rata* share of the Net Settlement Fund.  *See* Tuccillo Decl. ¶24.  Thus, Lead Plaintiff will receive the same level of *pro rata* recovery, based on his Recognized Claim as calculated by the Plan of Allocation, as all other similarly situated Settlement Class Members.  *Id*. Co-Lead Counsel formulated the Plan of Allocation with the help of a damages expert,

with the goal of reimbursing Settlement Class Members in a fair and reasonable manner. *See* Stipulation, Exh. B1 (ECF No. 43-2) at 12-15 (ECF No. 43-2); Tuccillo Decl. ¶¶23-25; *Riker v. Gibbons*, No. 08-cv-00115-LRH-VPC, 2010 WL 4366012, at *5 (D. Nev. Oct. 28, 2010) ("Class counsel has consistently consulted with experts throughout this litigation, and based on these consultations, has determined that the terms agreed upon in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims").

Assessment of a plan of allocation in a class action "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *Van Wingerden v. Cadiz, Inc.*, No. LA CV15-03080 JAK (JEMx), 2017 WL 5565263, at *9 (C.D. Cal. Feb. 8, 2017) (quoting *Omnivision*, 559 F. Supp. 2d at 1045); *see also, Nguyen v. Radient Pharms. Corp.,* No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it fairly treats class members").

Here, there have been ***no objections*** and ***no exclusion requests*** from any potential Settlement Class Member, despite ***over 25,000 notices*** mailed and over 4,800 claims submitted. *Heritage*, 2005 WL 1594403, at *39-40 ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and defending the action, the Court finds the plan of allocation as fair and adequate.") Co-Lead Counsel therefore believes the Plan of Allocation fairly compensates Settlement Class Members and should be approved.

## VII.   SETTLEMENT CLASS CERTIFICATION IS WARRANTED

The Court's Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). ECF No. 50 at ¶¶5-9. Certification of the Settlement Class remains proper now.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### A.   The Settlement Class Satisfies Rule 23(a).

To meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1), the class must be so numerous that joinder of all members is impracticable. In general, numerosity is satisfied when a class has at least forty members. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Here, over 25,000 Notices were mailed to potential Class Members. Bravata Decl. ¶8. Joinder of these thousands of Class Members would be impracticable. A class of this size is sufficiently numerous to make individual joinder impracticable. *See* ECF No. 50 at 6; *In re Biolase, Inc. Sec. Litig.*, No. SACV 13-1300-JLS (FFMx), 2015 WL 12697736, *3 (C.D. Cal. June 5, 2015).

To satisfy commonality under Fed. R. Civ. P. 23(a)(2), there must be questions of either law or fact common to the class. Here, common questions include: (i) whether the federal securities laws were violated by Defendants; (ii) whether statements made by Defendants during the Class Period misrepresented and/or omitted material facts; (iii) whether Defendants acted knowingly or recklessly in issuing any false and misleading public statements; (iv) whether the price of Odonate securities was artificially inflated by the Defendants' conduct; and (v) the extent and the appropriate measure of damages suffered by the Settlement Class. ECF No. 50 at 7. [9]

Fed. R. Civ. P. 23(a)(3) requires that the claims or defenses of the representative parties are typical of the class's claims. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). A plaintiff's claims are "'typical' if they are reasonably co-extensive with those of absent class mmbers." *Hanlon*, 150 F.3d at 1020. Differences in the amount of damage, the size or manner of purchase, the nature of the purchaser, and the date of

---

[9]   *See In re UTStarcom, Inc. Sec. Litig.*, No. 04-cv-04908 JW, 2010 WL 1945737 at *4 (N.D. Cal. May 12, 2010) (common questions of law and fact as to whether Defendants engaged in fraudulent scheme, stock was artificially inflated, and misstatements and omissions caused class members to suffer economic losses); *Brown v. China Integrated Energy, Inc.*, No. 11-cv-02559 BRO (PLAx), 2015 WL 12720322, at *14 (C.D. Cal. Feb. 17, 2015) (misrepresentations to class members satisfy commonality requirements).

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF
SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION –
Case No. 3:20-cv-01828-H-JLB

purchase are insufficient to defeat class certification. *See Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 606 (N.D. Cal. 1991).  Here, Lead Plaintiff, like the other Settlement Class Members, purchased Odonate shares in the same manner and pursuant to the same alleged fraud during the same time period. Lead Plaintiff is not subject to any unique defenses that could make him atypical.  *See Hodges v. Akeena Solar, Inc.,* 274 F.R.D. 259, 266-67 (N.D. Cal. 2011); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 635-36 (C.D. Cal. 2009).  The typicality prerequisite is met.  ECF No. 50 at 7.

The adequacy of representation prerequisite requires that the class representative be able to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  For the reasons discussed in Section IV(B)(1), *supra*, the adequacy of representation prerequisite is met.  ECF No. 50 at 7-8.

## B.     The Settlement Class Satisfies Rule 23(b)(3).

This Action also meets the requirements of Rule 23(b)(3).  For common questions of law or fact to predominate over questions affecting only individual members, the common questions should "present a significant aspect of the case and…be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. "Predominance is a test readily met in certain cases alleging consumer or securities fraud…." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 4207245, * 4 (N.D. Cal. Sept. 4, 2018) (quoting *Amchem*, 521 U.S. at 625). The common questions of law and fact here predominate over individual questions because Defendants' conduct impacted all Settlement Class Members in the same way.  *See* ECF No. 50 at 8-9; *Cooper*, 254 F.R.D. at 632 ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages.").

The class action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  The standards for satisfying the class certification element of superiority under rule 23(b)(3) are relaxed for settlement classes because the difficulties of managing the class in future litigation or at trial are not relevant.  *See, e.g.*, *Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011).  Here, there are thousands of investors in the Settlement Class.  As such, a class action is a superior method of adjudicating this matter.  ECF No. 50 at 9.

For the reasons stated here and in Lead Plaintiff's Unopposed Motion for Preliminary Approval (ECF No. 43), Lead Plaintiff respectfully requests that the Court affirm its determination in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

## VIII.  **CONCLUSION**

The complexity of the facts, the substantial expenses if this litigation were to continue, and the risks attendant to prevailing, weigh heavily in favor of accepting a recovery of $12,750,000.00.  The Settlement presents a sizable, immediate, and certain benefit to Settlement Class Members. Accordingly, Lead Plaintiff respectfully requests that this Court approve the Settlement, Notices, and Plan of Allocation as fair, reasonable and adequate; permanently enjoin the assertion of any claims that arise from or relate to the subject matter of the Action against the Defendants; dismiss the Action with prejudice as to the Defendants; certify the Settlement Class for settlement purposes; and enter Final Judgment in the form previously submitted to the Court as Exhibit E to the Stipulation. ECF No. 43-2.

Dated: May 16, 2022                     Respectfully Submitted,

                                        /s/ Matthew L. Tuccillo
                                        Matthew L. Tuccillo

                                        **POMERANTZ LLP**
                                        Matthew L. Tuccillo
                                        (admitted *pro hac vice*)
                                        Jennifer Banner Sobers
                                        (admitted *pro hac vice*)
                                        600 Third Avenue, 20th Floor
                                        New York, New York 10016
                                        Telephone: (212) 661-1100
                                        Facsimile: (917) 463 1044
                                        Email: mltuccillo@pomlaw.com
                                                jbsobers@pomlaw.com

                                        **POMERANTZ LLP**
                                        Jennifer Pafiti (282790)
                                        1100 Glendon Avenue, 15th Floor
                                        Los Angeles, California 90024
                                        Telephone: (310) 405-7190
                                        Email: jpafiti@pomlaw.com

                                        **HOLZER & HOLZER, LLC**
                                        Corey D. Holzer
                                        (admitted *pro hac vice*)
                                        211 Perimeter Center Parkway, Suite 1010
                                        Atlanta, Georgia 30346
                                        Telephone: (770) 392-0090
                                        Facsimile: (770) 392-0029
                                        Email: cholzer@holzerlaw.com

                                        *Counsel for Lead Plaintiff and Proposed*
                                        *Lead Counsel for the Settlement Class*

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF
SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION –
Case No. 3:20-cv-01828-H-JLB

1

## **CERTIFICATE OF SERVICE**

2        I hereby certify that this document filed through the CM/ECF system will be sent

3   electronically to the registered participants as identified on the Notice of Electronic Filing

4   and paper copies will be sent to those indicated as non-registered participants on May 16,

5   2022.

6

7                                        */s/ Matthew L. Tuccillo*
                                          Matthew L. Tuccillo
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF
SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION –
Case No. 3:20-cv-01828-H-JLB