Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6449
Email: jpafiti@pomlaw.com

*Counsel for Lead Plaintiff and Proposed Lead Settlement Class Counsel*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN KENDALL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ODONATE THERAPEUTICS, INC., KEVIN C. TANG, MICHAEL HEARNE and JOHN G. LEMKEY,<br><br>Defendants. | Case No. 3:20-cv-01828-H-JLB<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND COMPENSATORY AWARD FOR LEAD PLAINTIFF WITH MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   June 6, 2022<br>Time:   10:30 a.m.<br>Place:  Courtroom TBD<br>Judge:  Hon. Marilyn L. Huff |

**TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to the Court's Amended Order Granting Preliminary Approval of Settlement (ECF No. 50) issued on January 18, 2022 ("Amended Preliminary Approval Order"), on June 6, 2022 at 10:30 a.m. or as soon thereafter as counsel may be heard, a Settlement Fairness Hearing shall take place at the James M. Carter and Judith N. Keep United States Courthouse, Southern District of California, (courtroom to be determined), before the Honorable Marilyn L. Huff,  at which Lead Plaintiff Kevin Kendall ("Kendall" or "Lead Plaintiff") will move for an order awarding attorneys' fees, and authorizing reimbursement of expenses, and for granting compensatory awards to Lead Plaintiff.

The requested awards of attorneys' fees, reimbursement of expenses, and a Lead Plaintiff compensatory award are warranted under the fee-setting and expense reimbursement criteria applicable to common funds in Private Securities Litigation Reform Act ("PSLRA") cases.  This motion is supported by the accompanying Memorandum of Points and Authorities; Lead Plaintiff's Motion for Final Approval of Settlement, Class Certification and Plan of Allocation and Memorandum of Law in Support Thereof ("Final Approval Brief"); the Declaration of Matthew L. Tuccillo, Esq. ("Tuccillo Decl."); the Declaration of Corey D. Holzer, Esq. ("Holzer Decl."); the Declaration of Lead Plaintiff Kendall ("Kendall Decl."); the Claims Administrator Declaration of Josephine Bravata Concerning (A) Mailing of the Short Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Decl."); the Stipulation of Settlement and its exhibits; and the other filings in this case, along with such other and further representations as Co-Lead Counsel may make at the hearing on this matter.

i

PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMMBURSEMENT OF EXPENSES AND COMPENSATORY AWARD FOR LEAD PLAINTIFF
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – Case No. 3:20-cv-01828-H-JLB

## **<u>TABLE OF CONTENTS</u>**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

I.     INTRODUCTION ................................................................. 1

II.    BACKGROUND ................................................................... 3

    A.    Factual Allegations, Procedural History, Settlement Negotiations ............................................................... 3

    B.    Co-Lead Counsel' Specific Efforts To Obtain The Settlement ............................................................... 4

III.    ARGUMENT ....................................................................... 6

    A.    Co-Lead Counsel Should Be Awarded Attorney's Fees ......... 6

        1.    A Percentage Of The Common Fund Should Be Awarded ......................................................... 6

        2.    Relevant Ninth Circuit Factors Support The Award ..... 9

            a.    Co-Lead Counsel Achieved A Favorable Result ..................................................... 9

            b.    The Risks Of Continued Litigation Were Many.................................................... 11

            c.    The Skill Required And The Quality Of Work .................................................... 13

            d.    A Contingency Fee And Significant Financial Burden ................................................. 15

            e.    A One-Third Fee Aligns With Comparable Contingent Litigation ......................................... 17

            f.    The Positive Settlement Class Reaction........... 18

            g.    A Lodestar Cross-Check Verifies Reasonableness.................................................. 19

    B.    Co-Lead Counsel's Expenses Should Be Reimbursed .......... 21

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

   C. The Requested Award to Lead Plaintiff Should Be Approved .................................................................................. 23

IV. CONCLUSION ............................................................................. 25

PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMMBURSEMENT OF EXPENSES AND COMPENSATORY AWARD FOR LEAD PLAINTIFF
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – Case No. 3:20-cv-01828-H-JLB

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado v. Nederend*,
   No. 1:08-cv-01099 OWW DLB, 2011 WL 1883188
   (E.D. Cal. May 17, 2011)...................................................................23

*Barbosa v. Cargill Meat Solutions Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ......................................................15

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985).............................................................................8

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988), *aff'd sub nom.*,
   899 F.2d 21 (11th Cir. 1990) ............................................................14

*Blum v. Stenson*,
   465 U.S. 886 (1984)..............................................................................7

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..............................................................................6

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*
   *of Stephens Cnty., Okl.*,
   8 F.3d 722 (10th Cir. 1993) ...............................................................22

*Buccellato v. AT & T Operations, Inc.*,
   No. C10-00463-LHK, 2011 WL 4526673
   (N.D. Cal. June 30, 2011) ..................................................................24

*Central Railroad & Banking Co. of Ga. v. Pettus*,
   113 U.S. 116, 5 S.Ct. 387, 28 L.Ed 915 (1885).................................7

*Cheng Jiangchen v. Rentech, Inc.*,
   No. CV 17-1490-GW-FFMx, 2019 WL 6001562
   (C.D. Cal. Nov. 8, 2019).....................................................................18

*Cifuentes v. Ceva Logistics U.S., Inc.*,
    No. 16-cv-01957-H-DHB, 2017 WL 4792425
    (S.D. Cal. Oct. 23, 2017) ...............................................................18, 21

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000)............................................................18

*Destefano v. Zynga, Inc.*,
    No. 12-CV-04007-JSC, 2016 WL 537946
    (N.D. Cal. Feb. 11, 2016) ...............................................................14, 21

*Dusek v. Mattel, Inc.*,
    No. CV 99-10864-MRP, 2003 WL 27380801
    (C.D. Cal. Sept. 29, 2003)....................................................................24

*Figueroa v. Allied Bldg. Prods. Corp.*,
    No. SACV 16-02249 AG (KESx), 2018 WL 4860034,
    (C.D. Cal. Sept. 24, 2018)....................................................................18

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
    307 F.3d 997 (9th Cir. 2002) ...........................................................7, 20

*Fogarazzo v. Lehman Bros.*,
    No. 03 CIV. 5194 SAS, 2011 WL 671745
    (S.D.N.Y. Feb. 23, 2011) .....................................................................12

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000) ................................................................14

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ...................................................................22

*Hefler v. Wells Fargo & Co.*,
    No. 16-cv-05479-JST, 2018 WL 6619983
    (N.D. Cal. Dec. 18, 2018) ....................................................................11

*Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012) .............................................................16

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989)...................................................8, 9

*In re Am. Apparel, Inc. S'holder Litig.*,
No. 10-cv-06352-MMM-JCGx, 2014 WL 10212865
(C.D. Cal. July 28, 2014) ......................................................8, 11, 13, 15

*In re Banc of California Sec. Litig.*,
No. SACV1700138DMGDFMX, 2020 WL 1283486
(C.D. Cal. Mar. 16, 2020) ...............................................................17

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ..........................................................7, 9

*In re BP p.l.c. Sec. Litig.*,
852 F. Supp. 2d 767 (S.D. Tex. 2012) .................................................11

*In re Businessland Sec. Litig.*,
No. C-90-20476-RFP, 1991 WL 427887 (N.D. Cal. June 14, 1991)................21

*In re Equity Funding Corp. of Am. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977) ..................................................15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 CM PED, 2010 WL 4537550
(S.D.N.Y. Nov. 8, 2010) ...............................................................12

*In re Gen. Instrument Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) ..................................................13

*In re Heritage Bond Litig.*,
2005 WL 1594403 .......................................................................17

*In re Heritage Bond Litig.*,
233 F. App'x 627 (9th Cir. 2007) .........................................................7

*In re Heritage Bond Litig.*,
No. 02-ML-1475-DT (RCX), 2005 WL 1594389
(C.D. Cal. June 10, 2005) .............................................12, 13, 17, 18

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
No. 09CV1088 BTM KSC, 2014 WL 6473044
(S.D. Cal. Nov. 18, 2014) ...............................................................22

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ..................................................12, 15

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007).................................................9, 17, 18, 22

*In re JDS Uniphase Corp. Securities Litigation*,
  No. C-02-1486-CW, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007).................16

*In re K12 Inc. Sec. Litig.*,
  No. 4:16-cv-04069-PJH, 2019 WL 3766420
  (N.D. Cal. July 10, 2019)....................................................................................17

*In re Linkedin User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015)...................................................................23, 24

*In re Magsafe Apple Power Adapter Litig.*,
  No. 5:09-CV-01911-EJD, 2015 WL 428105
  (N.D. Cal. Jan. 30, 2015)....................................................................................22

*In re Media Vision Tech. Sec. Lit.*,
  913 F. Supp. 1362 (N.D. Cal. 1996)....................................................................22

*In re OmniVision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007)..................................................8, 9, 11, 13

*In re Omnivision Techs. Inc. Sec. Litig.*,
  No. 5:11-cv-05235-RMW, 2015 WL 3542413
  (N.D. Cal. June 5, 2015).........................................................6, 9, 11, 13, 17

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015).............................................................................25

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995)................................................................................17

*In re Public Service Co. of New Mexico*,
  No. 91-0536M, 1992 WL 278452 (S.D. Cal. July 28, 1992).............................13

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  845 F. App'x 563 (9th Cir. 2021)......................................................................15

*In re Yahoo Mail Litig.*,
  No. 13-CV-4980-LHK, 2016 WL 4474612
  (N.D. Cal. Aug. 25, 2016)..................................................................................24

vii

*Kmiec v. Powerwave Techs., Inc.*,
  No. SACV 12-00222-CJC, 2016 WL 5938709
  (C.D. Cal. July 11, 2016) ................................................................................19

*Knight v. Red Door Salons, Inc.*
  No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009)..........9, 13, 18, 22

*Luna v. Marvell Tech. Grp.*,
  No. C 15-05447 WHA, 2018 WL 1900150
  (N.D. Cal. Apr. 20, 2018) ................................................................................20

*McKnight v. Uber Techs.*,
  Inc., No. 14-CV-05615-JST, 2021 WL 4205055,
  (N.D. Cal. Sept. 2, 2021) ...................................................................................9

*Milligan v. Toyota Motor Sales, U.S.A., Inc.*,
  No. C 09-05418 RS, 2012 WL 10277179 (N.D. Cal. Jan. 6, 2012)...................22

*Miltland Raleigh-Durham v. Myers*,
  840 F. Supp. 235 (S.D.N.Y. 1993) ...................................................................22

*Morris v. Lifescan, Inc.*,
  54 F. App'x 663 (9th Cir. 2003) .......................................................................18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004).......................................................................19

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) .............................................................................9

*Rodman v. Safeway Inc.*,
  No. 11-CV-03003-JST, 2018 WL 4030558
  (N.D. Cal. Aug. 23, 2018).................................................................................15

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .............................................................................23

*Stanger v. China Elec. Motor, Inc.*,
  812 F.3d 734 (9th Cir. 2016) ...............................................................15, 16, 20

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .............................................................................23

PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES AND COMPENSATORY AWARD FOR LEAD PLAINTIFF
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – Case No. 3:20-cv-01828-H-JLB

*Tawfilis v. Allergan, Inc.*,
   No. 8:15-cv-00307-JLS-JCG, 2018 WL 4849716
   (C.D. Cal. Aug. 27, 2018)......................................................................18

*Tellabs, Inc., v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..................................................................................8

*Todd v. STARR Surgical Co.*,
   No. CV 14- 5263 MWF, 2017 WL 4877417
   (C.D. Cal. Oct. 24, 2017).......................................................................24

*Van Vranken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995).......................................................20

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010)...........................................................18

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977) ...................................................................6

*Vincent v. Reser*,
   No. C 11-03572 CRB, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013)................21

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................. 7, 9, 11, 13, 15, 16, 17, 19, 20

*Wing v. Asarco Inc.*,
   114 F.3d 986 (9th Cir. 1997) .................................................................15

**Statutes**

15 U.S.C.A. §77z-1(a)(6)................................................................................8

15 U.S.C.A. §78u-4(a)(6) ..............................................................................8

15 U.S.C. §78u-4(b)........................................................................................7

15 USCS § 78u-4...........................................................................................23

Private Securities Litigation Reform Act of 1995 .....................................12, 23, 24

**Rules**

Fed. R. Civ. P. 23(e).......................................................................................1

Fed. R. Civ. P. 23(h) ................................................................................. 7

Fed. R. Civ. P. 26(f) ............................................................................. 4, 12

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Pursuant to Fed. R. Civ. P. 23(e), Lead Plaintiff Kevin Kendall ("Kendall" or "Lead Plaintiff"), individually and on behalf of all other members of the Settlement Class, [1] respectfully moves this Court for an Order: (1) awarding attorneys' fees of thirty-three and one-third percent (33 1/3%) of the gross Settlement Fund of twelve million seven hundred fifty thousand dollars ($12,750,000.00) in cash, or four million two hundred fifty thousand dollars (***$4,250,000.00***); (2) granting reimbursement of fifty-six thousand one hundred forty-seven dollars and ninety-four cents (***$56,147.94***) in reasonable and necessary expenses that were incurred prosecuting this Action; and (3) approving compensatory awards of five thousand dollars (***$5,000.00***) for Lead Plaintiff.

## I.   INTRODUCTION

Through the diligent and effective ligation of this Action, attorneys at Pomerantz LLP and Holzer & Holzer, LLC ("Co-Lead Counsel") obtained a Settlement for a gross recovery of twelve million seven hundred and fifty thousand dollars ($12,750,000.00) in cash for investors who purchased shares of Odonate Therapeutics, Inc. ("Odonate") during the Settlement Class Period.  The Settlement constitutes an excellent recovery, particularly given the circumstances.  The Court entered the Order denying Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 36), noting that Lead Plaintiff adequately alleged that Defendants' statements regarding Odonate's only drug candidate, tesetaxel, misrepresented and failed to disclose material information regarding the drug's safety-risk profile, its FDA approval prospects, and its Phase 3 clinical trial enrollment and progress milestones.  However, the Court deferred certain issues

---

[1]     Unless otherwise defined, capitalized terms herein have the same meanings as assigned in the Stipulation and Agreement of Settlement (ECF No. 43-2) (the "Stipulation").

relating to falsity and loss causation until class certification or summary judgment, after the Parties developed a more fulsome factual record. Odonate, meanwhile, wound down its operations and its stock has been delisted from the NASDAQ. The Settlement eliminates the risks and costs associated with further litigation and makes good use of the limited resources available, including all of the company's available insurance coverage, by compensating injured investors.

Co-Lead Counsel prosecuted this Action on a wholly contingency fee basis and expended substantial time and expense without any guarantee of compensation or reimbursement. Despite the risk, Co-Lead Counsel spent *2,383.05 hours* in the aggregate, worth a total of *$1,797,847.50* in uncompensated lodestar, through the course of the litigation up to and including the Settlement and related efforts through final approval.[2] *See* Tuccillo Decl. ¶¶29-32; Holzer Decl. ¶¶5-8; and Tuccillo Decl., Exh. 2 (Pomerantz Lodestar); Holzer Decl., Exh. 2 (Holzer Lodestar). As compensation for their efforts, Co-Lead Counsel requests an award of attorneys' fees in the amount of thirty-three and one-third percent (33 and 1/3%) of the gross Settlement Fund (which equates to $4,250,000.00). The requested fee amount is within the typical range of attorneys' fees requested in the Ninth Circuit, is consistent with attorneys' fee awards in similar complex class actions in this Circuit and is justified by a lodestar cross-check. Indeed, a cross-check against lodestar results in a *2.36 multiplier* and confirms the fairness and reasonableness of the requested fee, particularly where Co-Lead Counsel has excluded from these calculations any time incurred preparing this Motion and the 33 1/3% fee figure was publicized through the notice program but generated *no objections*.

Co-Lead Counsel also seeks reimbursement of $56,147.94 for out-of-pocket expenses in prosecuting these claims. *See* Tuccillo Decl. ¶33 & Exh. 3; Holzer

---

[2]   As is customary, these calculations exclude any time spent preparing this Motion.

Decl. ¶9; and Tuccillo Decl., Exh. 3 (Pomerantz Expenses); Holzer Decl., Exh. 3 (Holzer Expenses).   These expenses were reasonable and necessary for the successful prosecution of this Action and are of the kind regularly reimbursed by courts within this Circuit.  *See* Tuccillo Decl. ¶¶34-35; Holzer Decl. ¶¶10-11.

Lead Plaintiff similarly requests a compensatory award of $5,000.00 for his personal time and effort dedicated to prosecuting the Action. Lead Plaintiff reviewed and approved the various filings, represented the proposed Class throughout the litigation, oversaw Co-Lead Counsel through periodic communications, and approved the Settlement.  *See* Tuccillo Decl. ¶36; Kendall Decl. ¶¶3-4, 6.  These types of efforts are regularly compensated by Courts in this Circuit through similar compensation awards.

Settlement Class Members have overwhelmingly supported the Settlement. To date, ***no Settlement Class Member has filed an objection*** to these requests.  *See* Bravata Decl. ¶14.  The deadline for filing any such objection has passed.  ECF No. 50 at 15 (setting deadline for filing objections at May 2, 2022).   This overwhelmingly favorable response by the Settlement Class Members, 4,833 of whom have already submitted claim forms, strongly supports the reasonableness of the requested attorneys' fee award, reimbursement of expenses, and compensatory awards to Lead Plaintiff.

Thus, Lead Plaintiff respectfully requests that the Court grant this Motion.

## II.   BACKGROUND

### A.   Factual Allegations, Procedural History, Settlement Negotiations

The relevant facts supporting this motion along with the procedural history and settlement negotiations are set forth in more detail in the accompanying motion seeking final approval of the Settlement (in §§I-II) and in the Tuccillo Declaration at ¶¶4-27.  They are incorporated herein by reference.

**B.    Co-Lead Counsel' Specific Efforts To Obtain The Settlement**

Co-Lead Counsel undertook this case knowing that any success was far from certain.   To survive the pleading stage, Lead Plaintiff needed to allege: (i) Defendants made false and misleading statements regarding the safety and efficacy of tesetaxel during its clinical trial, CONTESSA, as well as tesetaxel's prospects for receiving FDA approval; (ii) Defendants did so knowing their statements or omissions to be materially false or misleading, or recklessly disregarding their materially false or misleading nature; and (iii) investors suffered injury as a result. Co-Lead Counsel undertook significant effort to parse dense regulatory filings and complicated medical trial results to meet the pleading standard.

Specifically, Co-Lead Counsel performed the following tasks:

- Reviewed and analyzed Odonate's Class Period and pre-Class Period SEC filings, annual reports, press releases, and other public statements;
- Collected and reviewed a comprehensive compilation of analyst reports and major financial news service reports on Odonate;
- Reviewed and analyzed stock trading data relating to Odonate;
- Worked with a private investigator to locate and interview numerous former Odonate employees as confidential witnesses with knowledge of relevant events;
- Consulted with economic experts in the areas of loss causation, market efficiency, and damages;
- Drafted and filed the initial complaint, the FAC, and the operative SAC;
- Filed an opposition to Defendants' motion to dismiss the SAC and a partial opposition to Defendants' request for judicial notice;
- Drafted discovery requests and a proposed Fed. R. Civ. P. 26(f) case management report and proposed case schedule;

- Engaged in a full day virtual mediation with mediator Michelle Yoshida, Esq., and counsel for Defendants;

- Engaged in numerous follow up telephonic resolution-oriented discussions and negotiations with counsel for Defendants;

- Following extensive arm's length negotiations, obtained a favorable verbal agreement in principal to settle the Action;

- Negotiated and executed a Memorandum of Understanding to promptly memorialize the broad contours of the Settlement;

- Participated in continued negotiation efforts over the ensuing weeks to negotiate and finalize the Settlement Stipulation and its exhibits;

- Drafted the motion papers and related documents necessary to obtain preliminary approval of the Settlement and to provide notice of it to Settlement Class members;

- Obtained competing bids for claims administration work related to the Settlement before selecting the most competitive bidder to serve as Claims Administrator;

- Secured the services of the Escrow Agent, executed a contract for such service, and created the Settlement Escrow Account;

- Prepared for and participated in the hearing on preliminary approval of the Settlement, successfully obtaining its preliminary approval;

- Worked with the Claims Administrator to effectuate notice and see the Settlement through the administration process;

- Drafted the motion papers and related documents necessary to obtain final approval of the Settlement; and

- Have prepared for and will conduct the final approval hearing on the Settlement in June of 2022

*See* Tuccillo Decl. ¶¶4-22, 27.

5

Co-Lead Counsel's efforts to obtain the Settlement have been without compensation of any kind to date, and any potential payment of attorneys' fees is, and always has been, wholly contingent upon the result achieved. *See* Tuccillo Decl. ¶29; Holzer Decl. ¶5. As compensation for these efforts, given the substantial result achieved and the significant risks associated with continued litigation, Co-Lead Counsel respectfully requests this Court to award attorneys' fees of 33 and 1/3% of the Settlement Fund, plus reimbursement of $56,147.94 in out-of-pocket expenses incurred. These requests are supported by ample caselaw and approval is appropriate given the expedient and favorable resolution obtained for the Settlement Class.

## III.   ARGUMENT

### A.   Co-Lead Counsel Should Be Awarded Attorney's Fees

#### 1.   A Percentage Of The Common Fund Should Be Awarded

It has long been recognized in this Circuit that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Omnivision Techs. Inc. Sec. Litig.*, No. 5:11-cv-05235-RMW, 2015 WL 3542413, at *1 (N.D. Cal. June 5, 2015) (citing *Vincent v. Hughes Air West, Inc.,* 557 F.2d 759, 769 (9th Cir. 1977)); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[The Supreme Court] has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the funds as a whole."). "The court's authority to reimburse the parties stems from the fact that the class action [device] is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts." 7B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1803, at 493-94 (2d ed. 1986). The policy

rationale for awarding attorneys' fees from the common fund is that "those who benefit from the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002).

Under applicable standards, an attorney fee award must be reasonable. *See, e.g.*, 15 U.S.C. §78u-4(b); Fed. R. Civ. P. 23(h) ("[T]he court may award reasonable attorneys' fees and nontaxable costs"); *In re Heritage Bond Litig.*, 233 F. App'x 627, 631 (9th Cir. 2007). In *Blum v. Stenson*, the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed to the class." 465 U.S. 886, 900 n.16 (1984). While courts within the Ninth Circuit have discretion to choose whether to use either the percentage-of-the-fund or the lodestar plus a risk multiplier method to determine whether a request for attorneys' fees is reasonable, courts in this District prefer a percentage-of-the-fund approach in common fund cases. *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit for the class is easily quantified in common fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

The equitable rationale for compensating counsel in common fund cases on a percentage basis is sound. As the Ninth Circuit explained In *Paul, Johnson*:

> Since the Supreme Court's 1885 decision in *Central Railroad & Banking Co. of Ga. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit.
>
> ***
>
> The amount of such a reward is that which is deemed "reasonable" under the circumstances.

886 F.2d at 271 (citations omitted).  Use of the percentage method also decreases the burden on courts by eliminating a full-blown, detailed, time-consuming lodestar analysis, while assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement.  *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).  Thus, use of the percentage method is "dominant." *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).

Utilizing the percentage method is particularly proper in securities fraud cases.  The PSLRA's plain language states that class counsel is entitled to attorneys' fees that represent a "reasonable percentage" of the damages recovered.  *See* 15 U.S.C.A. §78u-4(a)(6); 15 U.S.C.A. §77z-1(a)(6).  "By using this language, 'Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.'" *In re Am. Apparel, Inc. S'holder Litig.*, No. 10-cv-06352-MMM-JCGx, 2014 WL 10212865, at *20 (C.D. Cal. July 28, 2014) (quotation omitted).

Courts have recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund also encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons and to discourage future similar violations.  The Supreme Court has emphasized that private securities actions, such as the instant action, provide an effective weapon in the enforcement of the securities laws.  *See generally, Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs, Inc., v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the [SEC].").

### 2.     Relevant Ninth Circuit Factors Support The Award

Co-Lead Counsel seeks a fee of 33 and 1/3% of the gross Settlement Fund for their efforts in creating a common fund for the benefit of the Settlement Class. This request is within the typical range of acceptable attorneys' fees.  While 25% of the total settlement is considered a benchmark, *see Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Bluetooth*, 654 F.3d at 943, for "most common fund cases, the award exceeds that [25%] benchmark." *Knight v. Red Door Salons, Inc.* No. 08-01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009); *see also Activision*, 723 F. Supp. at 1377–78 ("[N]early all common fund awards range around 30%.").  Factors in assessing whether the requested fee is appropriate include: (1) the results achieved; (2) the risks of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and financial burden carried by the plaintiffs; (5) awards made in similar cases; (6) the reaction of the class; and (7) the amount of a lodestar cross-check. *See Omnivision*, 559 F. Supp. 2d at 1046 (citing *Vizcaino*, 290 F.3d at 1048-50). Each factor supports the request here.

### a.     Co-Lead Counsel Achieved A Favorable Result

The result achieved is an important factor to be considered in making a fee award. *See Vizcaino*, 290 F.3d at 1048; *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1175 (S.D. Cal. 2007); *McKnight v. Uber Techs*., Inc., No. 14-CV-05615-JST, 2021 WL 4205055, at *6 (N.D. Cal. Sept. 2, 2021).  Here, the Settlement Fund consists of $12,750,000.00 in cash, without the possibility of any reversion to Defendants. *See*, ECF 43-2, Ex. 1 Stipulation ¶¶1.32, 2.0, 2.5.

While each case is unique and presents challenges, the result obtained compares very favorably to other settlements in recent years.  As reported by NERA Economic Consulting, the median annual settlement value in securities fraud class actions in 2021 was $8 million, putting this Settlement at a more than 59% above average in size. *See*, Janeen McIntosh and Svetlana Starykh, *Recent*

9

*Trends in Securities Class Action Litigation: 2021 Full Year Review* (NERA Economic Consulting January 25, 2022) at 20.   Moreover, Co-Lead Counsel obtained a higher percentage of maximum estimated damages (approximately 3.49%) than is typically found in securities cases.  *See, id.* at 24 (finding that the median ratio of settlement to investor losses in 2021 was 1.8%).   Similarly, Cornerstone Research found that the median settlement value in securities class action settlements in 2021 was 8.3 million, well below the value obtained by Co-Lead Counsel here.  S*ee* Laarni T. Bulan and Laura E. Simmons, Cornerstone Research, *Securities Class Action Settlements. 2021 Review and Analysis*, at 1 (2022).  The Settlement, viewed in this context, demonstrates the proficiency and value that Co-Lead Counsel brought to this Action, and as such, justifies the requested fee.

Moreover, the $12.75 million cash Settlement Amount amounts to an estimated average recovery of approximately $0.85 per damaged share before the deduction of Court-approved fees and expenses and costs of notice and claims administration, pursuant to the proposed Plan of Allocation, and $0.29 per share if the Court approves the full requested Fee and Expense Award.  This amount is of particular benefit to the Settlement Class Members given the practical concerns impacting Defendants' ability to pay after any extended litigation.

On March 19, 2021, Odonate announced that it was winding down operations, terminating certain employees, and discontinuing the development of texetaxel.  Tuccillo Decl. ¶7.  On January 7, 2022, Odonate filed with the SEC a Form 8-K announcing that it had received notice from the NASDAQ notifying it that Odonate shares would be delisted because the exchange "believes that the Company is a 'public shell' pursuant to Listing Rule 5101[,]" a decision Odonate elected not to appeal.  *Id.* ¶22.  Moreover, Defendants had only $5 million in applicable Directors & Officers insurance coverage.  *Id.*  Due to these financial

10

concerns, Co-Lead Counsel believes that further litigation was unlikely to yield a significantly larger recovery, and in fact, may have decreased the funds available to compensate the Class.

The favorable result, which has been overwhelmingly supported by the Class Members, given the considerable risks faced by Lead Plaintiff and Co-Lead Counsel in pursuing a securities case on a wholly contingent basis, as well as the unique challenges faced while pursuing this Action, support the requested attorneys' fee of 33 and 1/3% of the gross Settlement amount.

**b.   The Risks Of Continued Litigation Were Many**

Co-Lead Counsel undertook this litigation with substantial risk that they might not obtain any recovery for Lead Plaintiff and the Settlement Class, which is a significant factor courts consider when awarding fees.  *See Omnivision*, 559 F. Supp. 2d at 1047.  As endorsed by the Ninth Circuit, the risk of litigation is a central factor in determining the attorneys' fee award.  *See Vizcaino*, 290 F.3d at 1048 (noting that the case was "fraught with risk and recovery was far from certain" as "a relevant circumstance" that courts must take into account); *see also, In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *21 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").

Courts nationwide have long recognized that the risk of no recovery is substantially increased in securities class actions, which are notoriously complex and difficult to both plead and prove.  *See, e.g., Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("'[I]n general, securities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'"); *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("[F]ederal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges

to successful pleading."); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCX), 2005 WL 1594389, at *6 (C.D. Cal. June 10, 2005) (noting class actions, and particularly securities class actions, typically involve substantial complexity); *Fogarazzo v. Lehman Bros.*, No. 03 CIV. 5194 SAS, 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) ("[S]ecurities actions are highly complex."); *In re Flag Telecom Holdings*, *Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) (securities class litigation is "notably difficult and notoriously uncertain") (citation omitted).

This litigation was particularly fraught with a risk of no recovery. As described in the accompanying motion seeking final approval of the Settlement (§§I-II) and the Tuccillo Declaration (¶¶4-22, 27), Co-Lead Counsel successfully navigated the challenging terrain of the PSLRA by engaging in a thorough investigation of potential claims on behalf of Odonate's investors, overseeing a private investigator in interviewing potential confidential witnesses, analyzing Odonate's stock chart and public statements including its announcement that it was discontinuing operations, drafting three increasingly detailed complaints to expand the Class Period and account for rapidly-evolving factual developments, and engaging in hard-fought litigation over Defendants' motion to dismiss, which was denied. In the leadup to mediation, Co-Lead Counsel has also engaged in initial discovery efforts including drafting initial document requests and interrogatories and working up a case schedule for a draft Fed. R. Civ. P. 26(f) report. Co-Lead Counsel pursued these efforts diligently and effectively without any assurance the effort would be compensated.

The Court's rulings signaled considerable ongoing risks of continued litigation absent a settlement. For instance, its Order denying Defendants' motion

to dismiss stated, "Given the fact-intensive nature of these inquiries, Defendants' arguments regarding the falsity of the alleged statements are better suited to a motion for summary judgment or opposition to class certification when the record is more fully developed." ECF No. 36 at 13. It also deferred consideration of Defendants' arguments as to the Class Period length until "a motion for summary judgment or class certification when the record is more fully developed." *Id.* at 16.

Co-Lead Counsel anticipated that, as a result, Lead Plaintiff's class certification motion would have been hotly contested and followed by a motion for summary judgment, all after years of litigation, including potentially extensive and contentious discovery, and the expenditure of considerable time and resources for both parties. These efforts would have had a negative impact on the funds available to be used for a settlement, if one could even still be obtained. *See Vizcaino*, 290 F.3d at 1050 n.5 ("class counsel should [not] necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief.").

### c.   The Skill Required And The Quality Of Work

The "prosecution and management of a complex [] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047; *Knight*, 2009 WL 248367, at *6 (same). "The difficulty of securities litigation generally – particularly the challenges presented by the PSLRA's pleading requirements – requires skilled counsel familiar with the relevant statutes and case law." *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *22.  "The experience of counsel is also a factor in determining the appropriate fee award." *In re Heritage Bond Litig.*, 2005 WL 1594389, at *12 (citing *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 432-33  (E.D. Pa. 2001)) ("the court justified its fee award of one-third of a common fund based in part on the experience of counsel in litigating securities class actions."); *In re*

*Public Service Co. of New Mexico*, No. 91-0536M, 1992 WL 278452, at \*8 (S.D. Cal. July 28, 1992) (experience weighed in favor of 33 1/3% fee award).

Here, Co-Lead Counsel are experienced and skilled practitioners in the securities litigation field. *See* Tuccillo Decl. ¶26; Holzer Decl. ¶4; and Tuccillo Decl., Exh. 1 (Pomerantz Firm Resume); Holzer Decl., Exh. 1 (Holzer Firm Resume). The quality of Co-Lead Counsel's work on this case is reflected in the recovery obtained under challenging and uncertain circumstances. *See, e.g., Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), *aff'd sub nom.,* 899 F.2d 21 (11th Cir. 1990) (granting attorney's fee request and noting the level of counsel's skill was illustrated by the quality of the settlement obtained in a securities class action case, which presents "inherent difficulty" in proving damages). Co-Lead Counsel left no stone unturned to obtain factual support for the claims. Co-Lead Counsel, after mounting a vigorous opposition to Defendants' motion to dismiss, also prepared for the discovery process while simultaneously engaging in complicated discussions and deftly negotiating the Settlement outlined above, maximizing the recovery for the Class, including all available insurance.

Given the complexity of the issues presented in this Action, including material misrepresentations, scienter, loss causation, and damages, only skilled counsel working diligently could have obtained such a favorable recovery. Co-Lead Counsel continuously and aggressively pursued the claims before entry into an agreement in principle to settle. Courts have recognized that it is important to reward skilled counsel for pursuing difficult cases because "the stated goal in percentage fee-award cases [is] of 'ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation.'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by Co-Lead Counsel. *See, e.g., Destefano v. Zynga,*

*Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013); *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *22; *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997) (affirming fee award and noting that the court's evaluation of class counsel's work considered "the quality of opposition counsel and [defendant's] record of success in this type of litigation"); *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *Ikon*, 194 F.R.D. at 194. Here, counsel for the Defendants are prominent and highly-skilled attorneys from Cooley LLP with substantial experience in defending securities class actions, who vigorously defended this Action and provided top-tier legal services to their clients.

### d.   A Contingency Fee And Significant Financial Burden

A determination of a fair fee must include consideration of its contingent nature. It is "an established practice in the private legal market" to reward attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. *Vizcaino*, 290 F.3d at 1051.. In fact, contingent fees that exceed the market value of the services (if they had been rendered on a non-contingent basis) are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis. *Id.*; *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) ("Risk multipliers incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis."); *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *6 (N.D. Cal. Aug. 23, 2018) (percentage awards of up to four times the lodestar are common); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 845 F. App'x 563, 565 (9th Cir. 2021) (approving 3.8 lodestar multiplier in derivative action).

Courts have consistently recognized that the risk of receiving little or no recovery is a factor in considering an award of attorneys' fees. *Vizcaino*, 290 F.3d at 1050.

The contingent nature of the fee supports a 33 and 1/3% award. Co-Lead Counsel made substantial outlays of both time and money in this case, resources that could have been devoted to other matters, while facing the very real risk of recovering nothing.[3] Co-Lead Counsel has received no compensation since this Action was filed (roughly 19 months ago) and has incurred significant litigation expenses for the benefit of the Settlement Class. *See Stanger*, 812 F.3d at 740 (noting the delay in payment factors into the appropriate award of fees).

Despite the many challenges involved in pursuing the case, and the potential of not receiving any compensation or reimbursement of expenses for their efforts, Co-Lead Counsel expended 2,383.05 hours in professional services in successfully securing a sizable Settlement for the Class. *See* Tuccillo Decl. ¶¶29-30; Holzer Decl. ¶¶5-6; and Tuccillo Decl., Exh. 2 (Pomerantz Lodestar); Holzer Decl., Exh. 2 (Holzer Lodestar). An attorney fee award of 33 and 1/3% is particularly justified here given the expedient recovery of $12,750,000.00 that was obtained despite the risks of litigation, Odonate's dwindling resources and limited available insurance,

---

[3]     Many securities cases have been lost at trial, on post-trial motions, or on appeal. For example, in *In re Oracle Corp. Sec. Litig.*, the court granted summary judgment to defendants after eight years of litigation, after plaintiff's counsel incurred over $7 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million. *See* No. C01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010). Similarly, in *In re JDS Uniphase Corp. Securities Litigation*, the jury issued a verdict in favor of defendants after years of litigation. No. C-02-1486-CW, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007). In *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 729-30 (11th Cir. 2012), the jury issued a verdict on liability in favor of plaintiffs, but the Eleventh Circuit affirmed judgment as a matter of law against the plaintiffs for lack of proof of loss causation.

its wind-down of operations, and Defendants' willingness to vigorously defend via opposition to class certification, summary judgment, trial, and/or appeals.

Likewise, although reimbursement was not assured, Co-Lead Counsel advanced $56,147.94 in expenses to date for the benefit of the Settlement Class. *See* Tuccillo Decl. ¶33; Holzer Decl. ¶9; and Tuccillo Decl. Exh., 3 (Pomerantz Expenses); Holzer Decl. Exh., 3 (Holzer Expenses).  Any fee award or expense reimbursement to Co-Lead Counsel has always been at risk and completely contingent both on the result achieved and on this Court's decision to grant any award.  Thus, this factor militates in favor of the Court granting Co-Lead Counsel's requested award of attorneys' fees and reimbursement of out-of-pocket expenses. *See, In re Heritage Bond Litig.*, 2005 WL 1594403, at *21 (recognizing the risk of non-payment or reimbursement of expenses as a factor weighing strongly in favor of counsel's requested fee award); *see also Vizcaino*, 290 F.3d at 1050; *Omnivision*, 559, F. Supp. 2d at 1046-47; *Immune Response*, 497 F. Supp. 2d at 1175-76.

### e.   A One-Third Fee Aligns With Comparable Contingent Litigation

The Settlement Fund consists of $12,750,000.00 in cash.  The instant request for a 33 and 1/3% attorneys' fee is firmly in line with the fee percentage awarded by judges in this Circuit in comparably sized complex class action settlements. *See, e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (fee award equal to 33% of $12 million securities class action settlement fund); *In re Banc of California Sec. Litig.*, No. SACV1700138DMGDFMX, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding one-third fee in a $19.75 million securities class action settlement);  *In re Heritage Bond Litig.*, 2005 WL 1594389, at *9 (awarding one-third of a $27.78 million settlement fund in securities class action); *In re K12 Inc. Sec. Litig.*, No. 4:16-cv-04069-PJH, 2019 WL 3766420, at *1 (N.D. Cal. July 10, 2019) (approving 33% fee award on settlement of $3.5 million in

securities class action); *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW-FFMx, 2019 WL 6001562, at *1 (C.D. Cal. Nov. 8, 2019) (approving 33.3% fee award on settlement of $2.05 million in securities class action).

It is also consistent with awards in comparably complex, non-securities class action lawsuits resolved in this Circuit. *See, e.g., Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorneys' fee award of 33% of a $14.8 million cash settlement in consumer class action); *Tawfilis v. Allergan, Inc.*, No. 8:15-cv-00307-JLS-JCG, 2018 WL 4849716, at *7 (C.D. Cal. Aug. 27, 2018) (awarding one-third of $13.45 million settlement fund in antitrust class action); *Cifuentes v. Ceva Logistics U.S., Inc.*, No. 16-cv-01957-H-DHB, 2017 WL 4792425, at *6 (S.D. Cal. Oct. 23, 2017) (approving 33% fee in labor class action); *Figueroa v. Allied Bldg. Prods. Corp.*, No. SACV 16-02249 AG (KESx), 2018 WL 4860034, at *3 (C.D. Cal. Sept. 24, 2018) (awarding 33% fee in complex wage and hour class action); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (granting 33.3% fee in labor class action case); *Knight*, 2009 WL 248367, at *8 (granting 30% fee). Given that all the relevant factors support the requested fee percentage, this common fund case should be treated similarly to past complex class action cases, and the fee request should be approved.

### f.    The Positive Settlement Class Reaction

"The presence or absence of objections from the class is also a factor in determining the proper fee award." *In re Heritage Bond Litig.*, 2005 WL 1594389, at *15-16 (holding that "the lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund[,]" particularly where the number of objections to the fee was "remarkably small given the wide dissemination of notice"); *Immune Response*, 497 F. Supp. 2d at 1177; *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000) (filing of only one objection despite mailed notices to over 5,250 potential class members "weighs in

favor of approving the fee petition"). While a certain number of objections are to be expected in a large class action such as this, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *see also Kmiec v. Powerwave Techs., Inc.*, No. SACV 12-00222-CJC, 2016 WL 5938709, at *4 (C.D. Cal. July 11, 2016) (a "small number of objections and requests for exclusion supports final approval").

Here, Co-Lead Counsel has received *zero objections* to date to the requested attorneys' fee and reimbursement of expenses.  Bravata Decl. ¶14.  This strong positive reaction from the Settlement Class follows ample notice and opportunity to object.  Under the approved Notice program, *over 25,000* short-form Notices were mailed to Settlement Class Members, which directed them to the Claims Administrator's website providing access to all Settlement papers, including the Stipulation and long-form Notice advising that Co-Lead Counsel would request a fee of up to 33 and 1/3%.  Bravata Decl. ¶¶8, 12.  The Claims Administrator employed other methods to give notice to Settlement Class Members, including the publication notice, increasing the likelihood that they were well informed of their options.  Bravata Decl. ¶¶4-10.  The lack of objections is especially noteworthy considering that over 4,800 Settlement Class members have filed claims.  *Id.* ¶15.  Moreover, the requested fee percentage and expense reimbursement request is supported by Lead Plaintiff.  Kendall Decl. ¶¶7-8.

### g.    A Lodestar Cross-Check Verifies Reasonableness

As a "cross-check" on the reasonableness of a requested fee award, courts often compare counsel's "lodestar" (a compilation of the hours performed at the various rates charged for the professionals providing the services) with the fee request made under the percentage-of-the-fund method.  *See, e.g., Vizcaino*, 290

19

F.3d at 1050; *Fischel*, 307 F.3d at 1007; *see also, Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *4 (N.D. Cal. Apr. 20, 2018). "[T]he lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted . . . [and] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050.

Significantly, in securities class actions, it is common for lodestar figures to be adjusted upward by a sizeable multiplier to reflect a variety of factors, including the complexity of the case and the risks assumed by counsel. For example, the court in *Vizcaino* approved a fee representing a multiple of 3.65 times counsel's lodestar. *Id.* at 1051-52 (listing twenty-three shareholder settlements and the multipliers for each, reflecting an average multiplier of 3.28); *id.* at 1051 (noting "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases"). Indeed, the Ninth Circuit has recognized that the "[risk multiplier] incentive is especially important in securities cases." *Stanger*, 812 F.3d at 741 (emphasis added).

Here, the requested 33 and 1/3% fee amounts to a reasonable multiplier of 2.36 on Co-Lead Counsel's lodestar incurred in litigating the case against the Defendants and in securing and advancing the Settlement.[4] *See* Tuccillo Decl. ¶30; Holzer Decl. ¶6; and Tuccillo Decl. Exh. 2 (Pomerantz Lodestar); Holzer Decl. Exh. 2 (Holzer Lodestar). Such a multiple is unquestionably reasonable when compared to frequently awarded multipliers in cases from this Circuit. *Vizcaino*, 290 F.3d at 1051, n.6; *see Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298

---

[4]    This multiplier is the result of dividing the proposed fee award (calculated as $12,750,000.00 multiplied by 33 and 1/3%) by the product of the total lodestar incurred by Co-Lead Counsel (with such lodestar calculated as the number of hours of each timekeeper devoted to the case against Defendants multiplied by each timekeeper's current reasonable hourly rate), excluding the time spent by Co-Lead Counsel in preparing this motion.

(N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *Destefano*, 2016 WL 537946, at *21 (noting courts have commonly applied multipliers ranging from 1 to 4) (collecting cases); *see also Cifuentes*, 2017 WL 4792425, at *7 (J. Huff finding "A multiplier of three is well within the accepted range for common fund cases where class counsel has taken the case on a contingency fee arrangement."). Notably, Co-Lead Counsel's lodestar does not include the additional time and effort that they will continue to devote to the case on behalf of the Settlement Class by, for example, directing the claims administration process and final distribution, nor does it include the time spent preparing this motion seeking payment of attorneys' fees and reimbursement of expenses. *See* Tuccillo Decl. ¶30; Holzer Decl. ¶6; and Tuccillo Decl. Exh. 2 (Pomerantz Lodestar); Holzer Decl. Exh. 2 (Holzer Lodestar).

### B.   Co-Lead Counsel's Expenses Should Be Reimbursed

Co-Lead Counsel incurred out-of-pocket expenses of $56,147.94 in prosecuting this Action. *See* Tuccillo Decl. ¶33; Holzer Decl. ¶9; and Tuccillo Decl. Exh. 3 (Pomerantz Expenses); Holzer Decl. Exh. 3 (Holzer Expenses). These expenses consist primarily of necessary investigation expenses, expert fees, mediation costs, research costs, copying costs, expenses associated with court filings, and other necessary litigation costs. *See id*.

Traditionally, Ninth Circuit "courts have awarded expenses from the litigation, in addition to a percentage of the fund." *In re Businessland Sec. Litig.*, No. C-90-20476-RFP, 1991 WL 427887, at *2 (N.D. Cal. June 14, 1991); *see, e.g., Vincent v. Reser*, No. C 11-03572 CRB, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013) (granting award of costs and expenses including "three experts and the mediator, photocopying and mailing expenses, travel expenses, and other reasonable litigation related expenses"). It is well established that counsel who

create a common fund are entitled to reimbursement of expenses they advanced for the benefit of the class. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (plaintiff "may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client'") (citation omitted); *see also Immune Response,* 497 F. Supp. 2d at 1177; *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cnty., Okl.*, 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses are reimbursable if they would normally be billed to a client); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation of those clients.") (citation omitted).

Ninth Circuit courts routinely grant requests for reimbursement of expenses such as the one here. *Knight*, 2009 WL 248367, at *7 (granting award because "[a]ttorneys routinely bill clients for all of these expenses"). Co-Lead Counsel's expenses, which included "filing fees, postage, computer research, and expert's fees fall squarely within "the types of expenses routinely charged to paying clients." *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09CV1088 BTM KSC, 2014 WL 6473044, at *10 (S.D. Cal. Nov. 18, 2014) (citing *In re Media Vision Tech. Sec. Lit.*, 913 F. Supp. 1362, 1367-72 (N.D. Cal. 1996)); *Milligan v. Toyota Motor Sales, U.S.A., Inc.*, No. C 09-05418 RS, 2012 WL 10277179, at *9 (N.D. Cal. Jan. 6, 2012) (courts grant requests where class counsel incurred out-of-pocket costs including filing fees; copying, mailing, faxing and serving documents; computer research; travel to hearings and mediation sessions; and expert fees); *see also In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at *15 (N.D. Cal. Jan. 30, 2015) (approving request for reimbursement of $100,000 in expenses that included "cost of experts and consultants, computerized research such as the use of Lexis and Westlaw, travel expenses such

as airfare, meals, lodging and transportation, and costs such as photocopies, postage, filing fees, and telephone charges."); *accord Alvarado v. Nederend*, No. 1:08-cv-01099 OWW DLB, 2011 WL 1883188 at *10 (E.D. Cal. May 17, 2011).

Because the expenses were incurred with no guarantee of recovery, Co-Lead Counsel had a strong incentive to keep them as low as reasonably possible – and did. Indeed, total expenses of $56,147.94 are roughly 56% of the $100,000.00 estimate contained in the Notice, which generated **no objections** from the Settlement Class. *See* Bravata Decl. ¶14. The expenses for which Co-Lead Counsel seeks reimbursement were necessary to the successful prosecution of this case and are the type of expenses that would have been billed to a paying client. *See* Tuccillo Decl. ¶33; Holzer Decl. ¶9; and Tuccillo Decl., Exh. 3 (Pomerantz Expenses); Holzer Decl., Exh. 3 (Holzer Expenses). Accordingly, reimbursement of the requested expenses appropriate.

### C.   The Requested Award to Lead Plaintiff Should Be Approved

Lead Plaintiff also requests that the Court award him $5,000.00 in connection with his representation of the Settlement Class. The PSLRA allows for reimbursements to representative plaintiffs in securities class actions for "reasonable costs and expenses (including lost wages) directly relating to the representation of the class." 15 USCS § 78u-4. "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 976-77 (9th Cir. 2003) (approving awards of $5,000 each to two class representatives of 5,400 potential class members in a smaller settlement of $ 1.725 million); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Lead Plaintiff dedicated his personal time and effort to prosecuting the Action. He was sent copies of complaints and motion papers for review and comment, and he regularly communicated with Co-

Lead Counsel and was apprised of developments in the case so that he could fulfill his role in overseeing the litigation. Lead Plaintiff communicated with Co-Lead Counsel in advance of and during the settlement negotiations and his efforts have played an instrumental part in securing the Settlement, and, as such, his request for a modest compensatory award is reasonable. *See* Tuccillo Decl. ¶36.

Lead Plaintiff has submitted a declaration setting forth his participation in the Action, including time and effort devoted to, among other things: (1) reviewing complaints and motion papers; (2) providing trading records and PSLRA certifications; (3) overseeing the litigation; (4) communicating with counsel about the Action; and (5) considering and approving the Settlement. *See* Kendall Decl. ¶¶4, 6. Absent the participation of Lead Plaintiff, the Settlement would not have been achieved. *See* Tuccillo Decl. ¶36.

The requested compensatory award of $5,000.00 is fair and reasonable. Courts in this district routinely approve awards of $5,000.00 (or more) to those who represent a class. *See, e.g., In re Linkedin User Privacy Litig.*, 309 F.R.D. at 592 (noting that "in this district, a $5,000.00 incentive award is presumptively reasonable"); *Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) (class representative service payments of $20,000 to lead plaintiff and $5,000.00 each to 4 class representatives); *In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) (awarding class representatives $5,000); *Dusek v. Mattel, Inc.*, No. CV 99-10864-MRP (CWx), 2003 WL 27380801, at *1 (C.D. Cal. Sept. 29, 2003) (awarding $117,426 to three lead plaintiffs); *Todd v. STARR Surgical Co.*, No. CV 14- 5263 MWF (GJSx), 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) (awarding $10,000 award). The Ninth Circuit has stated that when deciding if an incentive award is reasonable and fair, it considers the number of class representatives, the average incentive award amount, and the

proportion of the total settlement that is spent on incentive awards.  The requested $5,000.00 compensatory award, which is less than .00004% of the total settlement fund of $12,750,000, is substantially lower than the level frequently approved in this Circuit.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (rejecting arguments that incentive awards were unreasonably large where nine class representatives each received awards of $5,000 (or $45,000 in total), which made up only 0.17% of the total settlement fund of $27,250,000).

## IV.   CONCLUSION

Lead Plaintiff and Co-Lead Counsel respectfully requests that this Court award attorneys' fees in the amount of 33 and 1/3% of the gross Settlement Fund, or $4,250,000.00, approve reimbursement of $56,147.94 in expenses, and award Lead Plaintiff $5,000.00 for his efforts.

Dated: May 16, 2022

Respectfully submitted,

/s/ Matthew L. Tuccillo
Matthew L. Tuccillo

**POMERANTZ LLP**
Matthew L. Tuccillo
(admitted *pro hac vice*)
Jennifer Banner Sobers
(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: mltuccillo@pomlaw.com
        jbsobers@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

**HOLZER & HOLZER, LLC**
Corey D. Holzer (admitted *pro hac vice*)
211 Perimeter Center Parkway
Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
cholzer@holzerlaw.com

*Co-Lead Class Counsel*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on May 16, 2022.

*/s/ Matthew L. Tuccillo*
Matthew L. Tuccillo

PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMMBURSEMENT OF EXPENSES AND COMPENSATORY AWARD FOR LEAD PLAINTIFF
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – Case No. 3:20-cv-01828-H-JLB