UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN KENDALL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ODONATE THERAPEUTICS, INC., KEVIN C. TANG, MICHAEL HEARNE, JOHN G. LEMKEY,<br><br>Defendants. | Case No.: 3:20-cv-01828-H-LL<br><br>**ORDER:**<br><br>**(1) CERTIFYING SETTLEMENT CLASS;**<br><br>**(2) GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; and**<br><br>**(3) GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD**<br><br>[Doc. Nos. 51, 52.] |

On April 13, 2021, Plaintiff Kevin Kendall ("Plaintiff") filed a second amended class action complaint against Defendants Odonate Therapeutics, Inc. ("Odonate") and

three of its officers, Kevin C. Tang, Michael Hearne, and John G. Lemkey (collectively "Defendants") alleging violations of Section 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5. (Doc. No. 24, SAC ¶¶ 225–41.) On October 26, 2021, the parties reached an agreement in principle to settle, and on December 3, 2021, Plaintiff filed an unopposed motion for preliminary approval of class settlement. (Doc. Nos. 39, 40, 43.) On January 18, 2022, the Court issued an order preliminary approving the proposed settlement, provisionally certifying the settlement class, and approving the form and manner of notice. (Doc. No. 50.)

On May 16, 2022, Plaintiff filed (1) an unopposed motion for final approval of the class action settlement, certification of the settlement class, and approval of the plan of allocation and (2) an unopposed motion for attorneys' fees, reimbursement of expenses, and an incentive award. (Doc. Nos. 51–56.) On May 23, 2022, Defendant filed a notice of non-opposition to Plaintiff's motion for final approval of the settlement, class certification, and the plan of allocation. (Doc. No. 57.) On May 23, 2022, Plaintiff filed replies in support of both motions. (Doc. Nos. 58, 59.) On June 6, 2022, the Court held a final approval hearing on the matter pursuant to Federal Rule of Civil Procedure 23(e)(2). Corey D. Holzer, Jennifer Banner Sobers, and Matthew L. Tuccillo appeared on behalf of Plaintiff. Ryan E. Blair appeared on behalf of Defendants. For the reasons that follow, the Court grants Plaintiff's motion for final approval of the settlement, class certification, and plan of allocation as well as Plaintiff's motion for attorneys' fees, reimbursement of expenses, and an incentive award.

## Background

### I. Factual and Procedural Background

Odonate is a pharmaceutical company based in San Diego. (SAC ¶ 2.) Odonate's single, primary drug candidate was tesetaxel, an orally administered chemotherapy agent developed to treat patients with locally advanced or metastatic breast cancer. (Id. ¶¶ 33–35.) Defendants Tang, Hearne, and Lemkey were officers and collectively the majority shareholder of Odonate during the relevant period. (Id. ¶¶ 1, 3, 19–21.) In December

2017, Odonate initiated a Phase 3 study of tesetaxel. (Id. 36, 57–59.) Plaintiff alleges that between December 8, 2017 and February 23, 2021, Odonate filed for an Initial Public Offering ("IPO") with the Securities and Exchange Commission ("SEC") and held multiple subsequent public offering of its shares in order to raise funds for Odonate's continued operation and tesetaxel's Phase 3 study. (Id. ¶¶ 37–38, 188.) Plaintiff alleges that through its IPO and subsequent offerings, Odonate raised $394,600,000 in gross proceeds and $369,780,000 in net proceeds. (Id. ¶ 39.)

Plaintiff alleges that significant safety concerns regarding tesetaxal arose during the Phase 3 study, which Plaintiff alleges Defendants were aware of but did not disclose to investors or the public. (Id. ¶¶ 5–7, 40.) Plaintiff also alleges that Defendants made false and misleading statements containing misrepresentations and omissions regarding the tesetaxel Phase 3 study, patient outcomes and experiences while using tesetaxel, and the likelihood of tesetaxels' approval by the U.S. Food and Drug Administration ("FDA"). (Id. ¶¶ 56–181.) On March 22, 2021, Odonate issued a press release announcing it was discontinuing tesetaxel's development following feedback from the FDA that the clinical data package for tesetaxel was unlikely to support FDA approval. (Id. ¶ 168.) On March 25, 2021, Odonate filed a Form 8-K with the SEC providing more details about Odonate's discontinuation of tesetaxels' development and the wind-down of Odonate's operations. (Id. ¶ 170.) Plaintiff alleges Odonate's stock price fell dramatically following the press release and Form 8-K filing. (Id. ¶¶ 169, 171.)

On April 13, 2021, Plaintiff filed a second amended class action complaint against Defendants on behalf of all persons and entities who purchased or otherwise acquired the stock of Odonate between December 7, 2017 and March 25, 2021 (the "Class Period"). (Doc. No. 24, SAC ¶ 217.) On May 13, 2021, Defendants filed a motion to dismiss Plaintiff's second amended complaint. (Doc. No. 25.) On August 4, 2021, the Court denied Defendants' motion to dismiss. (Doc. No. 36.) On September 3, 2021, Defendants filed their answer to Plaintiff's second amended complaint. (Doc. No. 37.)

On September 20, 2021, the parties held a virtual mediation, but were unable to

reach a settlement that day. (Doc. No. 43 at 4.) Over the next three weeks, the parties continued negotiations and ultimately came to an agreement in principle to settle. (Id.) On October 19, 2021, the parties executed a memorandum of understanding regarding the settlement in principle. (Id.) On October 26, 2021, the parties filed a joint motion to enter a stipulation to stay the proceedings pending settlement. (Doc. No. 39.) On November 3, 2021, the Court granted the parties' joint motion to stay the proceedings. (Doc. No. 41.) The Court also ordered Plaintiff to file a motion for preliminary approval of the class action settlement on or before January 31, 2022. (Id.)

On December 3, 2021, Plaintiff filed an unopposed motion seeking (1) preliminary approval of the proposed class action settlement; (2) preliminary certification of the settlement class, appointment of Lead Plaintiff as representative of the settlement class, and appointment of Co-Lead Counsel as counsel for the settlement class; (3) approval of the form and manner of giving notice to the class; and (4) a final approval hearing and a schedule for various deadlines. (Doc. No. 43.) On January 3, 2022, Defendants filed a notice of non-opposition to Plaintiff's motion. (Doc. Nos. 46, 47.) On January 10, 2022, the Court held a hearing on Plaintiff's motion. (Doc. No. 48.) On January 11, 2022, the Court granted Plaintiff's motion preliminarily certifying the class for settlement purposes, preliminarily approving class settlement, appointing class representatives and co-counsel, approving class notice, and issuing a scheduling order. (Doc. Nos. 49, 50.)

On May 16, 2022, Defendants filed the present motions seeking final approval of the class settlement and requesting an award of attorneys' fees, reimbursement of expenses, and an incentive award for the Lead Plaintiff. (Doc. Nos. 51, 52.) On June 6, 2022, the Court held the final approval hearing on this matter.

## II.   Class Settlement Details

The proposed settlement defines the Settlement Class as "[a]ll Persons who purchased, or otherwise acquired, Odonate securities during the Settlement Class Period" of December 7, 2017 through March 21, 2021, inclusive. (Doc. No. 43-2, Tuccillo Decl. Ex. 1, Stipulation of Settlement ("Stipulation") ¶ 1.33.) Excluded from the Settlement

Class are:

> Defendants; members of Defendants' immediate families and their affiliates; any entity in which any Defendant had a controlling interest during the Class Period; any person who served as an officer or director of Odonate during the Class Period; the judges presiding over the action and the immediate family members of such judges; any persons or entities listed on the Settlement Exclusion List; and the successors, heirs, and assigns of any excluded persons.

Id.

Under the proposed settlement, Defendants will pay the settlement amount of $12,750,000. (Doc. No. 43-2, Tuccillo Decl. Ex. 1 ¶¶ 1.32, 2.0 ("Stipulation").) The settlement will be distributed to class members pro rata in accordance with a plan of allocation that has been designed by Co-Lead Counsel. (Id. ¶ 6.7; Ex. B1 at 6.) Under the plan of allocation, a Recognized Loss amount for each share purchased within the Class Period will be calculated based on when the stock was purchased or acquired and, if applicable, sold. (Id. Ex. B1 at 14–15.) The Recognized Loss is intended to estimate the alleged artificial inflation of the price of Odonate stock at different times during the Class Period due to alleged misrepresentations by Defendants. (Id. at 12.) The Recognized Loss is the basis for how the settlement fund will be proportionately allocated to Settlement Class Members. (Id. at 12.) No distribution will be made to Settlement Class Members who would receive a distribution of less than ten dollars. (Id. at 16.) Any remaining funds in the settlement fund after at least six months after the initial distribution will be used first, to pay any amounts mistakenly omitted from the initial disbursement; second, to pay any additional settlement administration fees, costs, and expenses; and third, to make a second distribution to Settlement Class Members who cashed their checks from the initial distribution. (Id. at 17.) None of the funds will revert back to Defendants. (Id. ¶¶ 2.5, 6.8.)

Payments to Settlement Class Members will be made from the settlement fund after taxes and tax expenses, administration costs, a fee and expense award to Co-Lead Counsel, and an incentive award to Lead Plaintiff are made. (Id. § H; Ex. B1 at 2, 9.) Co-Lead Counsel are requesting an attorney fee award of 33 1/3% of the settlement fund, or

$4,250,000, as well as $56,147.94 in expenses incurred prosecuting this action. (Doc. No. 52 at 1, 6-23; see also Doc. No. 54, Tuccillo Decl.; Doc. No. 55, Holzer Decl.) Lead Plaintiff is also requesting an incentive award of $5,000. (Doc. No. 52 at 1, 23-25; see also Doc. No. 56, Kendall Decl.)

When the Court preliminarily approved the proposed settlement and Settlement Class, the Court also directed Plaintiff to issue Notice in accordance with the proposed Notice Plan. (Doc. No. 50 at 13-15.) Pursuant to the Court's order, the Claim Administrator, Strategic Claims Services ("SCS"), sent a total of 25,088 copies of the short-form Notice to potential Settlement Class Members. (Doc. No. 53, Bravata Decl. ¶ 7.) SCS also mailed or e-mailed a letter regarding the proposed settlement to 2,200 Nominee Account Holders and Institutional Groups contained on SCS's master mailing list of banks, brokerage companies, mutual funds, insurance companies, pension funds, and money managers. (Id. ¶ 5.) SCS represents that it was notified that one of the Nominee Account Holders also "emailed 11,101 of its customers to notify them of this Settlement and provided direct links to the Short Notice on the settlement webpage." (Id. ¶ 7.) SCS established a webpage for the proposed settlement that contained an online and downloadable claim form, the long-form Notice, the Stipulation, and other relevant documents as well as important deadlines and the current status of the proposed settlement. (Id. ¶ 12.) Finally, on February 7, 2022, SCS caused the Summary Notice to be published once over the GlobeNewswire. (Id. ¶ 10.)

Under the Court-approved schedule, potential Settlement Class Members were required to return their claims, requests for exclusion, or objections by May 2, 2022. (Doc. No. 50 at 15.) SCS represents that as of May 16, 2022, it has received over 4,833 claims and has not received any objections or requests for exclusion. (Bravata Decl. ¶¶ 13–14.)

///

///

///

**Discussion**

**I.     Motion for Final Approval**

      **a.  Class Certification**

A class may be certified under Federal Rule of Civil Procedure 23(a) if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representative parties are typical of claims or defenses of the class; and (4) the representing parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)–(4). Rule 23(b)(3) further requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating a controversy." Fed. R. Civ. P. 23(b)(3).

In its Order certifying the provision settlement class, the Court preliminarily determined the proposed Settlement Class met the requirements of Rule 23(a) and Rule 23(b)(3). (Doc. Nos. 49, 50.) In this Order, the Court concludes that the Settlement Class meets the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). SCS sent notice of the proposed settlement to 25,088 potential class members and received approximately 4,833 claims. (Bravata Decl. ¶¶ 13–14.) As such, the class is sufficiently numerous. See Rannis v. Recchia, 380 F.App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members."). Questions common to the proposed Settlement Class include whether Defendants violated federal securities laws, whether statements made by Defendants during the Class Period misrepresented or omitted material facts about Odonate, whether Defendants acted knowingly or recklessly in issuing any false or misleading public statements, whether the price of Odonate securities during the Class Period was artificially inflated by Defendants' conduct, and the extent and appropriate measure of damages suffered by the proposed Settlement Class. (Doc. No. 51 at 22.) As a result, individual issues do not preclude a finding of commonality. See Brown v. China

Integrated Energy, Inc., 11-cv-02559-BRO, 2015 WL 12720322, at *14 (C.D. Cal. Feb. 17, 2015) ("Because of the common effect that such misrepresentations have on all shareholders, '[r]epeated misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2).'"). Typicality is also satisfied because both Plaintiff and the proposed Settlement Class held the same position as Odonate stockholders during the Class Period and claim the same injury due to Defendants' alleged fraudulent conduct. (Doc. No. 51 at 22–23); see Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 156 (1982) ("[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."). Finally, the adequacy requirement is satisfied because Lead Plaintiff has vigorously prosecuted the interests of the proposed Settlement Class and Co-Lead Counsel have extensive experience in class actions and complex litigation. (See Doc. No. 52; Tuccillo Decl.; Holzer Decl.; Kendall Decl.); see Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998) ("Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?").

      The proposed Settlement Class also meets the predominance and superiority requirements of Rule 23(b)(3). A single adjudication will resolve the central issue of the case of whether Defendants violated Section 10(b) and 20(a) of the Exchange Act and Rule 10b-5, and there does not appear to be individualized issues that would preclude a finding of predominance. (Doc. No. 50 at 8–9.) Thus, the proposed class is "sufficiently cohesive to warrant adjudication by representation," and so the predominance requirement is met. See Hanlon, 150 F.3d at 1022 (citation omitted). A class action is also the superior method for resolving this dispute because the proposed Settlement Class consists of thousands of investors and so it would "reduce litigation costs and promote greater efficiency" to adjudicate this action in a single class action. Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted). Accordingly, the

Court certifies the Settlement Class.

### b. Fairness and Adequacy of the Settlement

A proposed Class Settlement can only be approved "it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, district courts in the Ninth Circuit consider several factors, including "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (quoting Hanlon, 150 F.3d at 1026). A proposed settlement must additionally meet the factors enumerated in Federal Rule of Civil Procedure 23(e)(2)(A)–(D).

The Ninth Circuit maintains a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Class Plaintiffs v. City of Seattle, 955 F.2d 126, 1276 (9th Cir. 1992); see also Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) ("This circuit has long deferred to the private consensual decision of the parties."). Nevertheless, when "class counsel negotiates a settlement agreement before the class is even certified," settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) (quotation marks and citations omitted). As such, courts must also scrutinize proposed settlement for "evidence of collusion or other conflicts of interest." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946–47 (9th Cir. 2011).

### 1. The Strength of Plaintiff's Case, the Risk of Further Litigation, and the Settlement Amount

This action is brought pursuant to the Private Securities Litigation Reform Act ("PSLRA"), which "involve[s] a 'heightened level of risk' because PSLRA 'makes it

more difficult for investors to successfully prosecute securities class actions." Scott v. ZST Digit. Nets., Inc., No. 11-cv-3531-GAF, 2013 WL 12126744, at *6 (C.D. Cal. Aug. 5, 2013). To recover under Section 10(b) of the Exchange Act and Rule 10(b)-5, Plaintiff would have had to prove "(1) a material misrepresentation or omission by the defendant[s]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 267 (2014) (quoting Amgen Inc. v. Ct. Ret. Plans & Tr. Funds, 568 U.S. 455, 460–61 (2013)). There is guarantee that this case would survive a contested class certification or, if it was certified, a challenge to de-certify it. (Doc. No. 51 at 10.) Plaintiff may have also faced difficulty establishing necessary elements of falsity or scienter at the summary judgment and trial stage. (Id. at 11); see In re Amgen Inc. Sec. Litig., No. 7-cv-2536-PSG, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016) ("[C]ourts have recognized that a defendant's state of mind in a securities case is the most difficult element of proof and one that is rarely supported by direct evidence.").

Under the proposed settlement, Defendants will pay the settlement amount of $12,750,000, without any possibility of reversion. (Stipulation ¶¶ 1.32, 2.0, 2.5, 6.8.) Payments to Settlement Class Members will be made from the settlement fund after any taxes and tax expenses, administration costs, attorneys' fee award, and incentive award for the Lead Plaintiff. (Id. § H; Ex. B1 at 2, 9.)  As of date, approximately 4,833 claims have been submitted. (Bravata Decl. ¶¶ 13–14.) As such, Plaintiff estimates that there will be an average recovery of approximately $0.29 per share pursuant to the proposed Plan of Allocation if the Court approves the requested attorneys' fees, reimbursement, and incentive award. (Doc. No. 52 at 10.) Plaintiff represents that this amounts to approximately 3.49% of the maximum estimate damages, which is higher than the 2021 median recovery in securities class actions of 1.8%. (Id. at 9–10); see also Janeen McIntosh and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2021 Full Year Review (NERA Economic Consulting January 25, 2022) at 24.

Balancing "the continuing risk of litigation (including the strengths and weaknesses of the Plaintiff's case), with the benefits afforded to members of the class, and the immediacy and certainty of a substantial recovery," the Court concludes that these factors favor approval of the proposed settlement. See Franklin v. Wells Fargo Bank, N.A., No. 14cv-2349-MMA, 2016 WL 402249, at *3 (citing In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000)).

### 2. The Extent of Discovery Completed, the Stage of Proceedings, and Absence of Collusion

Prior to reaching the proposed settlement, the parties engaged in significant investigation and substantive briefing over the course of approximately nineteen months of litigation. (Doc. Nos. 51 at 15–17; 52 at 4–6, 16.) Co-Lead Counsel represent that in order to file the complaint, they conducted "a thorough review of Odonate's SEC filings and press releases, its stock chart, and other publicly available news reports and information related to Odonate," and engaged in additional private investigation, including interviewing confidential witnesses. (Id. at 16; see also Tuccillo Decl. ¶¶ 19, 27.) The parties also fully briefed Defendants' motion to dismiss, which the Court ultimately denied. (Id. at 16; see also Doc. No. 36.) The parties participated in a full day of voluntary mediation followed by an additional three weeks of negotiations before reaching a settlement in principle. (Id. at 16.) The parties then worked to finalize the proposed settlement's terms over the next few months. (Id.)

Based on the record before the Court, there is also no indication of collusion. See In re Bluetooth, 654 F.3d at 947 (recognizing signs of collusion include when counsel receive a disproportional distribution of the settlement, the class receives no money, and when settlement funds revert to defendants). Co-Lead Counsel are requesting an attorneys' fee award of 33 1/3% of the settlement amount, which, while above the 25% benchmark typically used in the Ninth Circuit, is still reasonable. See Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement

value, with 25% considered to be the benchmark."). Similarly, the requested service award to Lead Plaintiff of $5,000 is also reasonable. See, e.g., In re Mego, 213 F.3d at 463 (affirming an incentive award of $5,000 to two plaintiff representatives of 5,400 potential class members in a $1,725,000 settlement). Settlement Class Members will receive meaningful monetary distributions even after awards and costs. (Doc. No. 52 at 9–10.) Further, none of the funds will revert to Defendants. (Id. ¶¶ 2.5, 6.8.).

Because the proposed settlement appears to have resulted from arms-length negotiations and was not the result of collusion, it is presumed fair. See Couser v. Comenity Bank, 125 F.Supp.3d 1034, 1042 (S.D. Cal. 2015) ("A settlement following sufficient discovery and genuine arms-length negotiations is presumed fair."); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998) ("In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make a decision about the settlement." (citation and quotations omitted)). As such, the stage of the proceedings and absence of collusion also support approval.

### 3. The Experience and Views of Counsel

Co-Lead Counsel are both qualified counsel with experienced with securities class actions. (Doc. No. 51 at 8; Tuccillo Delc. 26 & Ex. 1; Holzer Decl. 4 & Ex. 1.) While Co-Lead Counsel represent that they "believe, and continue to believe, that the case was strong," they also acknowledge "the substantial risk posed to the Settlement Class in continuing this Action." (Doc. No. 51 at 10–11.) Co-Lead Counsel also represent that the settlement "provides substantial relief to Settlement Class members." (Doc. No. 51 at 9.) As a result, this factor supports approval. See Couser, 125 Supp. 3d at 1044 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned that courts to produce a settlement that fairly reflects each party's expected outcomes in the litigation." (citation omitted)).

///

### 4. The Reaction of Class Members to the Proposed Settlement

Settlement Class Members were required to return their claims, requests for exclusion, or objections by May 2, 2022. (Doc. No. 50 at 15.) As of May 16, 2022, approximately 4,833 Settlement Class Members submitted claims and no requested exclusion from or objected to the proposed settlement have been submitted. (Bravata Decl. ¶¶ 13-14.) As such, this factor supports approval.

### c. Conclusion

For the reasons above, the proposed settlement is fair, adequate, and reasonable. As such, the Court grants Plaintiff's motion for final approval of the class action settlement. (Doc. No. 51.)

## II. Attorney's Fees, Costs, and Incentive Award

Having granted final approval of the settlement, the Court next turns to Plaintiff's motion for attorneys' fees, costs, and incentive award. (Doc. No. 52.) Plaintiff seeks $4,250,000 or 33 1/3% of the settlement fund in attorneys' fees, $56.147.94 in reimbursement for costs, and a $5,000 incentive award for Lead Plaintiff. (Id. at 1.)

Pursuant to Federal Rule of Civil Procedure 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." Id. at 942 (citation omitted). Courts are also "encouraged…to guard against an unreasonable result by cross-checking their calculations against a second method." Id. at 944. When using the percentage-of-recovery method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award." Id. at 942. However, a court can depart from this benchmark "when special circumstances indicate that the percentage of recovery would be either too small or too large in light of the hours devoted to the case or

other relevant factors." Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990). In assessing the reasonableness of attorneys' fees, district courts in the Ninth Circuit consider the Vizcaino factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) the awards made in similar cases." In re Omnivision Techs., Inc., 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2008) (citing Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048–50 (9th Cir. 2022)).

Plaintiff requests attorneys' fees of 33 1/3% of the gross settlement fund, or $12,750,000, under the percentage-of-recovery method. (Doc. No. 52 at 1.) To determine whether an upward departure from the 25% benchmark is reasonable, the Court considers the Vizcaino factors. In re Omnivision, 559 F.Supp.2d at 1046. First, the settlement fund represents about approximately 3.49% of the maximum estimate damages, which is above the 2021 median recovery in securities class actions. (Doc. No. 52 at 9–10). Second, there is a substantial risk in continued litigation. See Hefler v. Wells Fargo & Co., No. 16-cv-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("[I]n general, securities actions are highly complex and…securities class litigation is notably difficult and notoriously uncertain."(citation omitted)). Next, Co-Lead Counsel expended 2,383.05 hours on this case over the course of approximately nineteen months on a contingency basis. (Doc. No. 52 at 16; Tuccillo Decl. ¶¶ 29–30; Holzer Decl. ¶¶ 5–6.) Co-Lead Counsel have not received any compensation thus far and have advanced $56,147.94 in unreimbursed expenses. (Id.) District courts in the Ninth Circuit have also frequently awarded fees of one-third of the common fund. See, e.g., Khoja v. Orexigen Therapeutics, Inc., 15-cv-00540-JLS-AGS, 2021 WL 5632673, at *9 (S.D. Cal. Nov. 30, 2021) (collecting cases). Additionally, no objections to the settlement or requested attorneys' fees, costs, or incentive award have been filed. (Bravata Decl. ¶¶ 13–14.) In sum, the proposed 33 1/3% of the Settlement Fund is a reasonable award in this case.

Application of the lodestar method confirms the reasonableness of this award. See In re Bluetooth, 654 F.3d at 944–45. Collectively, Co-Lead Counsel have expended

2,383.05 hours of work on this case, which amounts to $1,797,847.50 in fees. (Tuccillo Decl., Ex. 2; Holzer Decl., Ex. 2.) This lodestar amount compared against the $4,250,000 requested in fees results in a multiplier of 2.36. (Doc. No. 52 at 20.) Plaintiff's requested multiplier is within the 1 to 4 multiplier range commonly found to be appropriate in common fund cases. See Vizcaino, 490 F.3d at 1051 n.6. Accordingly, the lodestar cross-check supports the reasonableness of the requested attorneys' fees award.

In addition to the attorneys' fees, Plaintiff seeks $56.147.94 in costs. (Doc. No. 52 at 1; Tuccillo Decl., Ex. 3; Holzer Decl., Ex. 3.) The reported litigation expenses were for experts; investigative services; mediation services; travel, lodging, and meals; legal research; filing fees, courtesy copies, transcripts; press releases and newswires; clerical overtime; photocopies; mail expenses; and wire fee. (Id.) After reviewing class counsels' declaration and the attached summary of the incurred litigation expenses, the Court concludes that the requested expenses are reasonable and grants class counsel's request for these costs. See Oniveros v. Zamora, 303 F.R.D. 356, 375 (E.D. Cal. 2014) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reasonable litigation expenses from the fund." (citation omitted)).

Finally, the requested $5,000 incentive award for class representative Kevin Kendall is reasonable. (Doc. No. 52 at 1; Kendall Decl. ¶ 6.) Incentive awards in class action cases are discretionary "and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez, 563 F.3d at 958–59. District courts must "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013). In his sworn declaration, Mr. Kevin Kendall represents that he has spent fifty-five hours performing tasks as Lead Plaintiff, including compiling his trading data, completing certifications, receiving and reviewing the pleadings in draft and final form, requesting and receiving regular updates on the progress of the litigation and strategy,

being consulted before and during settlement discussions, articulating his settlement authority, and approving the proposed settlement before it was finalized. (Kendall Decl. ¶¶ 4, 6.) Considering this participation, as well as acceptable ranges of incentive awards in similar cases, see <u>Fulford v. Logitech, Inc.</u>, No, 8-CV-2041, 2010 WL 807448, at *3 n.1 (N.D. Cal. Mar. 5, 2010) (collecting cases), the Court approves the $5,000 incentive payment for Mr. Kevin Kendall.

## Conclusion

The Court has jurisdiction over the subject matter of this action and all parties to the action, including Settlement Class Members. First, the Court certifies the Settlement Class and grants final approval of the settlement. (Doc. No. 51.) All persons who satisfy the class definition are Settlement Class Members bound by this Order. The form and method of notice satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, including the Fifth Amendment's Due Process Clause. Second, the Court grants Co-Lead Counsel $4,250,000 in attorneys' fees and $56.147.94 in costs. (Doc. No. 51.) The Court also grants class representative Mr. Kevin Kendall an incentive award of $5,000. (<u>Id</u>.) The attorneys' fees, costs, and incentive award will be paid out of the Settlement Fund.

The Court reserves jurisdiction over the implementation, administration, and enforcement of this settlement. The Court dismisses the action with prejudice, and no cost shall be awarded other than those specified in this Order or provided by the settlement agreement. The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

DATED: June 6, 2022

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT