UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN KENDALL, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>ODONATE THERAPEUTICS, INC., KEVIN C. TANG, MICHAEL HEARNE, JOHN G. LEMKEY,<br><br>                                    Defendants. | Case No.: 3:20-cv-01828-H-JLB<br><br>**ORDER GRANTING FINAL DISTRIBUTION OF NET SETTLEMENT FUND**<br><br>[Doc. No. 62.] |

On April 13, 2021, Plaintiff Kevin Kendall ("Plaintiff") filed a second amended class action complaint against Defendants Odonate Therapeutics, Inc. ("Odonate") and three of its officers, Kevin C. Tang, Michael Hearne, and John G. Lemkey (collectively "Defendants"), alleging violations of Section 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5. (Doc. No. 24, SAC ¶¶ 225–41.) On October 26, 2021, the parties reached an agreement in principle to settle, and on January 11, 2018, the Court granted preliminary approval of the settlement, provisionally certified a settlement class, and approved the form and manner of notice. (Doc. Nos. 40, 49, 50.)

On May 16, 2022, Plaintiff filed (1) an unopposed motion for final approval of the

class action settlement, certification of the settlement class, and approval of the plan of allocation and (2) an unopposed motion for attorneys' fees, reimbursement of expenses, and compensatory award. (Doc. Nos. 51–56.) These motions were fully briefed and on June 6, 2022, the Court held a final approval hearing on the matter pursuant to Federal Rule of Civil Procedure 23(e)(2). (Doc. Nos. 57, 58, 59.) On June 6, 2022, the Court issued an order (1) certifying the settlement class, (2) granting Plaintiff's motion for final approval of class action settlement, and (3) granting Plaintiff's motion for attorneys' fees, costs, and incentive award. (Doc. No. 60.)

On August 24, 2022, Plaintiff filed the present motion for final disbursement of funds. (Doc. No. 62.) On September 19, 2022, Defendants filed a notice of non-opposition regarding the motion for disbursement of funds. (Doc. No. 65.) On September 20, 2022, Plaintiff filed a reply. (Doc. No. 66.) Considering all materials submitted in support of the motion, the Court orders the following:

1. The administrative recommendations to accept claims, including the claims filed after the May 2, 2022 deadline ("Late Claims") but before May 17, 2022, and to reject wholly ineligible or otherwise deficient claims and any responses to deficiency or rejection notices received after August 5, 2022, as recommended by the Claims Administrator, Strategic Claims Services ("SCS"), as stated in the Second Bravata Declaration (Doc. No. 63), are adopted, and said claims are hereby accepted and eligible for payment from the Net Settlement Fund;

2. Co-Lead Counsel has requested $1,404.49 in additional, unreimbursed, reasonable, necessary, out-of-pocket expenses. (Doc. No. 62.) This request is partly due to a minor clerical error in the $56,147.94 amount requested in the prior motion for fees, and partly due to accounting records for May 2022 not yet being available. (Doc. No. 62.) The reported litigation expenses were for travel, lodging and meals, legal research, overtime-clerical, and photocopies. (Doc. No. 64-1, Exhibit A.) The Court concludes that the requested expenses are reasonable and orders payment of $1,404.49 in additional unreimbursed out-of-pocket expenses to be paid from the Notice & Administration

account;

3. Distribution of the Net Settlement Fund on a pro rata basis (after deduction of the already incurred notice and administration costs through the initial distribution, reimbursement to Co-Lead counsel of $1,404.49 in remaining unreimbursed out-of-pocket costs, and payment of future potential tax liabilities and related fees and expenses) to the 2,894 authorized claimants pursuant to the Stipulation, the Court's Preliminary Approval Order (Doc. No. 50), and the Final Approval Order (Doc. No. 60) is directed;

4. The checks for distribution may state that the distribution check must be cashed within 180 days. Co-Lead Counsel and SCS are authorized to locate and/or contact any authorized claimant who has not cashed their check within said time;

5. The recommended plan for Settlement Funds remaining after the initial distribution is adopted as follows:

> If any funds remain in the Net Settlement Fund by reason of uncashed distribution checks or otherwise, then after SCS has made reasonable and diligent efforts to have settlement class members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund after at least six (6) months after the initial distribution of such funds will be used in the following fashion: (a) first, to pay any amounts mistakenly omitted from the initial distribution; (b) second, to pay any additional notice and administration costs incurred in administering the settlement; and (c) finally, only if such second distribution is economically feasible, to make a second distribution to claimants who cashed their checks from the initial distribution and who would receive at least $10.00;

6. Lead Plaintiff requests that any remaining balance de donated, cy pres, to the Institute for Law and Economic Policy. Where a proposed settlement contains a charitable gift, known as a cy pres award, a court must "ensure that the settlement retains some connection to the plaintiff class and the underlying claims." Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012). In this present case, the complaint alleged violations of

Section 10(b) and 20(a) of the Securities Exchange Act of 1934. (Doc. No. 24.) The Institute for Law and Economic Policy is a public policy research and educational foundation that has sponsored annual symposiums featuring papers published in law reviews and cited in leading securities class action decisions. Accordingly, the Court approves of Lead Plaintiff's selection of the Institute for Law and Economic Policy for any potential cy pres award that may become appropriate;

    7. The recommended plan for the Settlement Funds remaining after the second distribution is adopted as follows:

> If six (6) months after such second distribution, if undertaken, or if such second distribution is not undertaken, and if any funds remain in the Net Settlement Fund after SCS has made reasonable and diligent efforts to have authorized claimants cash their checks which are not sufficiently large enough to warrant further distribution, then, in accordance with the terms of the Stipulation, as approved by the Preliminary Approval Order and Final Approval Order, any funds remaining in the Net Settlement Fund will be donated, cy pres, to the Institute for Law and Economic Policy;

    8. Class Members are barred from making any further claim against the Net Settlement Fund, and all persons involved in the claims administration process are released and discharged from any and all claims arising out of such involvement;

    9. This Court retains jurisdiction to consider any further applications concerning the administration of the Settlement, and such other and further relief as this Court deems appropriate.

    The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

DATED: October 7, 2022

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT